**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO.  23-00462 (ESL) |
| **AZURE DEVELOPMENT, INC.** | |
| | **CHAPTER 11** |
| Debtor | |

**PLAN OF REORGANIZATION**

CHARLES A. CUPRILL
CHARLES A. CUPRILL, PSC LAW OFFICES
356 Fortaleza Street (2nd Floor)
San Juan, PR  00901
Tel.:  787-977-0515
E-mail : ccuprill@cuprill.com

Azure Development, Inc., Debtor, and debtor-in-possession in the above captioned case ("Debtor") hereby proposes the following Plan (the "Plan") under Section 1121 of Title 11 of the United States Code.

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purpose of the Plan, the following terms shall have the meanings specified in this Article I.  A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, Sub-Section or clause contained in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of the Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

"Administrative Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation:

(a)       fees and expenses of Professionals Allowed pursuant to a Final Order entered under Sections 330, 331, or 503 of the Bankruptcy Code, and

(b)       all fees and charges assessed against Debtor pursuant to 28 U.S.C. §1930.

"Allowed" shall mean, with reference to any Claim:

(a)       a Claim that has been listed by Debtor in its Schedules, as amended, and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed.

(b)       a Claim as to which a timely proof of claim has been filed by the Bar Dates and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has

**Azure Development, Inc.**                                         **Case No. 23-00462 (ESL)**
**Plan of Reorganization**                                                     **Page 3**

been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been filed, the extent to which such Claim has been Allowed (whether in whole or in part) by a Final Order;

       (c)        a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and Allowed in accordance to Section 502(h) of the Bankruptcy Code; or

       (d)        any Claim Allowed under the Plan or pursuant to the Confirmation Order.

"<u>Bankruptcy Case</u>" shall mean Debtor's Chapter 11 case pending in the Bankruptcy Court.

"<u>Bankruptcy Code</u>" shall mean Title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

"<u>Bankruptcy Court</u>" shall mean the United States Bankruptcy Court for the District of Puerto Rico where the Bankruptcy Case is pending.

"<u>Bankruptcy Rules</u>" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. §2075, and the local rules of the Bankruptcy Court.

"<u>Bar Dates</u>" shall mean June 22, 2023 and August 21, 2023 as to Debtor's Bankruptcy Case, respectively fixed as the last dates for the filing of proofs of claim by creditors asserting Claims against the Debtor, other than governmental units, and by governmental units, as stated in the "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines" dated February 21, 2023 issued by the Clerk of the Bankruptcy Court, or otherwise be forever barred from asserting a Claim against Debtor or its property and from voting on the Plan and/or sharing in distributions under the Plan.

"<u>Business Day</u>" shall mean any day other than a Saturday, Sunday or legal holiday recognized in Puerto Rico.

"<u>Cash</u>" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks, and money orders).

"<u>Claim</u>" shall mean a claim against a Person or its property as defined in Section 101(5) of the

Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Claims Objection Bar Date" shall mean the later of the date that such claims become due and payable in accordance with their terms, or fifteen (15) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of the Plan.

If an objection has not been filed to a Claim by the Claims Objection Bar Date, the Claim will be treated as an Allowed Claim.

"Claims Objection" means the objections to claims that have been or may be filed against Holders (or purported Holders) of Claims.

"Class" shall mean those classes designated in Article III of the Plan.

"Collateral" shall mean (a) any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable law.

"Confirmation Date" shall mean the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code.

"Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court, but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"Cost Control" shall mean Debtor's affiliate Cost Control Company, Inc.

"Debtor" shall mean Azure Development, Inc.

"Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all Exhibits, and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"Disputed Claim" shall mean:

      (a)     if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

      (b)     if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request for equitable subordination or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules has been made, or which is otherwise disputed by Debtor in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

      (c)     a Claim which is a Contingent or Unliquidated.

"Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court as to a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

"Disputed Claims Reserve" shall have the meaning set forth in Section 6.5 hereof.

