## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF PUERTO RICO

**IN RE:**

**AZURE DEVELOPMENT, INC.**

**CASE NO.  23-00462 (ESL)**

**Debtor**

**CHAPTER 11**

### DISCLOSURE STATEMENT

### OF

### AZURE DEVELOPMENT, INC.

CHARLES A. CUPRILL
CHARLES A. CUPRILL, PSC LAW OFFICES
356 Fortaleza Street (2nd Floor)
San Juan, PR  00901
Tel.:  787-977-0515
E-mail: ccuprill@cuprill.com

AZURE DEVELOPMENT, INC.                                    Case No. 23-00462 (ESL)
*Disclosure Statement*                                                    Page 2

**INDEX**

I.     INTRODUCTION ........................................................................................................ **4**

II.    SUMMARY OF THE PLAN ..................................................................................... **5**

III.   INFORMATION ABOUT THE REORGANIZATION PROCESS ................................. **8**

   *3.1  Purpose of a Disclosure Statement* ................................................................ 8
   *3.2  Voting Procedure* ............................................................................................ 8
   *3.3  Ballots* ............................................................................................................ 9
   *3.4  The Confirmation Hearing* ............................................................................. 9
   *3.5  Acceptances Necessary to Confirm the Plan* ............................................... 10
   *3.6  Confirmation of the Plan Without the Necessary Acceptances* ................... 11

IV.    GENERAL INFORMATION ..................................................................................... **11**

   *4.1  Description and Historical View of the Debtor.* ........................................... 11
   *4.3  Debtor's Post-Petition Endeavors.* .............................................................. 12

V.     CLAIMS AGAINST DEBTOR AND ITS ASSETS .................................................... **13**

   *5.1  Claims Against Debtor* .................................................................................. 13
   *5.2  Objections to Claims* .................................................................................... 13

VI.    DESCRIPTION OF THE PLAN ............................................................................... **14**

   *6.1  Unclassified Claims* ...................................................................................... 14
   *6.2  Administrative Expense Claims* .................................................................... 15
   *6.3  Professional Fee Claims* ............................................................................... 15
   *6.4  Priority Tax Claims* ....................................................................................... 15
   *6.5  Classes of Claims and Equity Interest* ......................................................... 16
   *6.6  Treatment of Claims.* ..................................................................................... 16
   *6.7  Means for Implementation of the Plan* ......................................................... 18
   *6.8  Debtor's Post Confirmation Management* ..................................................... 19
   *6.9  Executory Contracts and Unexpired Leases* ................................................ 19

VII.   LIQUIDATION AND FINANCIAL ANALYSIS ........................................................ **19**

   *7.1  Best Interest of Creditors and Comparison with Chapter 7 Liquidation* ..... 19
   *7.2  Feasibility of the Plan* ................................................................................... 20
       A)   Financial Projections .............................................................................. 20
       B)   Funds and Assets Sufficient for Payments Required under the Plan ........... 21
         a) Real Property ....................................................................................... 21
         b) Personal Property ................................................................................ 21
         c) Accounts Receivable and Liquidated Debts ........................................ 22
         d) Liquidation Analysis ........................................................................... 24
   *7.3  Pending Litigation and Other Liabilities* ..................................................... 22
   *7.4  Leases and Contracts* ................................................................................... 22

VIII.  BAR DATE AND DETERMINATION OF CLAIMS ................................................. **22**

   *8.1  Bar Date* ........................................................................................................ 22
   *8.2  Determination of Claims* .............................................................................. 22

**AZURE DEVELOPMENT, INC.**          **Case No. 23-00462 (ESL)**
*Disclosure Statement*          Page 3

**IX.  ALTERNATIVES TO THE PLAN** ........................................................................................ **23**

     A.  Liquidation Under Chapter 7 ................................................................................ 23

     B.  Dismissal of the Case and Foreclosure by Triangle Cayman Asset Company ........ 23

     C.  Alternative Plan of Reorganization ........................................................................ 24

**XI.  CONCLUSION** ....................................................................................................... **24**

## LIST OF EXHIBITS

Exhibit A- Ballots……………………………………….…………………………..…………………..…....9

Exhibit B- Order Approving Disclosure Statement………………………………………………………10

Exhibit C- Summary of Claims and Plan Payments………………………………………………………13

Exhibit D- Priority Tax Claims………………………………………………………………….…………16

Exhibit E- Cash Flows Projections……………………… …………………………………………………18

Exhibit F- Monthly Operating Reports as of March 31, 2023..…………………………..…………………20

Exhibit G- Liquidation Analysis…..………………………………………………..………………….........19

Exhibit H- Interim Financial Statements as of February 28, 2023…..………………………………….…………19

**AZURE DEVELOPMENT, INC.**                                                    Case No. 23-00462 (ESL)
*Disclosure Statement*                                                         Page 4

## I.  INTRODUCTION

Pursuant to Section 1125 of the United States Bankruptcy Code, 11 U.S.C. §101, *et seq.* (the "Bankruptcy Code"), Azure Development, Inc. debtor, and debtor-in-possession in the above captioned case ("Debtor"), provides this Disclosure Statement (the "Disclosure Statement") to all of its known creditors and parties in interest. The purpose of the Disclosure Statement is to provide such information as Debtor believes may be deemed necessary for its creditors to make an informed decision in exercising their rights to vote on Debtor's Plan of Reorganization (the "Plan"), dated as of the date of the Disclosure Statement. A copy of the Plan is being filed contemporaneously herewith with the United States Bankruptcy Court for the District of Puerto Rico ("Bankruptcy Court").

