IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 23-00462 ESL |
| AZURE DEVELOPMENT INC. | CHAPTER 11 |
| Debtor | |

MINUTES OF HEARING HELD ON MAY 31, 2023

The instant adversary proceeding came before the court on May 31, 2023, for a hearing to consider Triangle Cayman Asset Company's ("Triangle") *Motion to Dismiss Chapter 11 Bankruptcy Case or, In the Alternative, for Conversion to Chapter 7* (dkt #29), as supplemented (dkt #35); and Debtor's *Answer to Motion to Dismiss or Convert to Chapter 7* (dkt #45). On May 28, 2023, the parties filed a *Joint Report on Motion to Dismiss or Convert Bankruptcy Case to Chapter 7 Proceeding* (dkt #79). On May 30, 2023, the Debtor filed a *Motion Submitting Debtor's Exhibits to Joint Report (Docket No. 79)* (dkt #80).

PARTIES PRESENT

Charles A. Cuprill, Esq. for Debtor

Mr. Alfonso Valdés, President of Debtor

Luis Carrasquillo, Debtor's financial consultant

Luis Marini Biaggi, Esq. for Triangle Cayman Asset Company

ARGUMENTS PRESENTED AT THE HEARING

The Court began by stating that the matter before the court is Cayman's motion to dismiss and the Debtor's opposition. Mr. Cuprill, on behalf of the Debtor, stated that he understood that what is scheduled for today is a pre-trial hearing. He further stated that he had no problems entering into the merits and that he had an issue of law to present to the court. The Court replied that it will double check the notice of the hearing and the notes of the pending motion and the joint report that was filed. The Court stated that there are two orders scheduling matters (dkt #46 & 47). The order at docket #46 is an order granting the joint hearing to reschedule the hearing on

1  the motion to dismiss. The second order at docket #47 is setting a pre-trial conference as to
2  Debtor's objection to claim #1. The court noted that the objection has not been answered because
3  after the extension was granted the deadline lapses tomorrow. Mr. Marini, on behalf of Triangle
4  stated that is the way he understood it and that he is prepared to present the motion to dismiss.

5        The Court stated that he will hear from the Debtor first because he stated that there is a
6  legal issue he wanted to present before the Court. Mr. Cuprill stated that in conformity with the
7  order rendered a joint report as to the motion to dismiss or convert was filed at docket #79. He
8  further stated that since Mr. Marini, represents the movant, thus he should present first the merits
9  of the case.

10        The Court inquired if the issues of law were as to the motion to dismiss. Mr. Cuprill
11  clarified that the issue of law is as to the motion to dismiss and forms part of the legal argument
12  that based upon the stipulated facts and the supporting documents there is no cause pursuant to
13  11 U.S.C. §1112(b)(1). Therefore, based on the jointly stipulated documents, the burden that lies
14  on the moving party pursuant to section 1112 is absent in this case.

15        The Court stated that it will consider the motion to dismiss filed by Triangle on the merits.
16  The Debtor's statements as to the legal cause of action are premature at this time because the
17  movant has not presented the evidence before the court. The Court noted that the key question is
18  to determine if the proposed plan period of three years to sell the real estate property is a
19  reasonable period under the totality of the circumstances, taking into account the circumstances
20  that have transpired since the Debtor obtained the loan, and considering the Puerto Rico permit
21  process problems.

22        The Court also noted that the approval of the disclosure statement has not been scheduled
23  for a hearing because the court was waiting for the hearing on the motion to dismiss. Moreover,
24  there are also several interrelated issues, such as the Debtor's objection to the proof of claim
25  which is based on the extent of the amounts owed, and the pending matter before the state court
26  as to the litigious credit provisions of the Puerto Rico Civil Code. There is also pending the motion
27  to modify the automatic stay which is scheduled for a hearing to be held on June 13, 2023, as

well as the adversary proceeding in which the Debtor has requested the court to extend the applicability of the provisions of the automatic stay to related insiders or third parties. The set of facts are interrelated, and that has been corroborated in the joint report in which there are many factual issues which are uncontested, and the ultimate issue is the period in which the payment will be made and why that period is reasonable. Ultimately, this court will have to decide the motion to dismiss if the parties do not find a business solution.

