### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: <br><br> AZURE DEVELOPMENT, INC. <br><br> Debtor. | Case No. 23-00462 (ESL) <br><br> Chapter 11 |

### RESPONSE TO OBJECTION TO CLAIM OF TRIANGLE CAYMAN ASSET COMPANY

TO THE HONORABLE ENRIQUE S. LAMOUTTE INCLÁN
UNITED STATES BANKRUPTCY JUDGE:

**COMES NOW** secured creditor Triangle Cayman Asset Company ("Triangle"), by its undersigned counsel, and respectfully submits this response (the "Response") to Azure Development Inc.'s ("Debtor")'s Objection To Claim (the "Objection to Claim") No. 1 (the "Triangle Claim")[1]. In support of the Response, Triangle respectfully states and prays as follows:

### PRELIMINARY STATEMENT

The Debtor has objected to four portions of the Triangle Claim: the amounts claimed for default interest, the amounts claimed for legal fees, the amounts claimed for late charges, and the amounts claimed for insurance expenses. As detailed below, the amounts objected to by the Debtor are in fact proper and valid pursuant to the Loan Agreement and the terms of the Loan Documents (each as defined below) and thus should be allowed. In other words, the Loan Documents specifically provide and allow Triangle to assess and claim the amounts that are now objected to by the Debtor. Further, as detailed below, the Puerto Rico Superior Court of Fajardo, after years of litigation between the Debtor, the Guarantors (defined below) and Triangle, issued a partial

---

[1] Triangle Claim, Claims Register, Claim No. 1, as amended. For purposes of judicial economy all factual contentions and documents referred to in the Triangle Claim are incorporated by reference as if fully transcribed at length herein. Capitalized terms not defined herein shall have the same meaning ascribed to them in the *Addendum* attached as **Exhibit AA** to the Triangle Claim, as amended.

1

judgment against all Guarantors finding that the Loan Agreement and the Loan Documents are valid and binding, granting through such judgment the same amounts that the Debtor now seeks to object to; excluding, solely, the amounts asserted for default interest as explained below.

Triangle notes that when it filed its motion for summary judgment it inadvertently failed to include a request for default interest and, as such, the Puerto Rico Superior Court of Fajardo, when it granted Triangle's motion for summary judgment in its entirety, did not include a portion for default interest. While Triangle has the right to claim default interest under the Loan Documents, considering that the Debtor has defaulted on its obligations since at least 2014, Triangle is nonetheless amending, contemporaneously with this Response, the Triangle Claim solely to reduce the amount asserted therein for default interest, consistent with the determination of the Puerto Rico Court of Fajardo.

Further, the Objection to Claim includes an undeveloped allegation regarding the right to redemption under Article 1425 of the Puerto Rico Civil Code. Triangle asserts that the allegation is undeveloped and not included as a basis to object to the Triangle Claim, as the Debtor knows that it would be frivolous to assert a right of redemption at this stage. As detailed below, Debtor asserted a right of redemption as part of the ongoing State Court Action (defined below). However, the trial court in the State Court Action and the Puerto Rico Court of Appeals have both determined in final and unappealable rulings that Debtor and the Guarantors do not have any right of redemption against Triangle. The doctrines of *res judicata*, *Rooker-Feldman*, and Fed. R. Civ. Proc. 11, among others, preclude Debtor from attempting to, without any basis, raise any such redemption right in this case. Moreover, the Puerto Rico Supreme Court has already determined that the right of redemption does not apply to transfers such as that done by Triangle, and those determinations remain the law in Puerto Rico.

Finally, Triangle further notes that it intends— and has the right— to further amend the Triangle Claim, specifically, because Triangle is an over-secured creditor, and intends to request post-petition attorneys' fees, expenses and interest as allowed by section 506 of the Bankruptcy Code. As such, Triangle submits this response to the Objection to Claim **fully reserving its rights to request post-petition interest, attorneys' fees and other expenses in due course, as provided for under section 506 of the Bankruptcy Code**.

## BACKGROUND

1. On February 17, 2023 (the "Petition Date"), Debtor filed a voluntary petition under the provisions of chapter 11 of the Bankruptcy Code. See, Docket No. 1.

**A. Relevant pre-petition events.**

*i. Credit Relationship between Triangle and Debtor*

2. Prior to the Petition Date, on November 21, 2003, Banco Bilbao Vizcaya Argentaría Puerto Rico ("BBVA") and Debtor entered into a *Loan and Security Agreement*, amended on May 28, 2010, and January 16, 2014 (the "Loan Agreement"), in the principal amount of $1,725,000.00 (the "Loan"). See, Triangle Claim, Claims Register, Claim No. 1, **Exhibit A**, *Loan Agreement*. As reflected in the last amendment to the Loan Agreement, dated January 16, 2014, the maturity date thereunder was December 31, 2014. See, Id. at p. 30; see also, *Uncontested Facts to Pre-Trial Report* ("UFPTR") in ECF No. 79, p. 36, ¶ 1.

