Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| TRIANGLE CAYMAN ASSET COMPANY<br><br>Recurrida<br><br>v.<br><br>AZURE DEVELOPMENT, INC., ALFONSO VALDÉS GARCÍA, COST CONTROL COMPANY, INC., FIDEICOMISO VALDÉS-ACEVEDO<br><br>Peticionarios | KLCE202300873 | *Certiorari*<br>procedente del Tribunal de Primera Instancia, Sala de Fajardo<br><br>Caso Núm. NSCI201500410<br><br>Sobre:<br>Cobro de Dinero, Ejecución de Hipoteca |
|---|---|---|

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, el Juez Pagán Ocasio, y la Juez Barresi Ramos.

Pagán Ocasio, juez ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 11 de septiembre de 2023.

## I.

El 8 de agosto de 2023, Azure Development Inc., Cost Control Company Inc., Alfonso Valdés García y Fideicomiso Alfonso Valdés-Acevedo (en conjunto, peticionarios) acudieron ante esta Curia mediante una *Petición de certiorari* en la que nos solicitan que revoquemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo (TPI o foro recurrido), el 6 de julio de 2023.[2] Mediante el referido dictamen, el TPI declaró No Ha Lugar una solicitud de los peticionarios para que se le devolviera a Cost Control Company Inc. (Cost Control) una cantidad de dinero consignada como parte del pleito promovido por Triangle Cayman Asset Company (Triangle Cayman o parte recurrida) en su contra.

---
[1] Véase la Orden Administrativa OAJP-2021-086 de 4 de noviembre de 2021.
[2] Apéndice de la *Petición de Certiorari*, Anejo 1, págs. 1-2.

Número Identificador
SEN2023_____

Case:23-00462-ESL11 Doc#:141-1 Filed:09/14/23 Entered:09/14/23 14:59:11 Desc:
Exhibit A - Court of Appeals Ruling Page 2 of 10

KLCE202300873 2

En la misma fecha en que se radicó la *Petición de certiorari*, los peticionarios presentaron una *Moción en auxilio de jurisdicción* en la que argumentaron que Azure Development Inc. (Azure) críticamente necesitaba la cantidad de dinero consignada para poder litigar su caso en la Corte de Quiebra de los Estados Unidos para el Distrito de Puerto Rico (Tribunal de Quiebras). En la solicitud, expresaron que existía un riesgo sustancial de perjuicio indebido e irreparable y, por consiguiente, solicitaron la paralización de los procedimientos ante el TPI.

Ese mismo día, emitimos una *Resolución* en la que declaramos No Ha Lugar a la *Moción en auxilio de jurisdicción* presentada por los peticionarios. A su vez, concedimos hasta el 18 de agosto de 2023 a Triangle Cayman para exponer su petición respecto al recurso de epígrafe.

El 18 de agosto de 2023, Triangle Cayman presentó una *Oposición a expedición de petición de certiorari civil* en la que solicitó que denegáramos la expedición del recurso.

De este modo, damos por perfeccionado el recurso y, en adelante, pormenorizaremos los hechos atinentes a la *Petición de certiorari* ante nuestra consideración.

## II.

El caso de marras tiene su génesis en una *Demanda* en cobro de dinero incoada el 9 de junio de 2015 por Oriental Bank (Oriental) en contra de los peticionarios.[3] En su reclamación, Oriental alegó que era acreedora de una deuda, establecida mediante un *Loan and Security Agreement*, la cual era líquida, vencida y exigible. Por consiguiente, solicitó que se ordenara a los peticionarios al pago solidario de $1,026,969.77 en principal, $23,213.90 en intereses,

---

[3] Íd., Anejo 2, págs. 3-7.

Case:23-00462-ESL11 Doc#:141-1 Filed:09/14/23 Entered:09/14/23 14:59:11 Desc:
Exhibit A - Court of Appeals Ruling Page 3 of 10

KLCE202300873 3

$3,582.74 en recargos y $176,000.00 en costas, gastos y honorarios de abogados.

Tras varios trámites procesales, el 8 de octubre de 2015, Azure presentó una *Moción Informativa sobre Cesión de Crédito Litigioso, Derecho de Retracto y Solicitud de Orden* en la que: (1) notificó que Oriental vendió el préstamo en controversia a Triangle Cayman el 28 de septiembre de 2015; (2) levantó su derecho a retracto de crédito litigioso; y (3) solicitó que la parte recurrida sometiera la documentación producto de la transacción con Oriental.[4]

El 13 de noviembre de 2015, Triangle Cayman presentó una *Moción Informativa sobre Notificación de Información de Precio a la Parte Demandada* en la que informó que notificó a Azure y los garantizadores el precio pagado por los créditos objeto del pleito, las costas, los intereses desde el día de la compra hasta el 9 de noviembre de 2015 y los intereses acumulados a diario.[5]

Inconformes, los peticionarios presentaron una *Moción Ejercitando Derecho de la Parte Demandada a Comprobar Precio Pagado por Crédito Litigioso y para Reiterar Solicitud de Órdenes de Producción de Evidencia sobre la Transacción de Compra de Activos* en la que arguyeron que la declaración jurada provista por Triangle Cayman fue insuficiente para acreditar el precio pagado por los créditos.[6] Por tanto, reiteró su petición sobre la necesidad de obtener los documentos concernientes al pago de los créditos producto de la transacción con Oriental.

