**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

| In re:                   | Case No. 23-00462 (ESL) |
|--------------------------|--------------------------|
| AZURE DEVELOPMENT, INC.  | Chapter 11               |
| Debtor.                  |                          |

**JOINT MOTION FOR THE APPROVAL OF
SETTLEMENT AND RELEASE AGREEMENT**
*(Docket References: 29, 43, 44, 45, 59, 60, 81, 97)*

TO THE HONORABLE ENRIQUE S. LAMOUTTE
UNITED STATES BANKRUPTCY JUDGE:

**COME NOW** Triangle Cayman Asset Company ("Triangle"), and Azure Development Inc.("Debtor") and jointly with Triangle, the "Parties"), through their respective undersigned counsel, and submit this *Joint Motion for the Approval* of that certain *Forbearance, Discounted Payoff and Settlement and Release Agreement* (the "Settlement Agreement") pursuant to Fed. R. Bankr. P. 9019 (the "9019 Motion"), respectfully requesting that the Court enter an order, similar in form and substance to the one proposed herein as **Exhibit A** (the "9019 Order"), approving the Settlement Agreement in its entirety, and this 9019 Motion. In support of the 9019 Motion, the Parties hereby state and request as follows:

**PRELIMINARY STATEMENT[1]**

For over eight (8) years in state court, Debtor and Triangle have been vigorously litigating Triangle's claims, which stem from a loan agreement executed by Debtor over twenty (20) years ago. The impasse between Debtor and Triangle ensued during five and a half months since the

---

[1] The Parties include, throughout this 9019 Motion, a summary of the terms, conditions, and obligations under the Settlement Agreement. The summaries and descriptions of the Settlement Agreement made in this 9019 Motion are intended solely as a summary of the Settlement Agreement; the Settlement Agreement sets forth the obligations and agreements reached by the Parties and, accordingly, in the event of any inconsistency between the 9019 Motion and the Settlement Agreement, the Settlement Agreement shall govern.

filing of the captioned case, as evidenced by the pending motion to dismiss the case, a motion for relief for relief from stay, Debtor's answers thereto and Triangle's objection to the approval of Debtor's Disclosure Statement, among others.

Nonetheless, Debtor and Triangle made substantial progress and have reached and executed the Settlement Agreement which finally resolves all pending controversies between them and related parties. The Parties agree that this bankruptcy case is a two-party dispute, thus the main benefit to the estate is that the Settlement Agreement resolves the same, all pending contested matters, Case Number NSCI 2015-00410 and all pending matters therein or related thereto ("State Court Case"). The Settlement Agreement establishes Triangle's claim and provides a nine-month period for Debtor to satisfy such claim, at a discount, from the proceeds of a sale or the refinancing of the Real Estate Collateral (defined below) and for an extension of three (3) months thereafter for Debtor to satisfy Triangle's claim in full. If Debtor complies with the terms of the Settlement Agreement and satisfies Triangle's claim, Debtor expects to generate funds from the sale or refinancing of the Real Estate Collateral that it may use to, *inter alia*, satisfy other claims. If Debtor fails to comply with the terms of the Settlement Agreement, Triangle may then foreclose on Debtor's Real Estate through a consent judgment in the State Court Case as provided herein and collect on its claim. Finally, to effectuate the aforesaid, the Parties have agreed to request for the Court to approve this Settlement, and, upon said approval becoming final and unappealable, they will request that the Court dismiss the captioned case, with a bar to refile for three years.

For the above reasons, and those detailed below, the Parties submit, as Exhibit 1 to this 9019 Motion, the Settlement Agreement reached by them, and respectfully request that the Court enter an order granting this 9019 Motion and approving the Settlement Agreement.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this 9019 Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the scope of 28 U.S.C. § 157(b)(2).

2. Venue of this proceeding and of the 9019 Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory basis for the relief requested herein are Sections 105(a), 1107 and 1108 of Title 11 of the United States Code (the "Bankruptcy Code"), and Fed. R. Bank. P. 9019.

**BACKGROUND**

4. On February 17, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, under Case No. 23-00462 (ESL-11) (the "Bankruptcy Case"). See Docket No. 1.