"Distribution Record Date" shall mean the Business Day preceding the Effective Date.

"Effective Date" shall mean the date which is ninety (90) days after the Confirmation Date, or if such date is not a Business Day, the next succeeding Business Day; provided, however, that if, as of such date, all conditions precedent to the occurrence of the Effective Date set forth in Article X of the Plan have not been satisfied or waived pursuant to Section 10.2 of the Plan, then the first Business Day immediately following the day upon which all such conditions have been satisfied or waived and the sale of Debtor's assets has been consummated.

"Equity Holder" shall mean Fideicomiso Valdes Acevedo, the holder of the Equity Interest in Debtor.

"Equity Interest" shall mean the interest of any holder of Debtor's common equity securities and all options, warrants and rights, contractual or otherwise, to acquire any equity securities in Debtor, as such interests exist immediately prior to the Effective Date.

"Final Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and, as to which (i) the time to appeal or seek review or rehearing has expired and no appeal or petition for *certiorari*, review or rehearing is pending, or (ii) if an appeal, review, reargument or *certiorari* of the order has been sought, the order has been affirmed or the request for review, reargument or *certiorari* has been denied and the time to seek a further appeal, review, reargument or *certiorari* has expired, and as a result of which such order shall have become final and non-appealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"General Unsecured Claim" shall mean a Claim that is not a Secured Claim or that is not entitled to priority of payment under Section 507 of the Bankruptcy Code.

"Holder" shall mean a Person or Entity who holds a Claim or Interest.

"Initial Distribution Date" shall mean the date at least thirty (30) days after the Effective Date, or the next succeeding Business Day if such thirtieth day is not a Business Day when funds are available for distribution.

"Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code, except that a lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549, or 553 of the Bankruptcy Code shall not constitute a Lien.

"Mrs. Quinlan" shall mean Mrs. Encarnita Quinlan, secured creditor in the instant case.

"Order of Relief" shall mean the date of the filing of the Bankruptcy Case.

"Organizational Documents" shall mean the corporate bylaws, certificate of incorporation, together with all of Debtor's other corporate documents necessary to effectuate the provisions of the Plan.

"<u>Person</u>" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, governmental agency or political subdivision thereof.

"<u>Petition Date</u>" shall mean February 17, 2023, the date on which Debtor filed its Voluntary Chapter 11 Petition with the Bankruptcy Court, pursuant to the Bankruptcy Code.

"<u>Plan</u>" shall mean this Plan under Chapter 11 of the Bankruptcy Code, including, without limitation, the Plan Documents, if any, and all exhibits, supplements, appendices and schedules thereto, either in their present form or as the same may be altered, amended or modified from time to time.

"<u>Plan Documents</u>" shall mean and include such agreements, instruments, documents as may be required to effectuate the terms of the Plan.

"<u>Priority Claims</u>" shall mean  Claims (or portions thereof), entitled to priority under Section 507(a) of the Bankruptcy Code other than Priority Tax Claims and Administrative Expense Claims.

"<u>Priority Tax Claims</u>" shall mean any Claim of a governmental unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

"<u>Professionals</u>" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

"<u>Schedules</u>" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by Debtor under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

"<u>Secured Claim</u>" shall mean any Claim that is secured by Collateral, to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that

such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of the amount of such setoff.

"Triangle" shall mean Triangle Cayman Asset, Co., secured creditor in the instant case.

## ARTICLE II
## TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

**2.1      Non-Classification**.     In accordance to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Claims are not classified for the purposes of voting on or receiving distributions under the Plan. All such Claims are instead treated separately in accordance with the terms set forth in this Article II.

**2.2      Administrative Expense Claims.**

(a)      General.   Except as otherwise agreed to by Debtor and the Holder of an Allowed Administrative Expense Claim, including claims under 11 U.S.C. § 503 (b)(1)(A), each such Holder shall be paid in full by Debtor in the regular course of Debtor's business or as authorized by the Court on or before the Effective Date.