Debtor recommends that you vote to accept the Plan. Each creditor must, however, review the Plan and the Disclosure Statement carefully, including all exhibits in their entirety, and determine whether or not to accept or reject the Plan based upon that creditor's independent judgment and evaluation. The description of the Plan in the Disclosure Statement is in summary form and is qualified by reference to the actual terms and conditions of the Plan, which should be reviewed carefully before deciding to accept or reject the Plan. Capitalized terms not otherwise defined herein have the same meaning as set forth in the Plan, other terms shall have the meaning ascribed to them in the Bankruptcy Code.

The information contained in the Disclosure Statement has been provided by Debtor based upon Debtor's knowledge of its records, business, and affairs. Except as otherwise expressly indicated herein, the information provided by Debtor in the Disclosure Statement has not been subject to an audit or independent review. Although great efforts have been made to be accurate, Debtor, its counsel, and professional advisors do not warrant the accuracy of the information contained herein.

**AZURE DEVELOPMENT, INC.**                                    Case No. 23-00462 (ESL)
*Disclosure Statement*                                         Page 5

The Disclosure Statement has not yet been approved by the Bankruptcy Court as providing information deemed adequate to permit Debtor's creditors to make an informed judgment in exercising their right to vote for or against the Plan.

No representations concerning Debtor, including the value of its assets, or the aggregate dollar amount of claims which may be allowed are authorized other than as set forth in the Disclosure Statement. Any representations, warranties, or agreements made to secure acceptance or rejection of the Plan by Debtor's creditors that differ from those contained in the Disclosure Statement should not be relied upon in voting on the Plan.

Debtor believes that the Plan provides the quickest recovery and will maximize the return to creditors on their Claims. **ACCORDINGLY, DEBTOR URGES ALL CREDITORS TO VOTE IN FAVOR OF ITS PLAN.**

## II.   SUMMARY OF THE PLAN

The Plan specifies the way the Claims and Interest are to be treated. Allowed Administrative Expense Claims and Allowed Priority Tax Claims are not classified for purposes of voting under the Plan, but the Plan does provide for the treatment of such Claims. The table below provides a summary of the treatment of the Claims and of the various Classes of Claims against Debtor, as well as of Debtor's shareholder's interest in Debtor. To the extent that the terms of the Disclosure Statement vary from those of the Plan, the terms of the Plan will control.

| DESCRIPTION OF CLAIM | CLASS | ESTIMATED AMOUNT OF ALLOWED CLAIM | TREATMENT AND ESTIMATED RECOVERY UNDER THE PLAN |
|---|---|---|---|
| **Holders of Allowed Administrative Expense Claims (Estimated)** | N/A | $25,300.00 | Unimpaired.<br><br>**Estimated Recovery: 100%**<br><br>Except as otherwise agreed to by Debtor and the Holder of an Allowed Administrative Expense Claim, each such Holder shall be paid in full by Debtor in the regular course of Debtor's business or as authorized by the Court, on or before the Effective Date of the Plan (the "Effective Date"). |

**AZURE DEVELOPMENT, INC.**                                      **Case No. 23-00462 (ESL)**
*Disclosure Statement*                                                      Page 6

|  |  |  |  |
|---|---|---|---|
|  |  |  | Payments to Professionals will be made as approved by the Bankruptcy Court. US Trustee Quarterly Fees will be paid when due, with any outstanding balance to be paid on or before the Effective Date. |
| **Priority Tax Claims** | N/A | $14,611.79 | Unimpaired.<br><br>**Estimated Recovery: 100%**<br><br>The secured priority tax claim of Centro de Recaudaciones de Ingresos Municipales' ("CRIM"), shall be paid in full with interest at 5% per annum, in forty-eight (48) equal consecutive monthly installments, commencing on the Effective Date and continuing on the last day of the following forty-seven (47) months. If Debtor's parcels of land, as indicated below are sold prior to the expiration of the 48-month period, the balance then due will be paid in full at that time. |
| **The Secured Claim of Triangle Cayman Asset, Co. ("Triangle")** | **Class 1** | $1,713,834.27<br><br>Estimated Amount For Confirmation Purposes | Impaired.<br><br>**Estimated Recovery: 100%**<br><br>Triangle's claim secured by first mortgages on Debtor's properties at Mata de Platano Ward, Luquillo, Puerto Rico (the "Properties"), as finally allowed by the Court, shall be paid in full through monthly payments of $14,219.48, including principal and interest at 8% per annum, during the 36 months commencing on the Effective Date.<br><br>After the completion of the permitting process for the development of the Properties, during the 36-month period, commencing ion the Effective Date, Debtor will aggressively market and sell the Properties for not less than $4,500,000, and with the proceeds of the sale, will pay any balance due on Triangle's claim at that time.<br><br>During the above 36-month period, Cost Control Company, Inc. ("Cost Control"), Debtor's affiliate, will provide monthly cash advances to Debtor of approximately $12,000 to fund Debtor's payments under the Plan during said period.<br><br>Triangle will retain its lien on the Properties until the full payment of its claim. |
| **The Secured Claim of Mrs. Encarnita Quinlan ("Mrs. Quinlan")** | **Class 2** | $537,680.00 | Impaired.<br><br>**Estimated Recovery: 100%**<br><br>Mrs. Quinlan's claim secured by a second mortgage on the Properties shall be paid in full through monthly payments of $4,497.37, including principal and interest at |