Mr. Cuprill replied that he would like to clarify that at this point in time and the plan so provides, the Debtor is not involved in developing the multi-residential unit luxury project. The endeavors are directed towards the selling of the land with all the permits. The Court stated that if the permits are obtained, then value of the property will increase. The Court stated that it will now hear from Mr. Marini on behalf of Triangle.

Triangle filed the motion to dismiss based upon 1112(b)(4)(A), which requires that the Court finds that the Debtor is suffering a continuing or substantial loss or diminution and that there is an absence of a reasonable likelihood of rehabilitation. Mr. Marini stated that he submits to the Court that the facts necessary for the Court to make those findings are uncontested. There are a number of cases analyzing section 1112(b)(2)(A) which have been cited in the pre-trial report. To determine if there is a substantial or continuing loss, courts typically look if there is a negative cash balance and whether the debtor is making enough income to satisfy post-petition expenses. It is uncontested that the Debtor is operating at a negative cash balance. The Debtor has stipulated that it did not generate any pre-petition income/revenues (statement of uncontested fact #40) ("SUF"); and that it did not generate any post-petition income/revenues (SUF #48). It is also uncontested that even though the Debtor has not generated any income, it has incurred in expenses for professional fees and U.S. Trustee fees.

Even though the Debtor and Triangle have not agreed on the amount of Triangle's claim, only a portion of that claim has been objected to by the Debtor. The amount of the claim that the Debtor has not objected is the amount of $1,549,000 (SUF #2,3 & 4). The Debtor and Triangle have not agreed on the value of the collateral, they both agree that Triangle's collateral is worth

more than its claim (SUF #39 &45). Thus, Triangle is an over secured creditor which can accrue and collect post-petition interest, post-petition attorney's fees and costs. In this case, the state court already rendered a Judgment granting in full Triangle's complaint as to the validity of the loan documents and Triangle's claims against the guarantors. In that Judgment, the state court found that the per diem interest that Triangle would accrue is approximately $213. The state court Judgment is adjoined Exhibit 8.

The Debtor since the petition date has accumulated approximately $24,000 in post-petition interest to Triangle. The summation of all of the Debtor's post-petition expenses that we are aware of through March 31 approximately amounts to $74,000 and has generated no income. These are uncontested facts and based on your honor's case law it shows that the Debtor is operating at a negative cash flow.

The second prong of 1112(b)(4)(A) is an absence of a likely rehabilitation which typically requires two findings; namely, if there is an outside source that is going to cure the debtor's losses and that the debtor can rehabilitate. In terms of the first question, the Debtor in the operating reports has included some funds advanced by third parties which approximately add to $20,000. The Debtor has not disclosed who is the entity loaning these amounts. The Debtor has not filed a motion requesting approval for post-petition financing and has not disclosed the terms of repayment nor the identity of the entity providing the loans. These could be separate and independent grounds for conversion or dismissal. The monies loaned by Debtor are not enough to cover accrued expenses. The Debtor has accounted for the advances as liabilities in the balance sheets attached to the MORs. Therefore, the Debtor will have to repay these amounts. Lastly, this prong requires the Court to find whether there is a reasonable rehabilitation. Rehabilitation is not the same as confirming a plan or reorganization. Reorganization can improve a sale or liquidation of assets, rehabilitation does not. Rehabilitation incudes rehabilitating a business and there is no business to rehabilitate here. Therefore, Triangle is not arguing feasibility or whether the Debtor can confirm a plan today, because these are not necessary determinations to dismiss a case. Rehabilitation does not include liquidation or sale of assets and that is what the Debtor is doing.

1. The Debtor intends to sell raw land as is. Raw land is not a business. The Debtor has no employees or payroll. Rehabilitation in the context of 1112(b)(4) does not include a chapter 11 liquidating plan. The case law supporting this is included in the pre-trial report. Even if the Debtor can confirm this plan, that is not rehabilitation pursuant to the case law interpretation of 1112(b)(4)(A). The elements that the Court has used in prior cases to find substantial diminution to the estate and the absence of rehabilitation are all uncontested facts and admissions by the Debtor and they are included in the pre-trial report. Mr. Marini stated that he has no evidence to present because the evidence is uncontested and has been admitted by the Debtor in the pre-trial and those admissions are based on documents the Debtor already filed under oath such as the operating reports, plan, disclosure statement, the schedules, and the statement of financial affairs.