3. Under the last amendment to the Loan Agreement, with a recognized owed amount of $1,175,000.00, the amounts owed under the Loan Documents would be payable in eleven (11) equal, consecutive, monthly installments of interest only payments, plus a final payment of the unpaid and outstanding principal balance due thereunder, plus interest thereon at the stipulated rate, payable on December 31, 2014 (the "Maturity Date"). Id.; see also, UFPTR, p. 36, ¶ 6.

3

4. The purpose of the Loan, as stated in the Loan Agreement, was "to develop the property encumbered by the Mortgage [defined below] as a residential project (the "Project")". See, Triangle Claim, **Exhibit A**, at p. 5, *Section 2* (J); see also, UFPTR, p. 36, ¶ 7.

### ii. *The Collateral.*

5. To secure the obligations under the Loan Agreement, on November 21, 2003, Debtor subscribed a *Mortgage Note* (the "Mortgage Note") in the principal amount of $1,750,000.00, with interest thereon at the rate of Fourteen Percent (14%) per ANNUM, payable on demand, authenticated under affidavit number 67,618 of Notary Public Ernesto González Piñero. See, Triangle Claim **Exhibit B**, Mortgage Note.[2]; see also, UFPTR, p. 37, ¶ 9.

6. The Mortgage Note is secured by a *Deed of First Mortgage* Number 132 (the "Mortgage" and collectively with the Loan Agreement and the Mortgage Note, the "Debtor's Loan Documents") executed by Debtor, on November 21, 2003, before Notary Public Ernesto González Piñero, constituted over two (2) adjacent lots, namely, property numbers 4,969 and 5,722, assigning the amount of $1,697,500.00 to property number 4,969 and $52,500.00 to property number 5,722. See, Triangle Claim, **Exhibit C**, *Mortgage Deed*; see also, UFPTR, p. 37, ¶ 10.

7. Through the Mortgage, Debtor granted to BBVA (later Oriental, and now Triangle) a first priority lien over such real properties with the following legal description in their original Spanish Language:

**PROPERTY 4,969**

**RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de doce cuerdas con setecientas catorce milésimas de otra (12.714 cuerdas.), equivalentes a cuarenta y nueve mil novecientos setenta metros cuadrados con

---

[2] On December 18, 2012, BBVA merged with Oriental Bank ("Oriental"). Moreover, on September 28, 2015, Triangle acquired the credit relationships between Oriental and the above-captioned Debtor. Evidence of the promissory notes and Mortgage Note duly endorsed to Triangle is attached to the Triangle Claim as **Exhibit B-1**. See also, Triangle Cayman Asset Co. v. Azure Dev., Inc., 2022 WL 3209645 (P.R. Cir. June 28, 2022). See also, UFPTR, p. 37, FN. 4.

4

seiscientas ochenta y una milésimas de otro (49,970.681 m-), en lindes por el **NORTE,** en catorce (14) alineaciones que totalizan cuatrocientos sesenta y cinco metros con setecientas veinticinco milésimas de otro (465.725 m), con la zona marítimo terrestre que la separa del Océano Atlántico; por el **SUR,** en una alineación de nueve metros con trescientas ochenta y tres milésimas de otro (9.383 m), con el Carlo Embarcadero, en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientas cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en otras cinco (5) alineaciones que totalizan cien metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en otras tres (3) alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en una alineación de dieciséis metros con cuatrocientas sesenta milésimas de otro (16.460 m), con terrenos de la Familia Pirallo y en una alineación de ciento cuarenta y seis metros con novecientos cincuenta y seis milésimas de otro (146.956 m), con Half Moon Development Corp.; por el **ESTE,** en dos (2) alineaciones que totalizan cincuenta y tres metros con, quinientas noventa y nueve milésimas de otro (53.599 m), con la zona marítimo terrestre que la separa del Océano Atlántico y en una alineación de dieciséis metros con doscientas treinta y una milésimas de otro (16.231 m), con terrenos de la Familia Pirallo; y por el **OESTE,** en dos (2) alineaciones que totalizan treinta metros con ciento una milésimas de otro (30.101 m), con la desembocadura del Carlo Embarcadero que la separa del Océano Atlántico, en una alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con terrenos de la Familia Pirallo y en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705 m) con terrenos de la Familia Pirallo.

Property number 4,969 is recorded at page 220 of volume 92 of Luquillo, Registry of the Property of Fajardo ("Property 4,969").

See, Triangle Claim, **Exhibit D**, Title Study for Property 4,969; see also, UFPTR, pp. 37-38, ¶ 11.