A raíz de lo anterior, se vio trabada la controversia del caso en la figura del retracto de crédito litigioso y la información requerida por los peticionarios para ejecutar su alegado derecho.[7]

---

[4] Íd., Anejo 6, págs. 21-23.
[5] Íd., Anejo 9, págs. 51-53.
[6] Íd., Anejo 10, págs. 54-82.
[7] El pleito incluyó una radicación previa ante esta Curia en el KLCE201600755. En esa ocasión, Triangle Cayman acudió ante nos mediante *Petición de certiorari* para impugnar una determinación del TPI en la que ordenó a la parte recurrida a proveer a los peticionarios toda la documentación relacionada a la adquisición de

Case:23-00462-ESL11 Doc#:141-1 Filed:09/14/23 Entered:09/14/23 14:59:11 Desc:
Exhibit A - Court of Appeals Ruling Page 4 of 10

KLCE202300873 4

Posteriormente, el 28 de diciembre de 2016, los peticionarios consignaron $153,289.74 en el TPI, alegando que Triangle Cayman se negó a aceptar el precio pagado por los créditos según surgió del descubrimiento de prueba.[8] De acuerdo con dicha parte, la cuantía correspondía al precio cierto pagado por la parte recurrida a Oriental.

El 31 de enero de 2017, Triangle Cayman se opuso a la consignación realizada por los peticionarios, puesto que, a su entender, esta cantidad era ínfima en comparación con el precio pagado por el préstamo.[9]

El 18 de diciembre de 2020, Triangle Cayman presentó un *Memorando de derecho* en el que alegó que ni el retracto de crédito litigioso ni el pago por consignación eran aplicables al caso.[10]

Tras varios trámites procesales, el 6 de diciembre de 2021, el TPI dictó una *Resolución y Orden* en la que resolvió que no procedía la aplicación de la figura del retracto de crédito litigioso por tratarse de un instrumento negociable, en conformidad con lo resuelto en **DLJ Mortgage v. SLG Santiago-Ortiz,** 202 DPR 950 (2019).[11]

El 1 de diciembre de 2022, Triangle Cayman instó una *Solicitud de sentencia sumaria* en la que planteó que no existían hechos materiales en controversia y, por lo tanto, procedía atender únicamente asuntos de derecho.[12]

Pese a solicitar término adicional para cumplir con la *Orden* del foro primario, Azure presentó junto a Cost Control una *Moción sobre notificación de petición de Capítulo 11 bajo el Código de Quiebra*

---

la deuda objeto de la controversia para aclarar el precio pagado por el crédito. El 30 de junio de 2016, un panel hermano emitió una *Resolución* en la que confirmó los dictámenes del foro primario.
[8] Íd., Anejo 19, págs. 223-225.
[9] Apéndice de la *Oposición a expedición de petición de certiorari civil*, págs. 1-9.
[10] Apéndice de la *Petición de Certiorari*, Anejo 23, págs. 331-362.
[11] Íd., Anejo 24, págs. 496-501. Esta determinación del foro primario fue objeto de una *Petición de certiorari* promovida por los peticionarios en el KLCE202200269. El 28 de junio de 2022, este panel emitió una *Resolución* en la que denegó la expedición del auto solicitado.
[12] Íd., Anejo 26, págs. 513-621.

Case:23-00462-ESL11 Doc#:141-1 Filed:09/14/23 Entered:09/14/23 14:59:11 Desc: Exhibit A - Court of Appeals Ruling Page 5 of 10

KLCE202300873 5

*por Azure Development, Inc. y sobre retiro de fondos consignados* en la que notificó que el 17 de febrero de 2023 presentó una petición al amparo del Capítulo 11 del Código de Quiebras ante el Tribunal de Quiebras.[13] En consecuencia, solicitaron que el TPI autorizara la devolución a favor de Cost Control de la cuantía de $153,289.74 depositada en el 2016.

Luego de varios trámites procesales, el 28 de marzo de 2023, el TPI emitió una *Sentencia parcial* en la que declaró Ha Lugar la *Moción de sentencia sumaria* promovida por Triangle Cayman y, por consiguiente, ordenó a los peticionarios al pago solidario de las cantidades reclamadas, las cuales ascendían a la suma no menor de $1,713,834.27 al 15 de octubre de 2022.[14] El 4 de abril de 2023, el dictamen fue notificado a las partes.