5. Since the Petition Date, Debtor has been managing its affairs and operating its businesses as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

**A. Relevant Pre-Petition Events**

*i. Triangle's Claim*

6. Prior to the Petition Date, on November 21, 2003, Banco Bilbao Vizcaya Argentaría Puerto Rico ("BBVA") and Debtor entered into a *Loan and Security Agreement*, amended on May 28, 2010, and January 16, 2014 (the "Loan Agreement"), in the principal amount of $1,725,000.00 (the "Loan"). See, Claim No. 1. As reflected in the last amendment to the Loan Agreement, dated January 16, 2014, its maturity date was December 31, 2014. See, Id. at p. 30.

7. To secure the obligations under the Loan Agreement, on November 21, 2003, Debtor subscribed a *Mortgage Note* (the "Mortgage Note") in the principal amount of

3

$1,750,000.00, payable on demand, authenticated under affidavit number 67,618 of Notary Public Ernesto González Piñero. See, Claim No. 1 **Exhibit B**, *Mortgage Note*.²

8. The Mortgage Note is secured by *Deed of First Mortgage* Number 132 (the "Mortgage" and collectively with the Loan Agreement and the Mortgage Note, the "Debtor's Loan Documents") executed by Debtor, on November 21, 2003, before Notary Public Ernesto González Piñero, constituted over two (2) adjacent lots, property numbers 4,969 and 5,722, assigning the amount of $1,697,500.00 to property number 4,969 and $52,500.00 to property number 5,722 (the "Real Properties") , as their respective responsibility under the Mortgage Note See, Claim No. 1, **Exhibit C**, *Mortgage Deed*.

9. Through the Mortgage, Debtor granted to BBVA (later Oriental, and now Triangle) a first priority lien over the real properties with the following legal description in the Spanish Language:

**PROPERTY 4,969**

**RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de doce cuerdas con setecientas catorce milésimas de otra (12.714 cuerdas.), equivalentes a cuarenta y nueve mil novecientos setenta metros cuadrados con seiscientas ochenta y una milésimas de otro (49,970.681 m-), en lindes por el **NORTE,** en catorce (14) alineaciones que totalizan cuatrocientos sesenta y cinco metros con setecientas veinticinco milésimas de otro (465.725 m), con la zona marítimo terrestre que la separa del Océano Atlántico; por el **SUR,** en una alineación de nueve metros con trescientas ochenta y tres milésimas de otro (9.383 m), con el Carlo Embarcadero, en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientas cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en otras cinco (5) alineaciones que totalizan cien metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en otras tres (3) alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en una alineación de dieciséis metros con cuatrocientas sesenta milésimas de otro (16.460 m), con terrenos de la Familia Pirallo y en una alineación de ciento cuarenta y seis metros con novecientos cincuenta y seis milésimas

---

² On December 18, 2012, BBVA merged with Oriental Bank ("Oriental"). On September 28, 2015, Triangle acquired the credit relationships between Oriental and Debtor.

de otro (146.956 m), con Half Moon Development Corp.; por el **ESTE,** en dos (2) alineaciones que totalizan cincuenta y tres metros con, quinientas noventa y nueve milésimas de otro (53.599 m), con la zona marítimo terrestre que la separa del Océano Atlántico y en una alineación de dieciséis metros con doscientas treinta y una milésimas de otro (16.231 m), con terrenos de la Familia Pirallo; y por el **OESTE,** en dos (2) alineaciones que totalizan treinta metros con ciento una milésimas de otro (30.101 m), con la desembocadura del Carlo Embarcadero que la separa del Océano Atlántico, en una alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con terrenos de la Familia Pirallo y en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705 m) con terrenos de la Familia Pirallo.

Property number 4,969 is recorded at page 220 of volume 92 of Luquillo, Registry of the Property of Fajardo ("Property 4,969").

See Claim No. 1, **Exhibit D**, *Title Study for Property 4,969*.