If Debtor disputes any portion of an Administrative Expense Claim, Debtor shall pay such Claim within thirty (30) days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim.

(b)      U.S. Trustee's Fees.   The United States Trustee's quarterly fees shall be paid in full when due pursuant to 11 U.S.C. § 1930.

(c)      Professionals Compensation and Expense Reimbursement Claims.

The Professionals retained by Debtor in Debtor's Chapter 11 case have and will incur fees and expenses from the date of their retention through the Effective Date.  It is impossible to predict the amount of professional administrative expense fees that will be incurred through the confirmation of the Plan. As of the filing of the Plan, Debtor has paid $10,000.00 to its Court appointed financial consultant CPA Luis R. Carrasquillo & Co., PSC and a $16,000 retainer to its Debtor's court appointed counsel, Charles A. Cuprill, P.S.C. Law Offices.

Debtor estimates that additional Allowed Professionals Fee Claims, to all professionals, retained by Debtor will add to approximately from $25,000 to $30,000, for unpaid services to be rendered and expenses incurred up to the Confirmation of the Plan.

All amounts paid and to be paid to Professionals through the Confirmation Date, including interim fees and expenses are subject to final Bankruptcy Court approval. Debtor reserves the right to contest the allowance of any professional fees.

2.3     **Priority Tax Claims.** The secured priority tax claim of Centro de Recaudaciones de Ingresos Municipales' ("CRIM"), shall be paid in full with interest at 5% per annum, in forty-eight (48) equal consecutive monthly installments, commencing on the Effective Date and continuing on the last day of the following forty-seven (47) months. In the event that Debtor's real estate properties (the "Properties") are sold, as indicated below, the balance then due CRIM will be paid in full at that time.

**ARTICLE III**
**CLASSIFICATION OF CLAIMS AND EQUITY INTEREST**

As of the Petition Date, Debtor had secured and unsecured priority unsecured debts and non-priority unsecured debt, as more particularly described below. The Plan classifies the various claims against Debtor. A description of all Classes of Claims and the Equity Interest, the estimated principal amount due to each Class as of the Effective Date and its treatment are set forth below, as follows:

Class 1 –     <u>The Secured Claim of Triangle Cayman Asset, Co. ("Triangle")</u> –

                Consisting of Triangle's claim secured by first mortgages on the Properties, as may be finally allowed by the Court, but listed at $1,713,834.27 for confirmation purposes.

Class 2 –     <u>The Secured Claim of Mrs. Encarnita Quinlan ("Mrs. Quinlan")</u> – Consisting of a claim for $537,680.00 secured by a second mortgage on the Properties.

Class 3 –     <u>Insiders' General Unsecured Claims</u> - Consisting of Insiders' Non-Priority General Unsecured Claims.

Azure Development, Inc.                                   Case No. 23-00462 (ESL)
Plan of Reorganization                                                Page 10

Class 4 –   <u>Non-Insiders' General Unsecured Claims -</u> Consisting of Non-Insiders' Non-Priority General Unsecured Claims.

Class 5 -   <u>Interest in Debtor</u> – Consisting of the Equity Holder, Fideicomiso Valdés Acevedo.

## ARTICLE IV

### TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTEREST

<u>Class 1 – Secured Claim of Triangle</u>

(a)   <u>Impairment and Voting</u> - Class 1 is impaired under the Plan and is entitled to vote to accept or reject the Plan.

(b)   <u>Distribution</u> – Triangle's claim secured by a first mortgage on the Properties, located  at Mata de Platano Ward, Luquillo, Puerto Rico,  as finally allowed by the Court, shall be paid in full through monthly payments of $14,219.48, including principal and interest at 8% per annum, during  36 months commencing on the Effective Date.

After the completion of the permitting process for the development of the Properties, during the 36-month period, commencing on the Effective Date, Debtor will aggressively market and sell the Properties for not less than $4,500,000, and with the proceeds of the sale, will pay any balance due on Triangle's claim at that time.