AZURE DEVELOPMENT, INC.          Case No. 23-00462 (ESL)
*Disclosure Statement*          Page 7

| | | | |
|---|---|---|---|
| | | | 8% per annum during 36 months, commencing on the Effective Date.<br><br>Debtor will pay off any pending balance of Mrs. Quinlan's claim with the remaining proceeds from the sale of the Properties after the payment to Triangle.<br><br>Mrs. Quinlan will retain her lien on the Properties until the full payment of her claim. |
| **Insiders' General Unsecured Claims** | **Class 3** | $1,414,964.19 | Impaired.<br><br>**Estimated Recovery: 95%**<br><br>Claims due to Debtor's related parties will be subordinated until the full payment of all other claims under the Plan. During the 36-month period for the sale of the Properties, these claims will not receive any dividends.<br><br>After the payments to Classes 1, 2 and 4 from the sale of the Properties, Class 3 claims will receive 95% thereof as payment in full. |
| **Non-Insiders' General Unsecured Claims** | **Class 4** | $87,500.00 | Impaired.<br><br>**Estimated Recovery: 95%**<br><br>Non-insiders' claims of $20,000 or less, or those that are voluntarily reduced to $20,000, will be paid 95% thereof in 36 equal monthly installments commencing on the Effective Date.<br><br>Claims for more than $20,000 will not receive any dividends during the 36-month period from the Effective Date.<br><br>After the payments to Classes 1, 2 and 4 from the sale of the Properties, the members of Class 4 claims will receive 95% thereof as payment in full. |
| **Interest in Debtor** | **Class 5** | N/A | Unimpaired.<br><br>Estimated Recovery: N/A<br><br>The Holder of the Equity Interest in Debtor will not receive any distribution under the Plan but will retain its shares in Debtor unaltered. |

For a more detailed description of the treatment of the foregoing classes of Claims and Interest, see "Treatment of Claims and Interest Under the Plan".

The Disclosure Statement has been prepared by Debtor to provide creditors with adequate information in order that they can make an informed judgment about the Plan. Each creditor should read the Disclosure Statement and the Plan in their entirety before voting on the Plan. No solicitation of votes on the Plan may be made except pursuant to the Disclosure Statement and no person has been authorized to utilize any information concerning Debtor's assets other than the information contained herein for purposes of solicitation.

## III.   INFORMATION ABOUT THE REORGANIZATION PROCESS

### 3.1     Purpose of a Disclosure Statement

This Disclosure Statement includes background information about Debtor and identifies the classes into which creditors have been placed by the Plan. The Disclosure Statement describes the proposed treatment of each of those classes if the Plan is confirmed. It also contains information concerning the prospects in the event of confirmation or, in the alternative, the prospects if confirmation is denied or the proposed Plan does not become effective.

Upon its approval by the Bankruptcy Court, the Disclosure Statement and the Exhibits thereto will have been found to contain, in accordance with the provisions of the Bankruptcy Code, adequate information of a kind and in sufficient detail to enable a reasonable, hypothetical investor, typical of a holder of an impaired claim or an interest to make an informed judgment about the Plan. Approval of the Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

### 3.2     Voting Procedure

AZURE DEVELOPMENT, INC.                                              Case No. 23-00462 (ESL)
*Disclosure Statement*                                               Page 9

All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing and causing the Ballot Forms accompanying this Disclosure Statement as **Exhibits A-1** to **A-4,** to be returned to the following address:

**Azure Development, Inc.**
**c/o Charles A. Cuprill, Esq.**
**Charles A. Cuprill, PSC Law Offices**
**356 Fortaleza Street (2nd Floor)**
**San Juan, P.R.  00901**

The Ballots must be received **on or before 4:00 P.M. (Eastern Standard Time) on _____, 2023,** to be counted in the voting. Ballots received after this time will not be counted in the voting unless the Bankruptcy Court so orders. Debtor recommends a vote for "ACCEPTANCE" of the Plan.

### 3.3      Ballots

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or equity interests which are "impaired" under the terms and provisions of a Plan are entitled to vote to accept or reject the same, except as provided in Section 1126(g) of the Bankruptcy Code, as to any Class which is deemed not to have accepted the Plan because the Plan provides that the claims or interest of such class do not entitle the holders thereof to receive or retain any property under the Plan on account of such claims or interests.