Mr. Marini further stated that Triangle has a second request for dismissal for abstention under section 305. Mr. Marini argued that the elements that courts typically used to consider abstention are all present here and are uncontested. The Debtor has stipulated in the pre-trial that this is a two-party dispute. No other creditor has objected to any matter in this case. All the contested matters are between the Debtor and Triangle. It is also uncontested that the state court in Fajardo has been attending to this two-party dispute for eight years. The state court finally issued Judgment granting Triangle's Complaint in full against all loan parties except the Debtor. It did not grant Judgment against the Debtor because it filed for bankruptcy. The Judgment is the result of an unopposed motion for summary judgment filed by Triangle. The Debtor filed for bankruptcy after the time to oppose the motion for summary judgment had lapsed. Thus, the state court is the forum that should continue to evaluate this two-party dispute. Moreover, the state court is familiarized with the Debtor's unfounded allegations regarding litigious credit and the same has already been resolved by the Supreme Court.

Mr. Marini addressed the Debtor's allegations in the pre-trial report regarding whether Triangle has met the burden to show that the petition was filed in bad faith and whether the Debtor has shown unusual circumstances. He stated that Triangle is not arguing that the petition was filed in bad faith. Moreover, when the cause for dismissal or conversion is under section 1112(b)(4)(A)

the unusual circumstances exception does not apply. Mr. Marini stated that he rests on his pleadings as the pre-trial report provides uncontested facts stipulated by the Debtor supported by admissions made by the Debtor based on documents filed under oath which evince all the elements to dismiss today.

The Court inquired whether Triangle's position is that the motion to dismiss should be deemed submitted based upon the joint report and the facts included therein and the exhibits. Mr. Marini replied in the affirmative. The Court advanced that it will not issue a bench decision because he wants to have more time to study in detail all the factual and legal arguments included in the recently filed joint report and to provide some time for the parties to reach a business solution. The Court stated that in the motion to dismiss and the pre-trial report and there are two allegations; namely: (i) dismissal under section 1112(b)(4)(A) and (ii) dismissal under abstention under section 305. The Court further stated that under 1112(b)(4)(A) there is no issue that there is a diminution of the estate due to the non-payment of the over-secured claim which affects the equity the property may have. The key issue is the reasonable likelihood of rehabilitation within the context of a liquidating chapter 11 plan, assuming that it is confirmed. The Court stated that it will read in more detail Triangle's allegations that reasonable likelihood of rehabilitation does not apply to a chapter 11 liquidating plan. The Court explained that Triangle's legal position depends on the bottom line as to whether the plan's proposition to sell the property in three (3) years is a reasonable period under the totality of the circumstances. Ultimately, the debt to Triangle will be paid through the sale of a confirmed plan or a foreclosure in state court. The Court is assuming the interest of Triangle is getting paid at the agreed upon interest as soon as possible, and not owning the real estate property. As to the two-party dispute, in this Circuit there is a case, In re Efron, 529 B.R. 396 (B.A.P. 1st Cir. 2015), in which the issue of 305 abstention and the legal standard of a two-party dispute was discussed. The BAP decision on appeal discusses the matter of the court's ability to enter a dismissal through abstention without an evidentiary hearing. In this case, this issue may not be as critical because at least the movant is submitting the case based upon the joint report, the exhibits, and the allegations therein.

The Court further stated that upon reading the documents, the Court is concerned as to Puerto Rico's permit process problems which have been in the local newspapers for the past three to four years and were highlighted when a decision from the Puerto Rico Supreme Court was rendered in March 2023 in which the regulations for the permit process appear to be in limbo. There are issues concerning obtention of permits in Puerto Rico and this reality presents conflicting connotations such as the ability to obtain the permits to increase the value of the property. The permit process presents a challenge which could mean that requesting time to obtain the permits is also a factor to be considered by the court.