**PROPERTY 5,722**

**RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de cinco cuerdas con setecientas ochenta y dos milésimas de otra (5.782 cuerdas), equivalentes a veintidós mil setecientos veintiséis metros cuadrados con seiscientos noventa y siete milésimas de otro (22,726.697 mc), en lindes por el **NORTE,** en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientos cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en cinco alineaciones que totalizan den metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en tres alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en cuatro alineaciones que totalizan sesenta y cinco metros con quinientos treinta y seis milésimas de otro (65.536 m), con Ia Parcela C dedicada a use público y en una alineación de nueve metros con ochocientas sesenta y seis milésimas de otro (9.866 m), con la extensión de Ia Calle D existente; por el **SUR,** en cinco (5) alineaciones que totalizan doscientos noventa y un metros con cuarenta y siete milésimas de otro (291.047 m), con Sucesión Biascoechea y en seis alineaciones' que totalizan doscientos veinticuatro metros con seiscientas setenta y tres milésimas de otro (224.673 m), con el Carlo Embarcadero; por el **ESTE,** en una alineación de sesenta y nueve metros con novecientas veintisiete milésimas de otro (69.927 m), con la extensión de la Calle D existente, en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705), con terrenos de la Familia Pirallo, y en otra alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con dichos terrenos de la Familia Pirallo; y por el **OESTE,** en una alineación de nueve metros con novecientas diez milésimas de otro (9.910 m), con el Carlo Embarcadero que la separa del Océano Atlántico.

5

Property number 5,722 is recorded at page 155 of volume 106 of Luquillo, Registry of the Property of Fajardo ("Property 5,722" and together with Property 4,969, the "Real Estate Collateral")[3].

See, Triangle Claim, **Exhibit E**, Title Study for Property 5,722; see also, UFPTR, p. 38-39, ¶ 11.

### iii. Guarantees

8. To further secure and guarantee the due payment and performance of all of the Debtor's obligations under the Loan and Debtor's Loan Documents, on November 20, 2003, Mr. Alfonso Valdés García ("Valdés") executed a *Guaranty and Agreement*, authenticated under affidavit number 1,851 of Notary Public Miguel Agustín Blanco Fuertes (the "Guaranty Agreement I"). See, Triangle Claim, **Exhibit F**.; see also, UFPTR, p. 39, ¶ 12. Through Guaranty Agreement I, Valdés unconditionally agreed to jointly and severally with Debtor guarantee the due performance and payment of all of the Debtor's obligations under the Debtor's Loan Documents.

9. Furthermore, on January 16, 2014, Cost Control Company, Inc. ("Cost Control") and Fideicomiso Valdés-Acevedo (the "Trust" and together with Valdés and Cost Control, the "Guarantors" or the "Azure Insiders") executed a *Guaranty and Agreement* authenticated under affidavit numbers 3,246 and 3,250 of Notary Public Pedro A. Cantero Frau (the "Guaranty Agreement II" and together with the Guaranty Agreement I, the "Guaranty Agreements" and together with the Debtor's Loan Documents, the "Loan Documents"), wherein Cost Control and the Trust agreed to jointly and severally with Debtor guarantee the due performance and payment of all of the Debtor's obligations under the Debtor's Loan Documents. See, Triangle Claim, **Exhibit G**; see also, UFPTR, p. 39, ¶ 13.

10. Moreover, through the final amendment to the Loan Agreement, the Debtor and the Guarantors ratified "all the guarantees and collateral given and/or executed for the concession of

---

[3] As detailed above, the purpose of the Real Estate Collateral was to develop a single Project.

6

the Loan Agreement, including, but without being limited to, the joint and several guarantees on behalf of Oriental, to Triangle. See, Triangle Claim, **Exhibit A**, pp. 30-31, *Fourth Section*.

### iv. The State Court Action

11. Based on Debtor's and the Guarantors' defaults with their obligations under the Loan Documents, on June 9, 2015, Oriental initiated a collection of monies and foreclosure of mortgages action against the Debtor and the Guarantors, in the Court of First Instance of Fajardo (the "CFI"), Case Num. NSCI 201500410 (the "State Court Action"); see also, UFPTR, p. 39, ¶ 15.

12. During the State Court Action, on September 28, 2015, Triangle acquired the Loan that remains the basis of this case from Oriental. See, **Exhibit A**, ¶ 6. See also, Triangle Cayman Asset Co. v. Azure Dev., Inc., 2022 WL 3209645 (P.R. Cir. June 28, 2022). See also, UFPTR, p. 37, FN. 4.

13. Based on the above, Debtor incorrectly alleged that it was entitled to redeem the Loan for the amount paid by Triangle pursuant to Article 1425 of the Civil Code of Puerto Rico of 1930, 31 LPRA §3950.

14. However, on December 6, 2021, the CFI issued an order declaring the right of redemption of a litigious credit inapplicable to the transaction between Triangle and Oriental, pursuant to the Commercial Transactions Act ("CTA") (Act 208-1995, as amended) 19 LPRA § 401 *et al*, and the Puerto Rico Supreme Court's ruling in the case of DLJ Mortgage v. SLG Santiago-Ortiz, 202 DPR 950 (2019). See, Triangle Cayman Asset Co. v. Azure Dev., Inc., 2022 WL 3209645 (P.R. Cir. June 28, 2022); see also, In re Allied Financial, Inc., 616 B.R. 1 (Bankr. D.P.R. 2020).