El 10 de abril de 2023, el TPI emitió una *Orden* en la que paralizó el caso en cuanto a Azure y ordenó el desembolso a favor de Cost Control de los fondos depositados.[15] La determinación del foro primario fue notificado el 12 de abril de 2023.

El 13 de abril de 2023, Triangle Cayman solicitó reconsideración de la *Orden* emitida por el foro recurrido.[16] Oportunamente, el 27 de abril de 2023, Cost Control se opuso a la solicitud.[17]

Por lo cual, el 6 de julio de 2023, el TPI emitió una *Orden* en la que denegó el desembolso de los $153,289.74 a favor de Cost

---

[13] Íd., Anejo 27, págs. 622-624.
[14] Íd., Anejo 29, págs. 632-643. Esta determinación del TPI también fue objeto de una *Apelación* presentada por los peticionarios, la cual fue acogida por este panel como una petición de *certiorari* en el KLAN202300516. El 15 de agosto de 2023, dictamos una *Sentencia* en la que expedimos el auto de *certiorari* y confirmamos el dictamen del foro primario. A juicio de este panel, no habían hechos materiales en controversia y el asunto respecto al derecho a retracto litigioso quedó atendido por el Tribunal Supremo, el cual determinó, en **DLJ Mortgage v. SLG Santiago Ortiz**, supra, que todo instrumento negociable regulado por la *Ley de Transacciones Comerciales*, Ley Núm. 208-1995, según enmendada, 19 LPRA sec. 401 *et seq.*, se excluye de la aplicación de esta figura.
[15] Íd., Anejo 33, págs. 687-688.
[16] Íd., Anejo 36, págs. 693-695.
[17] Íd., Anejo 37, págs. 696-702.

Case:23-00462-ESL11 Doc#:141-1 Filed:09/14/23 Entered:09/14/23 14:59:11 Desc: Exhibit A - Court of Appeals Ruling Page 6 of 10

KLCE202300873 6

Control.[18] La misma fue notificada a las partes el 10 de julio de 2023.

Inconforme, el 8 de agosto de 2023, los peticionarios acudieron ante nos mediante el recurso de epígrafe y le imputaron al TPI la comisión de los siguientes errores:

> PRIMER ERROR: ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA SOLICITUD DE RETIRO DE FONDOS CONSIGNADOS POR COST CONTROL EN NOMBRE DE AZURE CUANDO EL TPI NUNCA HIZO UNA DECLARACIÓN DE PAGO NI LA PARTE DEMANDANTE ACEPTÓ EL MISMO CONTRARIO A LAS DISPOSICIONES DEL C[Ó]DIGO CIVIL DE 1930.
>
> SEGUNDO ERROR: ERRÓ EL TPI AL DECLARAR NO HA LUGAR LA SOLICITUD DE RETIRO DE FONDOS CONSIGNADOS POR COST CONTROL EN NOMBRE DE AZURE CUANDO ESTOS FONDOS PERTENECEN AL CAUDAL DE AZURE QUE SE ENCUENTRA PROTEGIDO POR EL CÓDIGO DE QUIEBRA FEDERAL
>
> TERCER ERROR: ERRÓ EL TPI AL EMITIR UNA ORDEN EN ABSTRACCIÓN DE LAS CONSTANCIAS DE LOS AUTOS DEL CASO, EMBARGANDO ILEGALMENTE LA PROPIEDAD DE AZURE VIOLENTANDO ASÍ EL DEBIDO PROCESO DE LEY DE ESTA PARTE.

El 18 de agosto de 2023, Triangle Cayman presentó una *Oposición a expedición de petición de certiorari civil* solicitando que deneguemos la expedición del recurso. A juicio de la parte recurrida, el caso incumple con los criterios reglamentarios para la expedición de este tipo de auto, según definidos tanto en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, como en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40. A su vez, esbozó que la *Orden* emitida por el TPI fue cónsona con el derecho aplicable. En otro extremo, señaló que el Tribunal de Quiebras coincidió con su posición de que el dinero depositado no es parte del caudal de Azure, protegido por el Código de Quiebras.[19]

---

[18] Íd., Anejo 1, 1-2.
[19] Según la parte recurrida, el Tribunal de Quiebras emitió una orden en la que acogió los argumentos y el razonamiento de Triangle Cayman respecto a este tema y, de esta manera, adjudicó en los méritos que los fondos depositados judicialmente por Cost Control no forman parte del caudal de Azure. Véase Apéndice de la *Oposición a expedición de petición de certiorari*, pág. 165. En la determinación, el Tribunal de Quiebras consignó lo siguiente:
> Debtor's request for sanctions against Triangle Cayman Asset Company (docket #123) is hereby denied for the reasons stated by Triangle in its opposition (docket #130), with which this court

Case:23-00462-ESL11 Doc#:141-1 Filed:09/14/23 Entered:09/14/23 14:59:11 Desc:
Exhibit A - Court of Appeals Ruling Page 7 of 10

KLCE202300873 7

### III.

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. **Medina Nazario v. McNeil Healthcare LLC**, 194 DPR 723, 728 (2016). Véase, además, **IG Builders et al. v. BBVAPR**, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. **Rivera Figueroa v. Joe's European Shop**, 183 DPR 580, 596 (2011).