### PROPERTY 5,722

**RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de cinco cuerdas con setecientas ochenta y dos milésimas de otra (5.782 cuerdas), equivalentes a veintidós mil setecientos veintiséis metros cuadrados con seiscientos noventa y siete milésimas de otro (22,726.697 mc), en lindes por el **NORTE,** en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientos cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en cinco alineaciones que totalizan den metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en tres alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en cuatro alineaciones que totalizan sesenta y cinco metros con quinientos treinta y seis milésimas de otro (65.536 m), con la Parcela C dedicada a use público y en una alineación de nueve metros con ochocientas sesenta y seis milésimas de otro (9.866 m), con la extensión de Ia Calle D existente; por el **SUR,** en cinco (5) alineaciones que totalizan doscientos noventa y un metros con cuarenta y siete milésimas de otro (291.047 m), con Sucesión Beascoechea y en seis alineaciones' que totalizan doscientos veinticuatro metros con seiscientas setenta y tres milésimas de otro (224.673 m), con el Carlo Embarcadero; por el **ESTE,** en una alineación de sesenta y nueve metros con novecientas veintisiete milésimas de otro (69.927 m), con la extensión de la Calle D existente, en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705), con terrenos de la Familia Paralelo, y en otra alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con dichos terrenos de la Familia Paralelo; y por el **OESTE,** en una alineación de nueve metros con novecientas diez milésimas de otro (9.910 m), con el Carlo Embarcadero que la separa del Océano Atlántico.

Property number 5,722 is recorded on page 155 of volume 106 of Luquillo, Registry of the Property of Fajardo ("Property 5,722" and together with Property 4,969, the "Real Estate Collateral").

See, Claim No. 1, **Exhibit E**, *Title Study for Property 5,722*.

10. To further secure and guarantee the payment and performance of all of Debtor's obligations under Debtor's Loan Documents, on November 20, 2003, Mr. Alfonso Valdés García ("Valdés") executed a *Guaranty and Agreement*, authenticated under affidavit number 1,851 of Notary Public Miguel Agustín Blanco Fuertes (the "Guaranty Agreement I"). See, Claim No. 1, **Exhibit F**. Through Guaranty Agreement I, Valdés unconditionally agreed to jointly and severally with Debtor guarantee the due performance and payment of all of the Debtor's obligations under the Debtor's Loan Documents.

11. Furthermore, on January 16, 2014, Cost Control Company, Inc. ("Cost Control") and Fideicomiso Valdés-Acevedo ("Fideicomiso", together with Valdés the "Guarantors") executed a *Guaranty and Agreement* authenticated under affidavit numbers 3,246 and 3,250 of Notary Public Pedro A. Cantero Frau (the "Guaranty Agreement II" and together with the Guaranty Agreement I, the "Guaranty Agreements" and together with the Debtor's Loan Documents, the "Loan Documents"), wherein Cost Control and Fideicomiso agreed to jointly and severally with Debtor guarantee the due performance and payment of all of Debtor's obligations under the Debtor's Loan Documents. See Claim No. 1, **Exhibit G**.

12. Moreover, through the final amendment to the Loan Agreement, Debtor and the Guarantors ratified "all the guarantees and collateral given and/or executed for the concession of the Loan Agreement, including, but without being limited to, the joint and several guarantees on behalf of" Oriental, to Triangle. See Claim No. 1, **Exhibit A**, pp. 30-31, *Fourth Section*.

### ii. *Defaults under the Loan Documents*

13. Prior to the Petition Date, Debtor and the Guarantors had defaulted under the Loan Documents.

14. As a result of such defaults, Oriental, now Triangle, filed a complaint for collection of monies and foreclosure on June 9, 2015, in the State Court Case, before Puerto Rico Court of First Instance, Fajardo Section ("CFI").

15. After several procedural events in the State Court Case, Debtor and the Guarantors deposited $153,000.00 in the CFI (the "Deposited Funds") raising several allegations and arguments regarding the right of redemption under Article 1425 of the Puerto Rico Civil Code. This dispute, however, was ultimately resolved in favor of Triangle, and the Deposited Funds remain in the CFI.

16. On December 1, 2022, Triangle, after acquiring the Loan Documents from Oriental and substituting itself as plaintiff in the State Court Case filed a *Motion for Summary Judgment* (the "Motion for Summary Judgment").

17. After the time to respond to the Motion for Summary Judgment, without filing a response thereto, Debtor filed for relief in the captioned case.

18. On March 28, 2023, the CFI issued a partial judgment (the "Partial CFI Judgment") against the Guarantors.

### B. Relevant Post-Petition Events

19. As part of the State Court Case and this Bankruptcy Case, the Parties have commenced, asserted and/or have pending several contested matters and actions. These include, but are not limited to Triangle's motion to dismiss, motion for relief from stay, Debtor's answers thereto and the objection to the approval of Debtor's Disclosure Statement. These controversies in this Bankruptcy Case and the State Court Case, and any other controversies and contested matters among the Parties and the Guarantors, known or unknown, are collectively referred to as the "Litigation".

20. On November 22, 2023, the Parties and the Guarantors executed the Settlement Agreement.

21. The Parties have engaged in arms' length negotiations and have agreed to enter into the Settlement Agreement, providing for total and full satisfaction of all claims between the Parties relating to the Credit Agreement, the Loan, the Loan Documents and the Litigation, in accordance with the terms and conditions set forth in the Settlement Agreement (the "<u>Settlement Transaction</u>").

## BASIS FOR RELIEF

22. Bankruptcy Rule 9019(a) provides that a court may approve a debtor's "compromise and settlement" after notice and a hearing. <u>See</u> Bankruptcy Rule 9019(a). The Court of Appeals for the First Circuit (the "<u>First Circuit</u>") has emphasized that "[s]tipulations of settlement are favored by the courts, and they will rarely be set aside absent fraud, collusion, mistake or other such factor." <u>In re Indian Motorcycle Co.</u>, 289 B.R. 269, 282 (B.A.P. 1st Cir. 2003); <u>See also</u>, <u>In re Healthco Int'l, Inc.</u>, 136 F.3d 45, 50 n.5 (1st Cir. 1998).

23. In deciding whether to approve a settlement pursuant to Federal Rule of Bankruptcy Procedure 9019, "[t]he bankruptcy court essentially is expected to assess and balance the value of the claims being compromised against the value of the compromise proposal." <u>In re Yacovi</u>, 411 F. App'x 342, 346 (1st Cir. 2011) (citing <u>Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)</u>, 136 F.3d 45, 50 n. 5 (1st Cir.1998). Further, "the trustee's judgment is to be accorded some deference." <u>In re Healthco Int'l, Inc.</u>, 136 F.3d at 50 n. 5 (citing <u>Hill v. Burdick (In re Moorhead Corp.)</u>, 208 B.R. 87, 89 (1st Cir. B.A.P. 1997). In short, as stated by the Court of Appeals for the First Circuit (the "<u>First Circuit</u>"), "'[t]he responsibility of the bankruptcy judge, and ours on

8

review, is ... to ... see whether the settlement falls below the lowest point in the range of reasonableness.'" Yacovi.

24. The approval of settlements is within the court's "wide discretion." See, Jeremiah v. Richardson, 148 F.3d 17, 22 (1st Cir. 1998). However, while a court should apply its own independent judgment to determine whether to approve a settlement, it should also afford deference to the judgment of the trustee or debtor in possession. See, In re Receivership Estate of Indian Motorcycle Mfg., Inc., 299 B.R. 8, 21 (D. Mass. 2003) (the court should give "substantial deference to the business judgment of a bankruptcy trustee when deciding whether to approve a settlement"); Hill v. Burdick (In re Moorhead Corp.), 2008 B.R. 87, 89 (B.A.P. 1st Cir. 1997) ("The [bankruptcy] judge . . . is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference." (citation omitted)), City Sanitation, LLC v. Allied Waste Serves. Of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference.") (citing In re Thompson, 965 F.2d 1136, 1145 (1st Cir. 1992)); In re Healthco Int'l, Inc., 136 F.3d at 50 n.5. ("the bankruptcy judge . . . is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference. Compromises are favored in bankruptcy.") (internal citations and quotations omitted).

25. Likewise, the court should also consider the paramount interests of creditors and give deference to their views. See, Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995) (noting that court should give proper deference to the reasonable views of creditors). Accordingly, a settlement should generally be approved unless it "falls below the lowest point in the range of

reasonableness." City Sanitation, LLC v. Allied Waste Serves. Of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 91 (1st Cir. 2011) (citing Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2nd Cir. 1983)).

26. A court should consider four factors in striking the balance between the value of the compromise and the value of the claim:

> **(i)** the probability of success in the litigation being compromised.
> **(ii)** the difficulties, if any, to be encountered in the matter of collection.
> **(iii)** the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and,
> **(iv)** the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

See, In re C.P. del Caribe, Inc., 140 B.R. 320, 325, (Bankr. D.P.R. 1992); In re Robotic Vision Sys., Inc., No. 04-14151-JMD, 2006 WL 929322, at *4 (B.A.P. 1st Cir. Apr. 11, 2006) (citing Jeremiah v. Richardson, 148 F.3d 17, 23 (1st Cir.1998)).

27. "The court's consideration of these factors should demonstrate whether the compromise is fair and equitable, and whether the claim the debtor is giving up is outweighed by the advantage to the debtor's estate." In re Robotic Vision Sys., Inc., 2006 WL 929322, at *4.

28. The standard for approving a settlement, whether it is in the best interest of the estate, entails an examination of the settlement's terms with the litigation's probable cost and benefits. When an agreement provides tangible benefits to the estate in return for sacrifice of uncertain claims against a creditor, the bankruptcy court does not err in approving the settlement. In re Bond, 16 F.3d 408, 30 C.B.C.2d 784 (4th Cir. 1994).

29. Entering into a settlement agreement under Rule 9019 must be accorded some deference by the courts. See, In re Healthco Int'l, Inc., 136 F.3d 45, 54 at fn. 5 (1st Cir. 1998) (citing In re Moorhead Corp., 208 B.R. 87, 89 (B.A.P. 1st Cir. 1997) ("the [bankruptcy] judge…is not to substitute her judgment for that of the trustee [debtor-in-possession], and the trustee's judgment is

to be accorded some deference."). Furthermore, "[c]ompromises are favored in bankruptcy." See, Richard Levin & Henry J. Sommer, 10 Collier on Bankruptcy ¶9019.01 (16th ed. 2020).

30. The Parties submit that the Settlement Transaction and Settlement Agreement should be approved as they constitute a sound exercise of Debtor's business judgment, are in the best interest of creditors and the estate and resolve the Litigation.

**SUMMARY OF SETTLEMENT TRANSACTION AND BENEFITS RESULTING THEREFROM**

31. The terms of the Settlement Transaction are set forth and detailed in the Settlement Agreement, attached as Exhibit 1. The following description is intended solely as a summary of the main terms of such Settlement Agreement and is not intended and does not constitute an exhaustive description of all terms or conditions of the Settlement Agreement. In the event of any inconsistency between the summary set forth herein and the Settlement Agreement, the Settlement Agreement governs and therefore all parties in interest should refer to the Settlement Agreement and not to the summary included herein.

32. The Settlement Transaction is a sound exercise of Debtor's business judgment and provides numerous benefits to the estate and creditors:

- ***Consented Period for Sale of Real Estate Collateral.***

    (i) Triangle has agreed for Debtor to have a consented nine-month period, commencing on the date of the execution of the Settlement Agreement (the "9 Month Period") to satisfy the amount of $1,889,769.86 in full payment of the Claim (the "Triangle Reduced Claim Amount") through the sale or refinancing of the Real Estate Collateral or otherwise. This amount is as of November 8, 2023, and will be updated as of the date of execution of the Settlement Agreement.

    (ii) If, at the end of the 9 Month Period, Debtor has not delivered to Triangle payment of the Triangle Reduced Claim Amount, Debtor may extend the terms of the Settlement Agreement for an additional 3 month period (the "3 Month Sale Extension Period" and together with the 9 Month Period, the "Sale Period") to satisfy to Triangle the amount of

11

$2,166,538.21, in full settlement of the Claim (the "Triangle Total Claim"). This amount is as of November 8, 2023.

(iii) For the avoidance of doubt, Debtor shall have a total of twelve (12) months from the date of the execution of the Settlement Agreement to finalize the sale or refinancing of the Real Estate Collateral or otherwise pay Triangle's claim provided, however, that **(i)** if the sale of the Real Estate Collateral and/or the payment takes place during the 9 Month Period, the amount payable to Triangle shall be the Triangle Reduced Claim Amount, and **(ii)** if the sale and/or payment takes place during the 3 Month Sale Extension Period, the amount payable to Triangle shall be the Triangle Total Claim[3].

See Settlement Agreement at pp. 5-6, Sections 5-7.

- *Allowed Claim of the Triangle Total Claim.* The Settlement Transaction ratifies the Triangle Total Claim, providing for a discounted amount thereof pursuant to the terms and conditions set forth therein, conditioned upon the entry of an order approving the Settlement Agreement, which provides‒ subject to the terms and conditions of the Settlement Agreement‒ for mutual releases by the Parties, including the release of the Guarantors in the State Court Case, upon satisfaction of its terms. See, Settlement Agreement at pp. 5, 6, 10, 11, 12 and 13, Sections 6, 7, 15, 19 and 20.

- *Resolution of Disputes regarding the Deposited Funds.* The Parties have agreed that the Deposited Funds shall be jointly requested by Triangle, Debtor, and the Guarantors to be disbursed in favor of Triangle, to be applied to reduce the interest due under the Reduced Claim Amount during the 9 Month Sale Period. See, Settlement Agreement at p. 5, Section 7(ii).

- *Periodic Reporting.* Debtor shall provide Triangle with copies of all purchase offers received for the Real Estate Collateral within 5 business days of receipt thereof and Debtor shall also provide to Triangle a monthly report, on or before the 1st day of each month, detailing the Real Estate's permitting process and sale efforts

---

[3] The Parties have further agreed that both the Triangle Reduced Claim Amount and the Triangle Total Claim shall accrue interest at the rate of 11.50% and any additional legal fees incurred by Triangle until paid in full. See, Settlement Agreement at pp. 5-6, Section 7.

12

      and any progress relative thereto, or relevant information as to such matters. See, Settlement Agreement at pp. 5-6, Section 7(v).

- ***Continued Payment of Insurance and Taxes.*** Debtor shall pay all real estate taxes when due and provide evidence of such payment to Triangle. See, Settlement Agreement at p. 6, Section 7(vii).

- ***Resolution of Obligations, Litigation and Consented Dismissal of Bankruptcy Case.*** As part of the Settlement Transaction, upon receipt of the Settlement Payment and satisfaction of the conditions to Closing, the Parties agree that **(i)** such Settlement Payment shall satisfy, in full, all of Debtor's and the Guarantor's Obligations under the Loan Agreement, the Loan and the Loan Documents and finally resolve all of the Litigation, including the State Court Case, and the release─ subject to the terms and conditions of the Settlement Agreement─of the Guarantors, and **(ii)** upon approval of the Settlement Agreement and granting of the 9019 Motion, the Parties will jointly request the dismissal of the Bankruptcy Case to avoid chapter 11 expenses and fees during the Sale Period. See, Settlement Agreement at p. 11, Section 17.

- ***Bankruptcy Court Approval***. The Settlement Agreement is conditioned on the approval by this Court of the 9019 Motion. See, Settlement Agreement at pp. 5-6, 7, Section 7(vi)(b) and 10.

**WHEREFORE**, the Parties stipulate to the above, as set forth in more detail in the Settlement Agreement attached hereto as Exhibit 1, and jointly request that this Court enter an order granting this 9019 Motion and approving the Settlement Agreement in its entirety, and granting any other relief it deems just and proper.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case, including, but not limited to, Debtors' counsel and the U.S. Trustee.

## NOTICE

Within twenty-one (21) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought

13

herein, shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico on or before **December 27, 2023**. If no objection or other response is filed within the time allowed herein, this paper will be deemed unopposed and may be granted without a need for a hearing unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

**RESPECTFULLY SUBMITTED,**

San Juan, Puerto Rico, this 6th day of December, 2023.

| | |
|---|---|
| **CHARLES A. CUPRILL LAW OFFICE, P.S.C.** | */s/ Ignacio J. Labarca-Morales* |
| *Attorneys for Debtor* | M \| P \| M **MARINI PIETRANTONI MUÑIZ LLC** |
| 356 Calle Fortaleza | *Attorneys for Triangle Cayman Asset Company* |
| Second Floor | Luis C. Marini-Biaggi - USDC No. 222301 |
| San Juan, P.R. 00901 | Ignacio Labarca-Morales - USDC No. 303307 |
| Tel: (787) 977-0515 | |
| | 250 Ponce De León Ave. |
| */s/ Charles A. Cuprill-Hernández* | Suite 900 |
| Charles A. Cuprill-Hernández | San Juan, PR 00918 |
| USDC No. 114312 | Tel.: (787) 705-2171 |
| E-mail: ccuprill@cuprill.com | |
| | lmarini@mpmlawpr.com |
| | ilabarca@mpmlawpr.com |

## **Exhibit A**
*Proposed 9019 Order*