During said 36-month period, Cost Control Company, Inc. ("Cost Control"), Debtor's affiliate, will provide monthly cash advances to Debtor of approximately $12,000 to fund the payments to be made during such period. .

Triangle will retain its lien on the Properties until the full payment of its claim.

<u>Class 2 – The Secured Claim of Mrs. Quinlan</u>

(a)   <u>Impairment and Voting</u> - Class 2 is impaired under the Plan and is entitled to vote to accept or reject the Plan.

(b)   <u>Distribution</u> – Mrs. Quinlan's claim shall be paid in full  in monthly payments of $4,497.37, including principal and interest at 8% per annum, during 36 months,

commencing on the Effective Date. Debtor will pay off any pending balance of this claim with the remaining proceeds from the sale of the Properties after the payment of Class 1. Mrs. Quinlan will retain her security interest on the Properties until the full payment of her claim.

Class 3 - Insiders' General Unsecured Claims

(a)    Impairment and Voting - Class 3 is impaired under the Plan and is entitled to vote to accept or reject the Plan.

(b)    Distribution - Insiders' claims due to Debtor's related parties will be subordinated, until the full payment of all other claims to be paid pursuant to the Plan.  During the 36-month sale period of the Properties indicated under Class 1, these claims will not receive any dividends. However, upon the sale of the Properties, if after the payments to Class 1, 2 and 4 there are remaining funds, these claims will receive 95% thereof as payment in full.

Class 4 – The Non-Insiders' General Unsecured Claims

(a)    Impairment and Voting - Class 4 is impaired under the Plan and is entitled to vote to accept or reject the Plan.

(b)    Distribution – Non-insiders' claims for $20,000 or less, or those that are voluntarily reduced to $20,000, will be paid 95% thereof in 36 equal monthly installments commencing on the Effective Date to be advanced to Debtor by Cost Control. Claims in excess of $20,000 in this Class will not receive any dividends during this 36-month period. However, upon the sale of the Properties, if after the payments to Class 1 and 2 there are remaining funds, the claims in excess of $20,000 will receive 95% thereof, as payment in full satisfaction thereof.

Class 5– Interest in Debtor

(a)    Impairment and Voting - Class 5 is unimpaired under the Plan and is not entitled to vote to accept or reject the Plan.

(b)  <u>Distribution</u> – Fideicomiso Valdés Acevedo will not receive any distribution under the Plan but will retain its shares in Debtor unaltered.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

Except as otherwise provided in the Plan, Debtor will effect payment of Administrative Expense Claims, Priority Tax Claims, Allowed Secured and Unsecured Claims as indicated above, from the cash advances to be provided by Cost Control, the funds in Debtor's in possession account, and those  on deposit with the Court of First Instance of Puerto Rico, Superior Section of Fajardo in  Case No. NSCI 2015cv00410and expected to be received  by Cost Control. The remaining payments to the secured and unsecured claimants will be made from the proceeds of the sale of the Properties. See **Exhibit E** to Debtor's Disclosure Statement for Debtor's Cash Flows Projections showing the feasibility of the Plan.

## ARTICLE VI

## IMPLEMENTATION OF THE PLAN

**6.1**    **<u>Method of Distributions under the Plan.</u>**

(a)  <u>In General</u>.  Subject to Bankruptcy Rule 9010, all distributions under the Plan to Holders of Allowed Claims shall be mailed by first class mail, postage prepaid, to the address of each Holder as listed on the Master Address List of the Bankruptcy Case, as the same may have been amended, as of the Distribution Record Date, unless Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of a Claim filed by a Holder of an Allowed Claim that provides an address for such Holder different from the address reflected on the Master Address List.

Debtor shall have no obligation to locate such Holders of Allowed Claims whose distributions or notices are properly mailed but nevertheless returned.

(b)    <u>Distribution to be on Business Day</u>.  Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(c)    <u>Fractional Dollars</u>.  Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (rounding down in the case of less than $0.50 and rounding up in the case of more than $0.50).

(d)    <u>Distribution to Holders as of the Distribution Record Date</u>.  As of the close of business on the Distribution Record Date, the claims register shall be closed. Debtor shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date and shall instead be entitled to recognize and deal for all purposes under the Plan with only those Holders of record as of the close of business on the Distribution Record Date, unless otherwise provided for by order of the Bankruptcy Court.

**6.2    Objections to Disputed Claims**.  Any objections to Claims against Debtor shall be prosecuted by Debtor, including any application to estimate or disallow Claims for voting purposes.

**6.3    Deadlines for Objecting to Disputed Claims.**  Except as otherwise provided by order of the Bankruptcy Court with respect to any Claim, Debtor may file an objection thereto or otherwise dispute such Claim until the later of (i) the date that such Claim becomes due and payable in accordance with its terms, or (ii) fifteen (15) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of the Plan.

**6.4    Estimation of Claims.**  Debtor, may, at any time, request that the Bankruptcy Court estimates any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning the Claim or in an objection thereto.  Debtor shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation in reference thereof. If the Bankruptcy Court determines the maximum limitation of such Claim, the determination shall not preclude Debtor from pursuing any additional proceedings to object to any ultimate payment of the

Claim. If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under the Plan. All those proceedings are cumulative and not exclusive remedies.

**6.5    Disputed Claims Reserve.**

(a)    Establishment.  Debtor shall maintain a reserve (the "Disputed Claims Reserve") equal to 100% of the distributions to which holders of the respective Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims in accordance to the payment schedule relative thereto as set forth in Schedule E to the Disclosure Statement or for such lesser amount as required by a Final Order.

(b)    Investment of Cash.  Cash in the respective Disputed Claims Reserve may be invested by Debtor only in Cash Equivalents having maturities sufficient to enable Debtor to make all necessary payments to holders of Disputed Claims, in accordance to the Plan, if and when, such Disputed Claims become Allowed Claims. Any interest, income, distributions, or accretions on account of such investment in Cash Equivalents shall be for Debtor's benefit and account, and the payment of any income taxes or other taxes arising therefrom shall be solely the responsibility of Debtor.

(c)    Distribution upon Allowance of Disputed Claims.  The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Initial Distribution Date. No holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve, with respect to such Claim until the Disputed Claim shall become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on the Disputed Claim.

**6.6**   **Reversion of Unclaimed Checks and Disputed Claims Reserve.**  The following amounts shall revert and be vested in the Debtor, as to the claims to be paid under the Plan, free and clear of any claim or interest of any Holder of that Claim under the Plan: (i) the amount of any checks issued for distributions under the Plan that remain uncashed for a period of 90 days after the date of the distributions, and (ii) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to the Disputed Claim, over the amount of Cash actually distributed on account of such Disputed Claim.

**6.7**   **Good Standing**.  To the extent Debtor is not in compliance as of the Effective Date with any state or local law requirements necessary to remain a corporation in good standing and/or remain authorized as a corporation to conduct business in any jurisdiction, Debtor, shall be deemed to be in compliance with any such laws if it complies therewith within six (6) months after the Effective Date.

## ARTICLE VII
## VOTING ON THE PLAN

**7.1**   **Voting of Claims**.  Each holder of an Allowed Claim in an impaired Class who receives payments under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

**7.2**   **Nonconsensual Confirmation**.  If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided for in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, Debtor reserves the right (i) to confirm the Plan under Section 1129(b) of the Bankruptcy Code, and (ii) to amend the Plan in accordance with Section 12.3 hereof to the extent necessary to obtain the entry of a Confirmation Order.

## ARTICLE VIII
## EXECUTORY CONTRACTS, UNEXPIRED LEASES, AND POST-PETITION CONTRACTS

**8.1** **Rejection/Assumption of Executory Contracts and Unexpired Leases**.  Unexpired executory contracts or leases, if any, existing as of filing date, will be deemed as assumed by Debtor upon the confirmation of the Plan.

**8.2** **Post-Petition Agreements Unaffected by Plan**.  Except as otherwise expressly provided herein, nothing contained in the Plan shall alter, amend or supersede any agreements or contracts entered into by Debtor after the Petition Date that were otherwise valid, effective and enforceable against Debtor as of the Confirmation Date.

**ARTICLE IX**
**RELEASE OF CLAIMS**

**9.1** **Release**.  Except as otherwise expressly provided in Section 1141 of the Bankruptcy Code or the Plan, the distributions made pursuant to and in accordance with the applicable terms and conditions of the Plan are in full and final satisfaction, settlement, and release of  Debtor of any debt of Debtor that arose before the Effective Date, and any debt of Debtor of a kind specified in Section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all Claims against Debtor of any nature, including, without limitation, any interest accrued thereon from and after the Petition Date, whether or not (i) a proof of claim based on such debt, obligation or equity interest is filed or deemed filed under Section 501 of the Bankruptcy Code; (ii) such Claim is Allowed under Section 502 of the Bankruptcy Code; or (iii) the holder of such Claim has accepted the Plan.

**9.2** **Injunction Relating to the Plan**.  As of the Effective Date, all Persons will be permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against Debtor, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities released pursuant to the Plan, except to the extent expressly permitted under the Plan.

**9.3** **Cancellation of Existing Indebtedness and Liens**.  Except as may otherwise be provided for in the Plan, on the Effective Date, all credit agreements, promissory notes, security agreements, invoices, contracts, agreements and any other documents or instruments evidencing Claims against Debtor, shall be

cancelled, discharged and released without further act or action by any Person under any applicable agreement, law, regulation, order or rule, and Debtor's obligations thereunder shall be deemed cancelled, and released. To the extent deemed necessary or advisable by Debtor, any holder of a Claim shall promptly provide Debtor with an appropriate instrument of cancellation, or release, as the case may be, in suitable form for recording wherever necessary to evidence such cancellation, or release, including the cancellation, or release of any Lien securing the Claim.

**9.4**     **Setoffs**.   Except as otherwise provided herein, nothing contained in the Plan shall constitute a waiver or release by Debtor of any rights of setoff Debtor may have against any Person.

**ARTICLE X**
**CONDITIONS PRECEDENT TO EFFECTIVE DATE**

**10.1**     **Conditions Precedent to Effectiveness**.   The Plan shall not become effective and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or such conditions shall have been waived pursuant to Section 10.2 hereof:

(a)     the Confirmation Order, in form and substance reasonably acceptable to Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)     each of the Plan Documents, in form and substance reasonably acceptable to Debtor; (i) shall have been executed, delivered and, if necessary, properly recorded; (ii) shall have become effective; and (iii) shall have been filed with the Bankruptcy Court;

(c)     all actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective; and

(d)     Debtor shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date, including without limitation, sufficient Cash to establish the Disputed Claims Reserve.

**10.2**     **Waiver of Conditions**.   Debtor may waive one or more of the conditions precedents to the effectiveness of the Plan set forth in this Section, except that Debtor may not waive the condition that it will have sufficient Cash to meet all of Debtor's payment and funding obligations under the Plan on the

**Azure Development, Inc.**                                    **Case No. 23-00462 (ESL)**
**Plan of Reorganization**                                                    **Page 18**

---

Effective Date, and to establish the Disputed Claims Reserve corresponding to Debtor, as set forth in Section 6.5(a) hereof.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

**11.1**    **Retention of Jurisdiction**.  After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to the Bankruptcy Case and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code:

(a)    to hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any Disputed Claim;

(b)    to hear and determine any and all applications by Professionals for compensation and reimbursement of expenses pursuant to Section 2.2(c) hereof;

(c)    to hear and determine any and all pending applications for the rejection or assumption of executory contracts, unexpired leases and franchise agreements, and fix and allow any Claims resulting therefrom;

(d)    to determine any and all applications, motions, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court on the Confirmation Date;

(e)    to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan;

(f)    to enforce the provisions of the Plan subject to the terms thereof;

(g)    to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Documents or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(h) to determine such other matters as may be provided for in the Confirmation Order.

**ARTICLE XII**
**MISCELLANEOUS**

**12.1    Continuation of Injunctions or Stays until Effective Date**.  All injunctions or stays provided for in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**12.2    Exemption from Transfer Taxes**.  In accordance with Section 1146(c) of the Bankruptcy Code,

(a)      the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan,

(b)      the making, delivery, creation, assignment, amendment or recording of any note or other obligation for the payment of money, or other security interest under, in furtherance of, or in connection with the Plan,

(c)      the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee or other similar tax, or other similar tax or governmental assessment. Consistent with the foregoing, officials of a governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, transfer tax, intangible tax or similar tax.

**12.3    Amendments or Modifications of the Plan**.  Alterations, amendments, or modifications of the Plan may be proposed in writing by Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and Debtor shall have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice

and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Debtor may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit thereto or in any Plan Document.

**12.4    Severability**.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon Debtor's request, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing is valid and enforceable according to its terms.

**12.5    Revocation or Withdrawal of the Plan**.  Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If Debtor revokes or withdraws the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against Debtor or any other Person or to prejudice in any manner Debtor's rights or those of any Person in any further proceedings involving Debtor.

**12.6    Binding Effect**.  The rights, duties, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**12.7    Notices**.  All notices, requests, and demands to or upon Debtor shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when

actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

**AZURE DEVELOPMENT, INC.**
P.O. Box 191937
San Juan, P.R. 00919

With a copy to:

**CHARLES A. CUPRILL**
**CHARLES A. CUPRILL, PSC LAW OFFICES**
356 Fortaleza Street (2nd Floor)
San Juan, PR  00901
Tel.:  787-977-0515
E-mail : ccuprill@cuprill.com

**12.8**     **Governing Law**.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent the Plan or the Plan Documents provide otherwise, the rights and obligations arising under the Plan shall be governed by, construed, and enforced in accordance with the laws of Puerto Rico.

**12.9**     **Withholding and Reporting Requirements**.  In connection with the consummation of the Plan, Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

**12.10**     **Plan Documents**.  Upon filing with the Bankruptcy Court, the Plan Documents may be inspected at the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims may obtain a copy of the Plan Documents upon written request to Debtor in accordance with Section 12.7 hereof.  Any Plan Documents are incorporated into and made a part of the Plan, as if fully set forth herein.

**12.11**   **Post-Confirmation Fees, Final Decree**. Debtor shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. §1930(a)(6) and the filing of post-confirmation reports, until a final decree is entered or as otherwise provided by the Bankruptcy Court. A final decree shall be entered as soon as practicable after initial distributions have commenced under the Plan.

**12.12**   **Headings**.  Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

**12.13**   **Filing of Additional Documents**.  On or before substantial consummation of the Plan, Debtor shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**12.14**   **Inconsistency**.  In the event of any inconsistency between the Plan and the Disclosure Statement, the Plan Documents or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

**12.15**   **Inclusion in Corporate Charter.** Debtor's corporate charter shall be amended to include a provision prohibiting the issuance of equity securities and providing to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including in the case of any class of equity securities having preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

**Azure Development, Inc.**
**Plan of Reorganization**

Case No. 23-00462 (ESL)
Page 23

Dated: April 20th, 2023

AZURE DEVELOPMENT, INC.

By: _____
JOSE RICARDO MARTINEZ
Vice-President

Endorsed by: _____

Cost Control Company, Inc.