Members of Classes 1, 2, 3 and 4 are impaired under the Plan and entitled to vote. The members of impaired Classes will be asked to vote for acceptance or rejection of the Plan. A party who holds claims in more than one impaired Class should complete a Ballot for each Class with respect to the applicable portion of the claim included in each Class. The member of Class 5 is unimpaired under the Plan and is not entitled to vote.

### 3.4      The Confirmation Hearing

Pursuant to Section 1128 of the Bankruptcy Code, the Bankruptcy Court has scheduled a hearing on the confirmation of the Plan to commence on _____, **2023** at _____.M., or as soon thereafter as

the parties can be heard. The Confirmation Hearing will be held before the Honorable Enrique S. Lamoutte, United States Bankruptcy Judge, in the United States Bankruptcy Court. At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and in the best interests of holders of claims and the interest. The Bankruptcy Court will also receive and consider a Report of Plan Voting prepared by Debtor, summarizing the votes for acceptance or rejection of the Plan by parties entitled to vote.

The Confirmation Hearing may be adjourned from time to time, without further notice, except for the announcement of the adjourned date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

At the Confirmation Hearing with respect to the Plan, the Bankruptcy Court will (i) determine whether the requisite votes have been obtained for each Class, (ii) hear and determine objections, if any, to the Plan and its confirmation, that have not been previously disposed of, (iii) determine whether the Plan meets the confirmation requirements of the Bankruptcy Code, and (iv) determine whether to confirm the Plan.

Any objection to confirmation of the Plan must be in writing, filed and served as required by the Bankruptcy Court pursuant to the order approving the Disclosure Statement, a copy of which is attached as **Exhibit B** hereto.

**3.5      Acceptances Necessary to Confirm the Plan**

The vote of each holder of an impaired claim is important since at the Confirmation Hearing and as a condition to the confirmation of the Plan on a consensual basis, the Bankruptcy Court must determine, among other things, whether each impaired Class has accepted the Plan. Under Section 1126 of the Bankruptcy Code, an impaired Class is deemed to have accepted the Plan if at least 2/3 in amount and more than 1/2 in number of the Allowed Claims of the Class members who actually cast ballots to accept or reject the Plan, accept the Plan.

Further, unless there is acceptance of the Plan by all members of an impaired Class, the Bankruptcy Court must also determine that under the Plan, Class members will receive property of a value, as of the Effective Date, that is not less than the amount that such Class members would receive or retain if Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

**3.6    Confirmation of the Plan Without the Necessary Acceptances**

If a Class or Classes of impaired Claims do not accept the Plan, Debtor will request confirmation of the Plan under the "cram down" provisions of Section 1129(b) of the Bankruptcy Code, which permit confirmation, notwithstanding non-acceptance by one or more impaired classes, if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to each non-accepting Class, as long as at least one class of impaired creditors votes to accept the Plan. Section 1129(b) of the Bankruptcy Code requires among other things, that claimants must either receive the full value of their claims and if they receive less, that no Class with junior liquidation priority may receive anything. **THESE CALCULATIONS ARE BASED ONLY ON THE CLAIMS AMOUNTS AND NUMBER OF CREDITORS WHO ACTUALLY VOTE. ANY BALLOT THAT IS VALIDLY EXECUTED THAT DOES NOT CLEARLY INDICATE REJECTION OF THE PLAN, SHALL BE DEEMED TO CONSTITUTE A VOTE FOR ACCEPTANCE OF THE PLAN. THE VOTE OF EACH CREDITOR IS IMPORTANT.**

## IV.    GENERAL INFORMATION

**4.1    Description and Historical View of the Debtor.**

Debtor is a privately owned corporation existing under the Laws of the Commonwealth of Puerto Rico since June 10, 2002. Its offices are located at Condominio Esquire Calle Vela 2, San Juan, Puerto Rico. Debtor's shareholder is Fideicomiso Valdés Acevedo.

The Properties, consist of two parcels of land at Mata de Platano Ward, Luquillo, Puerto Rico.

AZURE DEVELOPMENT, INC.                                                                    Case No. 23-00462 (ESL)
*Disclosure Statement*                                                                            Page 12

Management maintains that upon the completion of the permitting process to develop the Properties they can be sold for not less than $4,500,000.

## 4.2    Events Preceding Debtor's Chapter 11 Filing

The ongoing economic downturn and recession faced by Puerto Rico during the last years has adversely impacted numerous sectors and entities of Puerto Rico's economy, including Debtor's real estate development industry. Commencing in 2008, the real estate market was significatively affected, delaying Debtor in the development of the Properties with the resulting adverse effect on its cash flow projections. Recently there has been an upturn for properties such as the Properties developing a significant high end market therefor.

As a result of the aforesaid adverse effect on the real estate market, coupled with the delay in obtaining certain permits for the development of the Properties, Debtor was unable to meet the payments on its obligations, resulting in the filing by Oriental Bank of a collection of money and mortgage foreclosure action against Debtor in case No. SCI2015-00410 with the Court of First Instance of Puerto Rico, Superior Section of Fajardo, substituted by Triangle who purchased Debtor's loan from Oriental Bank.

In an effort to protect the Properties, obtain a breathing spell and the benefits of 11 U.S.C. 362 (a), which stays all collection actions and judicial proceedings, on February 17, 2023, Debtor filed its Chapter 11 petition.

## 4.3    Debtor's Post-Petition Endeavors.

As a result of the filing of the Chapter 11 petition, Debtor received the benefits of 11 U.S.C. § 362(a), which stays all collection actions and judicial proceedings against Debtor, providing Debtor the opportunity to file the Plan and Disclosure Statement, without the pressures driving it into Chapter 11, as envisioned by the Bankruptcy Code.

**AZURE DEVELOPMENT, INC.**                                                          **Case No. 23-00462 (ESL)**
*Disclosure Statement*                                                                Page 13

The United States Trustee convened the first meeting of creditors pursuant to Section 341 of the Bankruptcy Code in Debtor's case on March 24, 2023. The Section 341 meeting was closed.

Debtor has undertaken the following efforts for the benefit of its Estate and creditors:

Debtor sought and obtained the Bankruptcy Court's approval to retain Charles A. Cuprill, Esq. as its bankruptcy counsel.

Debtor also sought and obtained the Bankruptcy Court's approval to retain Luis R. Carrasquillo, CPA ("Carrasquillo"), as its financial advisor on all matters pertaining to Debtor's reorganization.

## V.   CLAIMS AGAINST DEBTOR AND ITS ASSETS

### 5.1   Claims Against Debtor

Claims against Debtor that are Allowed Claims, as defined in the Plan, will be entitled to distribution pursuant thereto, as indicated in pages 5 to 7 hereof.

The Plan provides that only holders of Allowed Claims, that is, holders of Claims not in dispute, not contingent, liquidated in amount and not subject to objection or estimation are entitled to receive distribution thereunder. Until a claim becomes an Allowed Claim, distribution will not be made to the holder of such claim.

### 5.2   Objections to Claims

The amounts set forth as due to holders of unclassified and classified claims are estimates only, based upon Debtor's Schedules or Debtor's belief as to amounts due thereto. Debtor includes as **Exhibit C** hereto, a Summary of Claims and Plan Payments.

Objections to Claims must be filed and served by the Claims Objection Bar Date, which as set forth in the Plan is the later of (i) the date that such claim becomes due and payable in accordance with its terms, or (ii) fifteen (15) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of the Plan. If an objection has not been filed to a Claim by the Claims Objection Bar Date, the Claim will be treated as an Allowed Claim.

Objections to Claims filed in Debtor's Chapter 11 case are to be prosecuted by Debtor, including any application to estimate or disallow Claims for voting purposes. As of the date of this Disclosure Statement, Debtor has only filed an objection to claim, as follows:

| POC # | Claimant | Total Amount Claimed | Classification of the Claim by Claimant | Amount Subject to Be Allowed | Reason for Objection |
|---|---|---|---|---|---|
| 01 | Triangle Cayman Asset Co. | $2,004,592.48 | Secured | $1,713,834.27 | On February 28, 2023, Triangle filed proof of claim number 1 (the "Claim"), for $2,004,592.48. Upon an examination thereof, which includes legal fees, costs, interest and other charges  interest and costs to be determined by the Court, on April 12, 2023 Debtor objected the same.<br><br>Based on the above, the POC must determined by the Court or estimated for confirmation purposes. |

## VI.   DESCRIPTION OF THE PLAN

The following is a summary of the significant provisions of the Plan and is qualified in its entirety by said provisions. A copy of the Plan has been filed contemporaneously herewith. In the event and to the extent that the description of the Plan contained in the Disclosure Statement is inconsistent with the Plan, the provisions of the Plan shall control and take precedence. All creditors are urged to carefully read the Plan.

### 6.1   Unclassified Claims

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified in the Plan. A description of the unclassified claims and the claims in each class, as well as the estimated principal amounts thereof as of the Effective Date and their treatment, are set forth in the Plan and summarized at pages 5 to 8 hereof. Administrative Expense Claims are generally the ordinary and necessary costs of administering and operating during a Chapter 11 case.

AZURE DEVELOPMENT, INC.                                                                              Case No. 23-00462 (ESL)
*Disclosure Statement*                                                                               Page 15

## 6.2    Administrative Expense Claims

Except as otherwise agreed to by Debtor and the holder of a pending Allowed Administrative Expense Claim, each such holder, shall be paid in full in the regular course of Debtor's business or as authorized by the Court, on or before the Effective Date. US Trustee Quarterly Fees will be paid when due, with any outstanding balance to be paid on or before the Effective Date.

If Debtor disputes any portion of an Administrative Expense Claim, Debtor shall pay such Claim within thirty (30) days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim. Debtor will reserve the necessary funds to meet these payments.

## 6.3    Professional Fee Claims

The professionals retained by Debtor in Debtor's Chapter 11 case have and will incur fees and expenses from the date of their retention through the Effective Date of the Plan. It is impossible to predict the amount of professional administrative expense fees that will be incurred through the Effective Date of the Plan. As of the filing of this Disclosure Statement, Debtor has paid $10,000.00 to its Court appointed financial consultant CPA Luis R. Carrasquillo & Co., PSC and a $16,000 retainer to its Debtor's court appointed counsel, Charles A. Cuprill, P.S.C. Law Offices. Debtor estimates that additional Allowed Professionals Fee Claims will range between $25,000 and $30,000, for unpaid services rendered and expenses incurred up to the Confirmation of the Plan. All amounts paid to professionals through the Confirmation Date, including interim fees, are subject to final Bankruptcy Court approval. Debtor reserves the right to contest the allowance of any professional fees.

## 6.4    Priority Tax Claims

Priority Tax Claims (secured and unsecured) are Claims entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

The secured priority claim of Centro de Recaudaciones de Ingresos Municipales' ("CRIM") shall be paid in full with interest at 5% per annum in forty-eight (48) equal consecutive monthly installments

AZURE DEVELOPMENT, INC.          Case No. 23-00462 (ESL)
*Disclosure Statement*          Page 16

commencing on the Effective Date and continuing on the last day of the following forty-seven (47) months.

CRIM's estimated Priority Tax Claim is listed in **Exhibit D** hereto.

**6.5**      **Classes of Claims and Equity Interest**

As of the Petition Date, Debtor had secured and non-priority unsecured debt, as more particularly described below and in pages 5 to 8 hereof. The Plan classifies the various claims against Debtor. A description of all classes of Claims and the Equity Interest, the estimated principal amount of each Class as of the Effective Date, and their treatments are set forth below.  The Classes of Claims and the Interest in Debtor set forth in the Plan are as follows:

Class 1 –     The Secured Claim of Triangle Cayman Asset, Co. ("Triangle") – Consisting of Triangle's claim secured by first mortgages on the Properties, as may be finally allowed by the Court, but listed at $1,713,834.27 for confirmation purposes.

Class 2 –     The Secured Claim of Mrs. Encarnita Quinlan ("Mrs. Quinlan") – Consisting of a claim for $537,680.00 secured by a second mortgage on the Properties.

Class 3 –     Insiders' General Unsecured Claims - Consisting of Insiders' Non-Priority General Unsecured Claims.

Class 4 –     Non-Insiders' General Unsecured Claims - Consisting of Non-Insiders' Non-Priority General Unsecured Claims.

Class 5 -     Interest in Debtor – Consisting of the Equity Holder, Fideicomiso Valdés Acevedo.

**6.6**      **Treatment of Claims.**

Class 1 – Secured Claim of Triangle

(a)     Impairment and Voting - Class 1 is impaired under the Plan and is entitled to vote to accept or reject the Plan.

(b)     <u>Distribution</u> – Triangle's claim secured by a first mortgage on the Properties, located at Mata de Platano Ward, Luquillo, Puerto Rico, as finally allowed by the Court, shall be paid in full through monthly payments of $14,219.48, including principal and interest at 8% per annum, during 36 months commencing on the Effective Date.

After the completion of the permitting process for the development of the Properties, during the 36-month period, commencing on the Effective Date, Debtor will aggressively market and sell the Properties for not less than $4,500,000, and with the proceeds of the sale, will pay any balance due on Triangle's claim at that time.

During said 36-month period, Cost Control Company, Inc. ("Cost Control"), Debtor's affiliate, will provide monthly cash advances to Debtor of approximately $12,000 to fund the payments to be made during such period. .

Triangle will retain its lien on the Properties until the full payment of its claim.

<u>Class 2 – The Secured Claim of Mrs. Quinlan</u>

(a)     <u>Impairment and Voting</u> - Class 2 is impaired under the Plan and is entitled to vote to accept or reject the Plan.

(b)     <u>Distribution</u> – Mrs. Quinlan's claim shall be paid in full in monthly payments of $4,497.37, including principal and interest at 8% per annum, during 36 months, commencing on the Effective Date. Debtor will pay off any pending balance of this claim with the remaining proceeds from the sale of the Properties after the payment of Class 1. Mrs. Quinlan will retain her security interest on the Properties until the full payment of her claim.

<u>Class 3 –Insiders' General Unsecured Claims</u>

(a)     <u>Impairment and Voting</u> - Class 3 is impaired under the Plan and is entitled to vote to accept or reject the Plan.

(b)     <u>Distribution</u> – Insiders' claims due to Debtor's related parties will be subordinated, until the full payment of all other claims to be paid pursuant to the Plan. During the 36-month sale period of the Properties indicated under Class 1, these claims will not receive any dividends. However, upon the sale of the Properties, if after the payments to Class 1, 2 and 4 there are remaining funds, these claims will receive 95% thereof as payment in full.

<u>Class 4 –Non-Insiders' General Unsecured Claims</u>

(a)     <u>Impairment and Voting</u> – Class 4 is impaired under the Plan and is entitled to vote to accept or reject the Plan.

(b)     <u>Distribution</u> – Non-insiders' claims for $20,000 or less, or those that are voluntarily reduced to $20,000, will be paid 95% thereof in 36 equal monthly installments commencing on the Effective Date to be advanced to Debtor by Cost Control. Claims in excess of $20,000 in this Class will not receive any dividends during this 36-month period. However, upon the sale of the Properties, if after the payments to Class 1 and 2 there are remaining funds, the claims in excess of $20,000 will receive 95% thereof, as payment in full satisfaction thereof.

<u>Class 5 – Interest in Debtor</u>

(a)     <u>Impairment and Voting</u> - Class 5 is unimpaired under the Plan and is not entitled to vote to accept or reject the Plan.

(b)     <u>Distribution</u> – Fideicomiso Valdés Acevedo will not receive any distribution under the Plan but will retain its shares in Debtor unaltered.

**6.7     Means for Implementation of the Plan**

Except as otherwise provided in the Plan, Debtor will effect payment of Administrative Expense Claims, Priority Tax Claims, Allowed Secured and Unsecured Claims as indicated above, from the cash advances to be provided by Cost Control, the funds in Debtor's in possession account, and those  on

deposit with the Court of First Instance of Puerto Rico, Superior Section of Fajardo in  Case No. NSCI 2015cv00410and expected to be received  by Cost Control. The remaining payments to the secured and unsecured claimants will be made from the proceeds of the sale of the Properties. See **Exhibit E** for Debtor's Cash Flows Projections showing the feasibility of the Plan.

**6.8**  **Debtor's Post Confirmation Management**

Debtor's post-confirmation management will consist of its president, Mr. Alfonso Valdes Garcia and its vice-president Mr. José Ricardo Martinez.  None of them will receive any compensation.

**6.9**  **Executory Contracts and Unexpired Leases**

All executory contracts and unexpired leases, if any, which have not expired by their own terms or that are rejected on or prior to the Confirmation Date, shall be deemed as assumed on the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumption pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

If the rejection of any executory contracts or unexpired leases results in a claim for damages by the other party or parties to such contract or lease, any claim for such damages, if not evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Estate, or its properties, its agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for Debtor on or before forty-five (45) days following the Confirmation Date. Debtor retains the right to object to any rejection damages claims filed in accordance with this Section.

## VII.   LIQUIDATION AND FINANCIAL ANALYSIS

**7.1**  **Best Interest of Creditors and Comparison with Chapter 7 Liquidation**

In the event Debtor's Chapter 11 case is converted to Chapter 7 of the Bankruptcy Code, a Chapter 7 Trustee will be appointed for Debtor's Estate to liquidate the Estate's assets pursuant to the provisions of the Bankruptcy Code, after attending to the immediate issues of securing the same. A Liquidation Analysis with respect to Debtor's assets as of the filing date, is attached as **Exhibit G** hereto

(the "Liquidation Analysis"). The Liquidation Analysis reflects that under a liquidation scenario, there will be NO funds for distribution to the general unsecured creditors after paying secured claims and Chapter 7 liquidation expenses.

The Liquidation Analysis reveals that in the event of a liquidation of the Properties, there would be a substantial loss to Debtor's Estate, considering the Chapter 7 costs of administration and the expected value of the Properties in a liquidation scenario and that in such event, the General Unsecured Creditors would not receive any dividends on their allowed claims, while in Chapter 11 the respective creditors are expected to receive from 95% to 100% of their claims, underscoring the benefits of the confirmation of the Plan and its effectiveness.

Confirmation of the Plan will ensure that holders of Administrative Expense Claims, Allowed Priority Claims, Secured Claims and Allowed General Unsecured Claims will receive prompt and higher dividends.

The Liquidation Analysis contains estimates and assumptions that, although developed and considered reasonable by Debtor, are inherently subject to significant economic uncertainties and contingencies beyond its control.

## 7.2    Feasibility of the Plan

### A)    Financial Projections

The feasibility of the Plan rests on the sale of the Properties, the cash advances to be received from Cost Control and the recovery by Cost Control of the funds on deposit in Case No. NSCI 2015cv00410. Debtor's Cash Flows Projections are presented in **Exhibit E** hereto.

Cost Control is a corporation established in accordance with the laws of Puerto Rico and is engaged in the administration of public housing with offices at Ave. Juan Ponce de León, Vela Street, Esquire Building, 5th Floor, Suite 501, San Juan, PR 00918. Its shareholder is also Fideicomiso Valdés Acevedo.

As **Exhibit F**, Debtor is attaching its Operating Report for March 31, 2023. and **Exhibit H**, with Debtor's estimated balance sheet as of the same date.

As of the Petition Date, Debtor owned assets and had liabilities, as more particularly described in its Schedules and Statement of Financial Affairs, filed with the Bankruptcy Court on February 17, 2023 (Docket No.1), as subsequently amended and/or supplemented.

Debtor's Schedules and Statement of Financial Affairs are available for public inspection at the office of the Clerk of the Bankruptcy Court during regular business hours.

**B)  Funds and Assets Sufficient for Payments Required under the Plan**

Debtor has prepared and filed with the Bankruptcy Court a monthly operating report summarizing its post-petition financial performance. The monthly operating report and Debtor's Schedules, Statement of Financial Affairs, and schedules of executory contracts are available for public inspection at the office of the Clerk of the Bankruptcy Court during regular business hours. They, together with Debtor's Projections attached hereto (primarily to be funded as indicated above.by Cost Control, reveal Debtor's ability to make the payments required to be made under the Plan.

**a)  The Properties**

As of the Petition Date, Debtor was the owner of the Properties, listed below with their current estimated value:

| | |
|---|---:|
| Property No. 4969: 53,686.37 square meters, rustic parcel of land at Mata de Platano de Platano Ward, Luquillo, Puerto Rico, Cadaster No. 092-000-003-03-998. | $  2,160,331.04 |
| Property No. 5722: 20,413.18 square meters, rustic parcel of land at Mata de Platano Ward, Luquillo, Puerto Rico, Cadaster No. 092-055-006-18-000. | 982,462.99 |
| | $ 3,142,794.02 |

**C)  Personal Property**

As of the Petition Date, Debtor didn't own any personal property.

**D) Accounts Receivable and Liquidated Debts**

NONE.

**E) Liquidation Analysis**

In order to analyze realistic liquidation scenarios and considering updated balances in the Liquidation Analysis included as **Exhibit G** hereto, Debtor has utilized the estimated value of the Properties as of March 31, 2023.

**7.3    Leases and Contracts**

As set forth in Section 6.9 above, all executory contracts and unexpired leases which have not expired by their own terms or have been rejected on or prior to the Confirmation Date, if any, shall be deemed **assumed** on the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumption pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code.

## VIII.  BAR DATE AND DETERMINATION OF CLAIMS

**8.1    Bar Date**

On February 21, 2023, in the "Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines" issued in Debtor's case, the Bankruptcy Court fixed June 22, 2023, as the bar date for the filing of proofs of claims and interests (except for Governmental Units), and August 21, 2023 for such filings by Governmental Units.

**8.2    Determination of Claims**

The Plan specifies procedures for objecting to claims. Debtor and any other entity authorized under the Bankruptcy Code may object to Claims within fifteen (15) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of the Plan. Except as otherwise provided in the Plan, no payments will be made under the Plan on account of Disputed Claims until their allowance by the Bankruptcy Court. The Plan provides that Distributions on Disputed Claims will be held in reserve

until the Disputed Claims are allowed (at which time any reserves therefor will be distributed, and the Claims will be treated according to the terms of the Plan) or disallowed.

Any Claims which (a) are not listed as an Allowed Claim on Debtor's Schedules, as amended; (b) are not evidenced by a valid, timely filed Proof of Claim; or (c) are not listed in the Plan or Exhibits to the Plan as Allowed Claims, shall not receive any distribution under the Plan until the same become Allowed Claims, and shall be disallowed and discharged if they are not Allowed by Order of the Bankruptcy Court.

## IX.  ALTERNATIVES TO THE PLAN

If the Plan is not confirmed and consummated, the alternatives include (a) Debtor's liquidation under Chapter 7 of the Bankruptcy Code, (b) dismissal of Debtor's Chapter 11 Case, or (c) the proposal of an alternative plan.

### A.    Liquidation Under Chapter 7

If a plan cannot be confirmed, Debtor's Chapter 11 case may be converted to Chapter 7 of the Bankruptcy Code, in which case a trustee would be elected or appointed to liquidate Debtor's assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code.

As set forth in the Liquidation Analysis, **Exhibit G** hereto, Debtor believes that conversion of the Case to Chapter 7 of the Bankruptcy Code will result in no distribution to creditors other than to those secured by the Properties up to the value thereof and due to their probable lack of equity in a liquidation scenario, in a delay in distribution on account of such conversion, due to the encumbrances thereon.

Thus, Debtor believes that the interests of creditors and the goals of Chapter 11 are better served by the confirmation of the Plan.

### B.    Dismissal of the Case

Dismissal of the Chapter 11 case would likely create substantial problems for all parties involved, including a run to the courthouse and the foreclosure of the Properties by Triangle, which will result in an

abandonment of the orderly and structured equitable payments provided by the Plan. Therefore, dismissal of the Case is not a viable alternative for creditors.

    **C.**    **Alternative Plan of Reorganization**

If the Plan is not confirmed, at present, Debtor does not foresee a different plan. Debtor believes that the Plan will provide the greatest and most expeditious return to creditors.

## X.  TAX EFFECTS

Based on the provisions of the Puerto Rico Internal Revenue Code, as amended, and the Bankruptcy Code, the implementation of the Plan will not have any adverse tax effects on Debtor.

## XI.  CONCLUSION

Debtor submits that the Plan is fair and equitable and in the best interest of the Estate and creditors and offers the best possible recoveries thereto. Therefore, Debtor urges creditors to vote in favor of the Plan.

San Juan, Puerto Rico this 20th day of April 2023.

**AZURE DEVELOPMENT, INC.**

**By: José Ricardo Martinez**

**Vice-President**