The Court inquired whether it is Triangle's position that whether three years is a reasonable period does not affect the request for dismissal under 1112(b)(4)(A) and the reasonable likelihood of rehabilitation does not apply under a chapter 11 liquidating plan. Mr. Marini replied in the affirmative and cited the following cases: In re Material Management, 2014 Westlaw 2468313, *6; In re Ortiz Jimenez, 2018 Westlaw 5883912, *5; In re Horned Dorset Primavera, 606 B.R. 117, 149 to support Triangle's position. Furthermore, the loan documents signed in 2003 were for the development of a residential complex and it had a balloon to repay in full by the year 2014. The Debtor has not included any case to contradict these legal arguments.

Mr. Cuprill stated that he will present two witnesses: namely Mr. Valdés to testify as to his efforts in obtaining the permits and that there are only two (2) pending permits to be obtained and Mr. Carrasquillo to establish the feasibility of the plan and the proposed adequate protection of monthly payments at an 8% interest rate included in the plan which will be paid to Triangle until the property is sold. In this case, Cost Control, an affiliate, is financing the cash flow shortfalls of the case because it will recover said amounts when the property is marketed and sold in the regular course of business. The affiliates will finance the Debtor until sale of land. Mr. Valdés will establish why the nature of the project changed, the reasons for the delay, the existing economic conditions in Puerto Rico for luxury properties, the available Law 60 purchasers for this property, and the conservative three-year period to sell the property that was included in the plan. The value of the property will increase with the efforts being undertaken by Mr. Valdés.

The Court stated that at this juncture it is not considering good faith or bad faith. The Court will consider the two issues raised by Triangle. The Court stated that it did not have in its notes that adequate protection payments were being paid to Triangle and thus there was no diminution of the estate. The Court noted that the proposed plan does not include a provision for adequate protection payments or interim payments.

Mr. Cuprill clarified that the plan and the disclosure statement proposes that as of the effective date until the properties are sold monthly payments in the amount of $14,219.48 (including principal and interest) will be made to Triangle during the 36 months commencing on the effective date (dkt # 44, Disclosure statement, p. 6). The effective date of the plan is ninety days after confirmation. During the 36-month period, Cost Control will provide monthly cash advances in the amount of $12,000 to fund Debtor's payments under the plan. The Debtor's real estate is not an income producing property.

Mr. Marini argued that based on the stipulated facts there is clearly a diminution, since Triangle has not received and is not receiving any adequate protection payments and the Debtor continues to accumulate post-petition liabilities. Currently, the estate is suffering a substantial and continuing diminution. A chapter 11 plan can propose a sale of assets but a rehabilitation standard under 1112(b)(4)(A) cannot. Rehabilitation is not the same as reorganization. Chapter 11 liquidation is not available to defeat a motion to dismiss under 1112(b)(4)(A). The standard to evaluate substantial or continuing loss or diminution to the estate is cash flow and whether the debtor is producing enough income to pay post-petition expenses, not whether the real estate is retaining its value. The Debtor has not provided case law to sustain its position.

Mr. Marini objected to the relevance of sitting witnesses. Even though, Triangle's position is that it strongly believes that the plan cannot be confirmed and opposes the same, that is not being contested today. The Debtor in the joint report has not cited a single case to refute Triangle's legal position.

The Court inquired whether the proposed findings by the Debtor as to Mr. Valdés' testimony include the issue that there are two permits pending and which are they. Mr. Cuprill

replied that it was not included as a specific finding of fact. Mr. Cuprill stated that as to Mr. Marini's argument, the doors would be closed to single asset real estate properties that depend for its reorganization on the sale of the property. The Court has noted that the argument is that the Debtor nor its affiliates have not made any post-petition adequate protection payments to Triangle and that they are included in the proposed plan. Mr. Cuprill replied that they are not required to make adequate protection payments because the plan and the disclosure statement were timely filed. The Court stated that is a legal conclusion which the Court will have to make.

The Court stated that it will hear the testimony of Mr. Valdés exclusively as to the issue of the permits. Mr. Marini objected because this fact was not included in the pre-trial report by the Debtor to put into evidence. The Court noted that Triangle's position is that irrespective of what Mr. Valdés testifies, it will not have any effect on the requirements of 1112(b)(4)(A). Mr. Marini stated that is the reason he is objecting based on relevance.

<u>Mr. Alfonso Valdés Testimony- Direct</u>

Mr. Alfonso Valdés testified that he has been the president of Azure Development for the last 18 years and currently holds that position. Mr. Valdés testified that the Debtor has two properties which add up to 19.1 acres and they are located in Luquillo, Puerto Rico. He testified that ID 1 is a marketing agreement with a marketing company in the United States. Mr. Valdés testified that the properties were originally purchased to develop multifamily residences in the years 2004-2005. In the year 2006, section 936 (Section 936 of the U. S. Internal Revenue Code exempted U. S. based companies operating in Puerto Rico and other U. S. possessions from paying federal income taxes on the production of their subsidiaries.) was eliminated and in the year 2008 there was a worldwide economic crisis, and, consequently, the construction industry ceased in Puerto Rico. As a result, the property was offered for sale, but as they were in that process, the bankruptcy of the Puerto Rico government and PROMESA (The Puerto Rico Oversight, Management, and Stability Act, Pub. L. 114-187, is a U. S. federal law enacted in 2016that established a financial oversight board, a process for restructuring debt, and procedures for approving critical infrastructure projects to combat the Puerto Rico government debt crisis.)

was taking place. Thereafter, there were two hurricanes and then the pandemic. He stated that in those years it was impossible to market a property because nobody was buying. He testified that currently they are marketing the properties through the two largest marketing companies for properties in the United States. Mr. Valdés testified that the permits need to be in place because nobody will buy the properties without the permits. He further testified that one of the permits, the jurisdictional determination permit issued by the U.S. Army Core of Engineers, was obtained. The pending permit is "la zona marítimo terrestre" and, on June 8, 2023, the Puerto Rico Department of Natural Resources will hold a public hearing as to the "zona marítimo terrestre." Mr. Valdés stated that this permit should be in place within six to eight months. He testified that once this permit is obtained, the flood gates would open with offers. Mr. Valdés stated that during the last eight to ten months there has been a dramatic change in the real estate market in Puerto Rico, in particular for high end properties. Mr. Valdés stated that once the permit is obtained, the marketing efforts will be doubled, and he guesstimates that the property could be sold in one to three years. He testified that both of these permits last for five years. Mr. Valdés testified that once the property is sold, the intention is to repay all or debts, starting with Triangle. He stated that the property is being listed for $8.25 million and thus far they have had three interested parties.

Mr. Valdés testified that Cost Control has been financing Azure Development's permitting process. He stated that Azure and Cost Control have the same owners. He testified that he was the president of the Board of Cost Control, and that Cost Control will continue to finance the permitting process.

The Court stated that Exhibit 1 is admitted with the limited purpose to show photographs of the property.

Cross-Examination

Mr. Valdés testified that Azure owns the property since the year 2000 and it began requesting permits since the year 2001-2004 for developing a multifamily project. The present process is a matter of obtaining the permits for the buyer so that it can build what they desire. He

stated that the "consulta de ubicación" and "movimiento de tierra" permits are still valid but permits such as the jurisdictional determination and the "zona marítimo terrestre" expire every five years. Mr. Valdés testified that he is not licensed as a real estate broker nor as a real estate appraiser.

The Court inquired whether there was any further evidence to be presented. Mr. Cuprill replied, the proffer of Mr. Carrasquillo's testimony. Mr. Cuprill stated that Mr. Carrasquillo as Debtor's financial consultant would testify as to the norm and course of business of development companies such as Azure and as to the financing of its current activities by Cost Control and that Cost Control would finance shortfalls in its cash flow during the time provided in the plan for the selling of the realty. He would also testify that it is normal for development companies to reflect losses capitalized by the financing of related entities. Mr. Carrasquillo would further testify as to the contents of the plan and the adequate protection that is being provided to Triangle and it would be detrimental to the interests of the Debtor and other creditors if this case is dismissed considering its prospects of having the plan confirmed. He would testify that at the present time Triangle is protected by the increasing value of the property upon obtention of the property and the fact that real estate taxes will be paid under the plan and upon the selling of the real estate, Triangle will recover 100% of its claim.

The Court noted that approval of the disclosure statement or confirmation are not at issue at this time. The contested matter, that is, Triangle's motion to dismiss is submitted.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 12th day of June 2023.

Enrique S. Lamoutte
United States Bankruptcy Judge