15. Thereafter, Debtor sought the issuance of certiorari by the Puerto Rico Court of Appeals for the CFI's order declaring inapplicable the right of redemption to the transaction between Triangle and Oriental, and on June 28, 2022, the Court of Appeals denied the petition for certiorari finding that the CFI neither erred nor abused its discretion in its determination. Triangle Cayman Asset Company v. Azure Development, Inc., 2022 WL 3209645 (P.R. Cir. June 28, 2022). As a result, the right of redemption of Article 1425 of the Civil Code of Puerto Rico of 1930, 31 LPRA § 3950 ("Article 1425"), is inapplicable to the transaction between Triangle and Oriental, as already determined in a final ruling of the CFI, affirmed by the Puerto Rico Court of Appeals.

16. As of this date, the determinations by both the Puerto Rico Court of Appeals and the CFI finding that the Debtor and Guarantors do not have a right of redemption pursuant to Article 1425 are both final and unappealable. Further, the decision of the Puerto Rico Supreme Court in the case of DLJ Mortgage (declaring that Article 1425 does not apply to transfers of loans such as that performed by Triangle herein), as followed by Honorable Judge Cabán in the case of In re Allied Financial, Inc., 616 B.R. 1 (Bankr. D.P.R. 2020), remains the state of the law in Puerto Rico.

17. Prior to the Petition Date, specifically, on December 1, 2022, Triangle filed a motion for summary judgment against the Debtor and the Guarantors in the State Court Action. [UFPTR]

18. After the lapsing of the timeframe to respond to the motion for summary judgment, and without filing a response thereto, Debtor filed for relief in the captioned case. See also, UFPTR, p. 40, ¶ 17.

19. On March 28, 2023, after almost eight (8) years of litigation, and without Guarantors having filed a response to the motion for summary judgment, the CFI issued a partial

8

judgment (the "Partial CFI Judgment") against the Guarantors. **Exhibit 1 to Exhibit A**; see also, UFPTR, p. 40, ¶¶ 18, 19.

20. The Partial CFI Judgment granted in full Triangle's Complaint against the Guarantors in the State Court Action, finding the Loan Documents to be valid and binding, and ordering the payment of the following amounts, owed as of October 15, 2022: **(i)** $1,026,969.77 in principal; (ii) **$487,810.65** for accrued interests, which continue to increase at a *per diem* rate of $235.35 until indefeasible payment in full; **(iii)** $21,124.35 in late charges **(iv)** $175,000.00 in attorneys' fees, **(v)** $644.00 for insurance policies and **(vi)** $2,285.50 in valuation costs (the "Partial CFI Judgment Loan Amount").

**B. Relevant post-petition events.**

21. On April 13, 2023, Debtor filed the Objection to Claim, alleging, in essence that it does not owe the amount claimed by Triangle, owing substantially less. See, Docket No. 34.

22. Specifically, Debtor objects to the amount of $454,820.44, alleging **(i)** that the same are not "liquidated costs", and **(ii)** that it does not owe the default interest of $254,175.02, $177,354.86 in legal fees, $22,646.56 in late fees and $644.00 for insurance costs" included in the Triangle Claim. Id. at ¶ 11. In other words, out of the amount asserted in the original Triangle Claim, the Debtor is only objecting to the amount of $454,820.44. See, UFPTR, p. 36, ¶ 4.

23. In light of Debtor's allegations in the Objection to Claim, and the procedural stage of the State Court Action, on May 16, 2023, Triangle filed a *Motion for Relief from the Automatic Stay pursuant to 11 U.S.C. §362(d)(3) or, In the Alternative for the Modification of the Automatic Stay* (the "Stay Relief Motion") (ECF No. 60), to either **(i)** grant relief from the automatic stay to Triangle based on Debtor's failure to comply with either 11 U.S.C. §§362(d)(3)(A) or (B), or, in the alternative **(ii)** modify the automatic stay to allow the CFI to enter a final judgment as to the

9

Debtor in such proceeding, provided, however, that the payment of such judgment be made through the captioned case. See, Docket No. 60.

24. Triangle asserts that, since the Debtor failed to oppose Triangle's Motion for Summary Judgment in the State Court Action, that if the automatic stay is modified the CFI may enter final judgment as to the Debtor expeditiously, thus determining, as it did through the Partial CFI Judgment Loan Amounts, the amounts due by the Debtor under the Triangle Claim.

25. Further, Triangle reviewed the Debtor's Objection to Claim, and while Triangle understands that it has the right under the Loan Documents to assert default interest over the Triangle Claim (considering that the Debtor has been in default of its obligations under the Loan Documents since at least 2014), Triangle acknowledges that it inadvertently did not include the default interest claim as part of the amounts requested and granted through the Partial CFI Judgment Loan Amount.

26. Accordingly, and simultaneously with the filing of this Response, Triangle is amending the Triangle Claim, solely to reduce and eliminate from such claim the default interest amount of $254,175.02.

27. Triangle files this response to address the remaining objections in the Objection to Claim.

Legal Analysis and Discussion

28. As noted by the court in the case of In re Hosp. Damas Inc., 2012 WL 6704804 (Bankr. D.P.R. Dec. 26, 2012), the procedure for filing of objections to claim and oppositions thereto is governed by Local Bankruptcy Rule 3007-1. The rule establishes the requirements to file an opposition, namely, that "[i]f a claimant contests an objection to claim, it must file with the Clerk a written response to the objection", which "must state with particularity why the proof of

claim should be allowed, must contain any documentation in support of allowance of the proof of claim and must state why the objection to the proof of claim should be denied." Id. (citing PR LBR 3007–1(d)).

29. Under Puerto Rico law, which applies here, "obligations arising from contracts have legal force between the contracting parties Lime Residential, Ltd. v. Miranda-Diaz, 2022 WL 2976191 (D.P.R. Apr. 22, 2022). In general terms, a contract designates every covenant or voluntary agreement by which proprietary legal relationships are created, modified, or extinguished. See, José Puig Brutau, *Compendio de Derecho Civil*, Vol II, at 171 (2nd ed. 1994). Once perfected, contracts have legal force and should be fulfilled in accordance with the terms and conditions agreed upon therein. See, Civil Code, Art. 1044, Laws of P.R. Ann., Tit. 31 § 2994; see also, García v. World Wide Entmt. Co., 132 DPR 378, 384 (1992). "Article 1233 of the Puerto Rico Civil Code provides that where 'the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed.'" IOM Corp. v. Brown Forman Corp., 627 F.3d 440 (1st Cir. 2010) (citing P.R. Laws Ann. tit. 31, § 3471). Accordingly, courts cannot free a party from fulfilling what it contractually agreed to, when said contract is legal and valid, and does not have any defects. Constructora Bauzá v. García López, 129 DPR 579, 593 (1991) (English translation).

30. Under Puerto Rico law, for a collection of moneys action, the plaintiff must show that defendant has an outstanding obligation which is due, liquid and payable. In re Oliver C & I Corp. (Bankr. D.P.R. Dec. 28, 2018) (citing Gen. Elec. v. Concessionaires, Inc., 18 P.R. Offic. Trans. 38, 52; 118 D.P.R. 32, 43 (1986)). A debt is liquid when the amount of money owed is "certain" and "determined. Citibank, N.A. v. Allied Mgmt. Grp., Inc., 466 F. Supp. 2d 403, 408 (D.P.R. 2006) (citing Ramos y Otros v. Colon y Otros, 2001 WL 242595, see also, 2 Miguel A.

11

Del Arco Torres and Manuel Pons González, *Diccionario de Derecho Civil* 168, Navarra, Ed. Aranzadi (1984)).

### A. The amounts in the Triangle Claim, as amended, are valid, due and payable under the Loan Documents.

31. As detailed above, as a result of the amendment to the Triangle Claim, the Debtor's remaining objections are to the following amounts: (i) $177,354.86 in legal fees, (ii) $22,646.56 in late fees and (iii) $644.00 for insurance costs included in the Triangle Claim. See, UFPTR at ¶ 11. In other words, out of the amount asserted in the original Triangle Claim, in light of the amendment to the Triangle Claim, the Debtor would only be objecting to the amount of $200,645.42 (*i.e.*, $454,820.44 - $254,175.02) (collectively, the "Contested Claim Amounts").

32. As set forth herein, the Contested Claim Amounts are proper, valid, and should be allowed as part of the Triangle Claim.

33. From the outset, the Loan Agreement provides as follows:

> "This Agreement and each of the other Loan Documents[4] constitute valid and binding obligations of the Company, the Guarantor and all the parties thereto, as applicable, enforceable in accordance with their terms…"

See, Triangle Claim, **Exhibit A**, Loan Agreement, pp. 5-6, Section 2M.

34. Moreover, the Loan Agreement provides that "[t]he Company will protect, indemnify and save harmless the Bank from and against all liabilities, obligations, losses, damages, penalties, claims, causes of action, costs, charges and expenses (including without limitation, **attorney's fees and expenses**) which may be imposed upon or incurred by or asserted against the Bank by reason of… (c) any failure on the part of the Company to perform or comply with any of

---

[4] The "Loan Documents" are defined in the Loan Agreement as the Loan Agreement itself, "the Requisitions [*i.e.*, the Loans], the Notes, the Mortgage Note, the Mortgage, the Guaranty, the Indemnity Agreement, the Regulation 5105 Borrower Certificate, the Secondary Assignment and any and all other documents issued or furnished in relation therewith." See, Triangle Claim, at p. 2, Section 1.

the provisions contained in the Loan Documents, or (d) any necessity to defend or enforce any of the **rights, title or interest** conveyed or created by the Loan Documents." See, Triangle Claim, **Exhibit A**, Loan Agreement, p. 11, Section 6 G. (Emphasis added).

35. Further, the Loan Agreement provides that Debtor must maintain insurance policies in the manner provided for in Section 6 E. of the Loan Agreement. See, Triangle Claim, **Exhibit A**, Loan Agreement, pp. 10-11, Section 6 E.

36. In addition to the above, the Loan Agreement provides that "[t]he rights and remedies of the Bank are cumulative and not exclusive of any right or remedy which it would otherwise have." See, Triangle Claim, **Exhibit A**, Loan Agreement, p. 15, Section 9 E.

37. Here, the amounts included in the Triangle Claim, as amended, are owed by the Debtor pursuant to the Loan Documents, as reflected in Triangle's certification of debt attached to the Triangle Claim, issued as of the Petition Date and Debtor's allegations in the Objection to Claim are yet another attempt to delay Triangle's collection efforts.

   *i.   Legal Fees*

38. Regarding the "legal fees" portion of the Triangle Claim, as amended, as noted in the case of In re Manuel Mediaviavilla, Inc., 2015 WL 3827708 (Bankr. D.P.R. June 19, 2015), pursuant to 11 U.S.C. §502(b)(1), in a chapter 11 case, "[a] creditor's entitlement to pre-petition attorney's fees, costs and expenses is determined by the agreement between the parties and applicable non-bankruptcy law" and "[c]onsequently, claims that are enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed".

39. As further noted in such case, "if the parties had valid agreement that provided for pre-petition attorney's fees, costs and expenses and such agreement is valid under state law the

13

claim must be allowed since pre-petition attorney's fees, costs and expenses are part of a secured creditor's claim in the first instance". Id.

40. It is well established that under law of Puerto Rico, an amount stipulated for costs and attorneys' fees in a duly recorded mortgage deed is secured together with the principal amount of debt, and such stipulated amount is a liquidated amount which is not subject to judicial liquidation. In re Intaco Puerto Rico, Inc., 357 F. Supp. 1122 (D.P.R. 1973).

41. Here, Triangle's books and records reflect that, as of the Bankruptcy Petition Date, Triangle had incurred **$177,354.86** in costs, expenses and attorney's fees regarding its recourse to foreclosure or other judicial proceedings for the collection of the amounts owed by the Debtor and the Guarantors under the Loan Documents. **Exhibit A**, Declaration of Luis R. Guzmán, ¶ 12.

42. These amounts are allowed under the Loan Documents and consistent with the terms and conditions of the Loan Agreement. Specifically, the amounts asserted for legal fees as part of the Contested Claim Amounts are exactly the "attorney's fees and expenses" that Triangle has incurred in prosecuting and defending its claims in the State Court Action as a result of the "failure on the part of the [Debtor] to perform or comply with any of the provisions contained in the Loan Documents [and the] necessity to defend or enforce any of the **rights, title or interest** conveyed or created by the Loan Documents". See, Triangle Claim, **Exhibit A**, Loan Agreement, p. 11, Section 6 G. (Emphasis added); see also **Exhibit A**, Declaration of Luis R. Guzmán, ¶ 12.

43. Further, the CFI already determined that the Loan Agreement allows and entitles Triangle to collect and assess attorney's fees and expenses, as it granted, through the CFI Partial Judgment Loan Amount, the attorneys' fees and expenses incurred by Triangle as of the date of the CFI Partial Judgment.

44. Accordingly, these amounts asserted as legal fees are proper and valid under the Loan Documents and should be so allowed by the Court.

### ii. Late Charges

45. Regarding the "late charges" portion of the Triangle Claim, as amended, as stated above, Section 3 E of the Loan Agreement specifically states that, for any payment of principal or interest made more than 15 days after its due date, a late charge of 4% of the overdue amount, in addition to all other amounts then due, would be paid by Debtor. See, Loan Agreement, p. 7; see also, **Exhibit A**, Declaration of Luis R. Guzmán, ¶ 10.

46. Notably, the Loan Documents provide a prime plus interest rate with a margin of 2%, with a floor of 3.25% and a 4% late charge (over the accrued interest amount) for any payment of principal or interest made more than 15 days after its due date; therefore, as the interest rate varies, the total amount of the 4% late charge varies as well. See, **Exhibit A**, Declaration of Luis R. Guzmán, ¶ 10.

47. The following chart reflects all index rate changes for the life of the Loan:

**Index Rate Changes (WSJPRIME)**

| Date | Rate | Margin | Total |
|---|---|---|---|
| 12/17/2008 | 3.25 | 2.00 | 5.25 |
| 12/17/2015 | 3.5 | 2.00 | 5.50 |
| 12/15/2016 | 3.75 | 2.00 | 5.75 |
| 3/16/2017 | 4 | 2.00 | 6.00 |
| 6/15/2017 | 4.25 | 2.00 | 6.25 |
| 12/14/2017 | 4.5 | 2.00 | 6.50 |
| 3/22/2018 | 4.75 | 2.00 | 6.75 |
| 6/14/2018 | 5 | 2.00 | 7.00 |
| 9/27/2018 | 5.25 | 2.00 | 7.25 |
| 12/20/2018 | 5.5 | 2.00 | 7.50 |
| 8/1/2019 | 5.25 | 2.00 | 7.25 |
| 9/19/2019 | 5 | 2.00 | 7.00 |
| 10/31/2019 | 4.75 | 2.00 | 6.75 |
| 3/4/2020 | 4.25 | 2.00 | 6.25 |
| 3/16/2020 | 3.25 | 2.00 | 5.25 |
| 3/17/2022 | 3.5 | 2.00 | 5.50 |
| 5/5/2022 | 4 | 2.00 | 6.00 |
| 6/16/2022 | 4.75 | 2.00 | 6.75 |
| 7/28/2022 | 5.5 | 2.00 | 7.50 |
| 9/22/2022 | 6.25 | 2.00 | 8.25 |
| 11/3/2022 | 7 | 2.00 | 9.00 |
| 12/15/2022 | 7.5 | 2.00 | 9.50 |
| 2/2/2023 | 7.75 | 2.00 | 9.75 |

See, **Exhibit A**, Declaration of Luis R. Guzmán, ¶ 9.

48.  Based on the applicable provisions of the Loan Documents, and, specifically, the Loan Agreement, and the above-listed rates, Triangle's books and records reflect late charges of **$22,646.56** as of the Petition Date. See, **Exhibit A**, Declaration of Luis R. Guzmán, ¶ 11.

49.  Further, the CFI already determined that the Loan Agreement allows and entitles Triangle to collect and assess such late charges, as it granted, through the CFI Partial Judgment Loan Amount, the late charges due under the Loan Agreement as of the date of the CFI Partial Judgment.

50.  Accordingly, these amounts asserted as late charges are proper and valid under the Loan Documents and should be so allowed by the Court.

### iii. *Insurance Costs*

51.  Finally, regarding the "insurance costs" portion of the Triangle Claim, as amended, Triangle asserted the amount of $644.00, pursuant to Section 6 E, after Triangle being forced to obtain public liability insurance as required under the Loan Documents. See, **Exhibit A**, Declaration of Luis R. Guzmán, ¶ 13.

**B.  The CFI has already determined that the amounts detailed in the Triangle Claim and the Contested Claim Amounts are owed pursuant to the Loan Documents.**

52.  As detailed above, the CFI has already determined that the Loan Documents and the terms and conditions thereof are valid and enforceable, and, evaluating the very same documents, has determined that the Guarantors are liable to Triangle, as of October 15, 2022, for the Partial CFI Judgment Loan Amount of $1,713,834.27, which is itemized as follows:

  i.  $1,026,969.77 in principal owed;
  ii. $487,810.65 in interests owed, which amount continues to increase at a daily (*per diem*) rate of $235.35 until indefeasible payment in full of the obligations under the Loan Documents;
  iii. $21,124.35 in late charges

16

   iv. $175,000.00 in attorneys' fees, as stipulated by the parties;

   v. $644.00 in insurance policies over the Real Estate Collateral and

   vi. $2,285.50 in valuation costs.

See, **Exhibit 1 to Exhibit A**, CFI Partial Judgment, p. 12.

  53. As discussed above, the obligations of the Guarantors, pursuant to the Guaranty Agreements, entail the joint and several guarantees of due performance and payment of all of the Debtor's obligations under the Debtor's Loan Documents. Therefore, it follows that, as a *sine qua non* requirement for the issuance of the CFI Partial Judgment in a collection of moneys action, the CFI has already determined that the Guarantors (and, thus, the Debtor) have an outstanding obligation which is due, liquid and payable.

  54. Moreover, because 125 days lapsed between October 15, 2022 and February 17, 2023 (the Petition Date), pursuant to the CFI Partial Judgment, the amounts owed to Triangle have increased by $29,418.75 (125 days * $235.35) in interest alone. See, Amended Proof of Claim.

  55. Similarly, the late charges continue to accrue as well with the passage of time.

  56. Therefore, it is undisputed that Triangle's claims against Debtor and the Guarantors are at least $1,747,130.09 as of the Petition Date, which amounts continue to increase at a *per diem* interest rate of $235.35.

  57. Triangle notes that, considering that it is an oversecured creditor, it has the right and intends to request post-petition interest and attorneys' fees and expenses in due course.

 **C.** **The CFI has already determined that Article 1425 of the Civil Code of Puerto Rico of 1930 is inapplicable to the transaction between Triangle and Oriental.**

  58. Triangle notes that, in the Objection to Claim, Debtor mentions Article 1425, albeit without making such provision part of its legal arguments, as it cannot. The Objection to Claim is unclear as to whether the mention of Article 1425 is a (frivolous) attempt to relitigate the matter. In any event, there simply is no basis to assert any claim under Article 1425 as the Puerto Rico

17

State Courts have already determined – through a final and unappealable rulings – that the Debtor and Guarantors have no right to redeem the Triangle Claim pursuant to Article 1425.

59. Under Puerto Rico law, "[i]n order that the presumption of *res judicata* may be valid in another suit, it is necessary that, between the case decided by the judgment and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." In re Rodriguez, 377 B.R. 1 (Bankr. D.P.R. 2007).

60. Under Puerto Rico law, the application of the doctrine of *res judicata* precludes issues that were actually litigated and adjudicated, as well as those which could have been litigated and adjudicated in a previous suit. Id. (citing Del Carmen Tirado v. Department of Education, 296 F.Supp.2d 127 (D.P.R.2003)).

61. The First Circuit has explained that a party asserting a *res judicata* defense under Puerto Rico law, must establish three elements: **(i)** the existence of a prior judgment on the merits that is final and unappealable; **(ii)** a perfect identity of thing or cause between both actions and **(iii)** a perfect identity of the parties and the capacities in which they acted. Id. (citing Boateng v. InterAm. Univ. Inc., 210 F.3d 56 (1st Cir. 2000)).

62. Further, as noted by this Honorable Court in the case of In re Roman, 2018 WL 4801933 (Bankr. D.P.R. Oct. 2, 2018), "pursuant to the *Rooker-Feldman* doctrine, federal district courts do not have jurisdiction over "federal complaints...[that] essentially invite [ ] federal courts of first instance to review and reverse state-court judgments." It has been clarified that the *Rooker-Feldman* doctrine is "...confined to cases of the kind from which the doctrine acquired its name: cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and

18

rejection of those judgments." Id. (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)); see also McKenna v. Curtin, 869 F.3d 44, 47-48 (1st Cir. 2017) ("The *Rooker-Feldman* doctrine only applies in the "limited circumstances" where 'the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment."); Halvorsen v. Mendez (In re Mendez), 246 B.R. 141, 145 (Bankr. D.P.R. 2000) (extending the doctrine to bankruptcy courts as a lower federal court "if, by so doing, it would be granting federal review of a state court determination or of an issue that is 'inextricably intertwined' with a state court judgment").

63. Here, as mentioned above, the CFI and the Puerto Rico Court of Appeals have already determined that Article 1425 is inapplicable to the transaction between Triangle and Oriental and to the Triangle Claim.

64. To the extent that the Debtor attempts to now relitigate the matters of whether Article 1425 is applicable to the transaction between Triangle and Oriental, Debtor is precluded from doing so pursuant to the *res judicata* doctrine, as **(i)** both the CFI's ruling of inapplicability and the Puerto Rico Court of Appeals' ruling affirming the same are final and unappealable, **(ii)** there is a perfect identity between Debtor's allegation of applicability of Article 1425 and the CFI's ruling to the contrary and the allegation in this case and **(iii)** there is a perfect identity between the Debtor and Triangle in this case in connection with such matter.

65. Further, to the extent that Debtor attempts to invite this Honorable Court to review and/or reverse the CFI's rulings that Article 1425 is inapplicable, and/or the Puerto Rico Court of Appeals' ruling affirming the same, Debtor is precluded from doing so pursuant to the *Rooker-Feldman* doctrine inasmuch as the Debtor is the losing party in the state court that is complaining

of the CFI's and the Puerto Rico Court of Appeals' ruling and such doctrine precludes it from seeking review and/or rejection of those rulings in this case.

66. Finally, the Puerto Rico Supreme Court already determined that the right of redemption under Article 1425 does not apply to transactions such as the transfer of the Triangle Claim from Oriental to Triangle.

67. Accordingly, Triangle submits that any attempt to raise a right to redemption under Article 1425 would be frivolous and sanctionable.

**WHERFORE**, Triangle respectfully requests that the Objection to Claim be denied.

**RESPECTFULLY SUBMITTED.**

San Juan, Puerto Rico, on June 26, 2023.

**WE HEREBY CERTIFY** that on this same date we filed this document using the CM/ECF filing system, which will send a copy to all counsel of record.

M | P| M **MARINI PIETRANTONI MUÑIZ LLC**
*Attorneys for Triangle Cayman Asset Company*
250 Ponce de Leon Ave. Suite 900
San Juan, PR, 00918
Tel.: (787) 406-8555

*S/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
E-mail: lmarini@mpmlawpr.com

*S/ Ignacio J. Labarca-Morales*
Ignacio J. Labarca-Morales
USDC No. 303307
E-mail: ilabarca@mpmlawpr.com

*S/ Paula T. De Felice Alejandro*
Paula T. De Felice Alejandro
USDC No. 307607
E-mail: pdefelice@mpmlawpr.com