La Regla 52.1 de las de Procedimiento Civil de 2009, según enmendada, *supra*,[20] establece las instancias en las que el foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. **Scotiabank v. ZAF Corporation, et als.**, 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. **Mun. de Caguas v. JRO Construction**, 201 DPR 703 (2019). Nuestro rol al atender recursos de *certiorari* descansa en

---

agrees as to both the sequence of events and the applicable law. Thus, the court incorporates such exposition and reasoning as its own. In Re: Azure Development Inc, Case No. 23-00462-ESL11.

[20] Esta Regla dispone que:

[....]

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales. (Énfasis nuestro).

Case:23-00462-ESL11 Doc#:141-1 Filed:09/14/23 Entered:09/14/23 14:59:11 Desc:
Exhibit A - Court of Appeals Ruling Page 8 of 10

KLCE202300873                                                    8

la premisa de que es el foro de instancia quien está en mejor posición para resolver controversias interlocutorias, o de manejo del caso, y en la cautela que debemos ejercer para no interrumpir injustificadamente el curso corriente de los pleitos que se ventilan ante ese foro. **Torres Martínez v. Torres Ghigliotty**, 175 DPR 83, 97 (2008).

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de las de Procedimiento Civil, *supra*, debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de una manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra,* R. 40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[21]

Reiteradamente, el Tribunal Supremo de Puerto Rico ha expresado que en su misión de hacer justicia la discreción "es el más poderoso instrumento reservado a los jueces". **Rodríguez v. Pérez**, 161 DPR 637, 651 (2004); **Banco Metropolitano v. Berríos**, 110

---

[21] Esta Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. (Énfasis nuestro).

Case:23-00462-ESL11 Doc#:141-1 Filed:09/14/23 Entered:09/14/23 14:59:11 Desc: Exhibit A - Court of Appeals Ruling Page 9 of 10

KLCE202300873 9

DPR 721, 725 (1981). La discreción se refiere a "la facultad que tiene [el tribunal] para resolver de una forma u otra, o de escoger entre varios cursos de acción". *Citibank et al. v. ACBI et al.*, 200 DPR 724, 735 (2018); *García López y otro v. E.L.A.*, 185 DPR 371 (2012). En ese sentido, ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Citibank et al. v. ACBI et al.*, supra; *Medina Nazario v. McNeil Healthcare LLC*, supra, pág. 729. Lo anterior "no significa poder actuar en una forma u otra, haciendo abstracción del resto del Derecho". *Hietel v. PRTC*, 182 DPR 451, 459 (2011); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001); *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 658 (1997). Ello, ciertamente, constituiría un abuso de discreción.

En ese sentido, el Tribunal Supremo de Puerto Rico ha establecido que "la discreción que cobija al Tribunal de Primera Instancia en sus determinaciones discrecionales es amplia, por lo que sus decisiones merecen gran deferencia". *Citibank et al. v. ACBI et al.*, supra, pág. 735. Cónsono con ello, es norma reiterada que este tribunal no intervendrá "con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso con el ejercicio de la discreción, o que incurrió en error manifiesto". *Citibank et al. v. ACBI et al.*, supra, pág. 736. Véase, además, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

## IV.

Tras un análisis objetivo, sereno y cuidadoso del expediente de la *Petición de certiorari*, a la luz de los criterios esbozados tanto por la Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1, como la

Case:23-00462-ESL11 Doc#:141-1 Filed:09/14/23 Entered:09/14/23 14:59:11 Desc: Exhibit A - Court of Appeals Ruling Page 10 of 10

KLCE202300873 10

Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, R. 40, resolvemos que debemos abstenernos de ejercer nuestra función revisora. A juicio nuestro, no atisbamos motivo o error alguno que amerite intervención. La determinación del foro recurrido es correcta en derecho.

Coincidimos con el Tribunal de Quiebras en que los fondos depositados en el TPI por Cost Control no son parte del caudal protegido de Azure, sino que son de uno de los garantizadores (Cost Control). Adviértase que contra dicha parte recayó un dictamen como deudor solidario, por una suma mayor a la depositada.

### V.

Por los fundamentos pormenorizados, se *deniega* la expedición del auto de *certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones