## FORBEARANCE, DISCOUNTED PAYOFF, SETTLEMENT AND RELEASE AGREEMENT

This **FORBEARANCE, DISCOUNTED PAYOFF, SETTLEMENT AND RELEASE AGREEMENT** (the "Agreement"), dated as of November 21, 2023 (the "Effective Date"), is entered into by and among: (i) Azure Development, Inc., a corporation duly organized and existing under the laws of the Commonwealth of Puerto Rico (the "Borrower"); (ii) Cost Control Company, Inc., a corporation duly organized and existing under the laws of the Commonwealth of Puerto Rico ("Cost Control"); (iii) Fideicomiso Valdés-Acevedo, a trust organized and existing under the laws of the Commonwealth of Puerto Rico (the "Trust"); (iv) Alfonso Valdés García, of legal age, single, executive, and resident of Guaynabo, Puerto Rico ("Valdés" and, collectively with Cost Control and the Trust, the "Guarantors" and, collectively with the Borrower, the "Loan Parties"); and (v) Triangle Cayman Asset Company, a corporation duly organized and existing under the laws of the Cayman Islands (the "Creditor"). The Creditor and the Loan Parties shall be hereinafter collectively referred to as the "Parties".

### RECITALS

**WHEREAS**, on November 21, 2003, the Borrower and Oriental Bank (through its predecessor Banco Bilbao Viscaya Argentaría Puerto Rico) (the "Original Creditor") entered into a Loan and Security Agreement and those certain loan documents more particularly described in **Exhibit A** attached hereto and made a part hereof (collectively with any and all other agreements, financings statements, documents, instruments, amendments, restatements or other modifications related thereto, the "Loan Documents");

**WHEREAS**, pursuant to the Loan Documents, the Original Creditor granted to the Borrower a loan in the original principal amount of **ONE MILLION SEVEN HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($1,725,000.00)** (hereinafter, the "Loan");

**WHEREAS** the Original Creditor assigned to the Creditor all rights, title and interests of Original Creditor in and to the Loan, effective as of October 2, 2015;



**WHEREAS** the Loan Parties acknowledge and accept that the total amount of principal, interest, fees and other amounts due and owing by the Loan Parties to the Creditor under the Loan Documents are, as of November 8, 2023, is as follows (hereinafter, the "Current Debt"):

| | |
|---|---|
| Principal | $ 1,026,969.77 |
| Interest | $597,667.84 |
| Late Fees | $25,464.73 |
| Default Interest | $276,768.35 |
| Legal Expenses as of August 30, 2023 | $236,738.02 |
| Insurance | $644.00 |
| Valuation Expenses | $2,285.50 |
| **Total** | **$2,166,538.21** |

**WHEREAS**, the Loan Parties have requested that the Creditor forbear from exercising the Creditor's rights under the Loan Documents as a result of the Acknowledged Defaults (as hereinafter defined) by the Loan Parties under the Loan Documents and have discussed the terms and conditions to satisfy the Current Debt. The Creditor is willing to grant such forbearance and resolve the outstanding

controversies between the Parties solely under, and in reliance upon, the terms and conditions set forth herein.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the premises and mutual covenants herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

**SECTION 1**. Recitals. The Parties agree to make a part hereof all the "Recitals" as if set forth in full herein.

**SECTION 2.** Definitions. As used herein, the following terms shall have the following meanings:

Agreement. This Agreement, together with all exhibits and schedules hereto, as it may be amended, modified, restated, varied, extended or otherwise supplemented from time to time.

Bankruptcy Case. Shall refer to that certain chapter 11 proceeding of the Borrower pending before the United States Bankruptcy Court for the District of Puerto Rico under Case No. 23-00462-ESL.

Bankruptcy Court. Shall refer to the United States Bankruptcy Court for the District of Puerto Rico, presiding over the Bankruptcy Case.

Borrower. Has the meaning ascribed thereto in the Preamble.

Closing. The payment to, and receipt by, the Creditor of the (i) Triangle Reduced Claim Amount during the 9 Month Period, or (ii) the Triangle Total Claim Amount during the 3 Month Extension, if applicable, in same day available funds, and the satisfaction of the other closing conditions set forth in Section 10 of this Agreement.

Closing Date. The date when the Closing occurs, as set forth in Section 10 of this Agreement.

Collateral. All property (real or personal) that is subject to a Lien granted to secure the Obligations.



Consigned Funds. Shall refer to those funds deposited by Cost Control in the State Court Action in the original amount of $153,289.74, plus any interest accrued thereon.



Creditor. Has the meaning ascribed thereto in the Preamble.

Creditor Released Matters. Has the meaning assigned to that term in Section 19 hereof.

Creditor Released Parties. Has the meaning assigned to that term in Section 19 hereof.

Current Debt. Has the meaning ascribed thereto in the Recitals.

Effective Date. Has the meaning ascribed thereto in the Preamble.

Governmental Authority. Any court, board, agency, commission, office or other authority of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, Commonwealth of Puerto Rico or otherwise) whether now or hereafter in existence.

Guarantors. Has the meaning ascribed thereto in the Preamble.

Guarantees. The Guaranty Agreements subscribed by each of the Guarantors to guarantee the Obligations, as more particularly described in **Exhibit A** attached hereto and made a part hereof.

Indemnified Loss. Has the meaning assigned to that term in Section 20 hereof.

Joint 9019 Motion. Shall refer to the Joint Motion for the Bankruptcy Court to Approve this Settlement Agreement, and the proposed order for the Bankruptcy Court to approve the same, attached hereto as **Exhibits B-1** and **B-2**.

Joint Motion to Dismiss. Shall refer to the Joint Motion to Dismiss the Bankruptcy Case with Bar to Refile of Three Years, and proposed order for the Bankruptcy Court to approve the same, attached hereto as **Exhibits C-1** and **C-2**.

Joint Motion to Disburse Consigned Funds. Shall refer to the Joint Motion to Disburse to Creditor the Consigned Funds in the State Court Action, attached hereto as **Exhibit D**.

Joint Motion to Issue Writ and Order. Shall refer to the Joint Motion for the State Court to Issue Writ and Order of Foreclosure in the State Court Action, and proposed order and writ, attached hereto as **Exhibits E-1** and **E-2**.

Joint Motion to Dismiss Appeal. Shall refer to the motion to dismiss, with prejudice, the Loan Parties' pending appeal, attached hereto as **Exhibit F**.

Joint Motion to Substitute Party. Shall refer to the Joint Motion to Substitute Creditor for Triangle REO PR Corp. in the State Court Action and attached hereto as **Exhibit G**.

Judgment by Consent. Shall refer to the judgment by consent attached hereto as **Exhibit H**, to be executed by the Loan Parties as set forth in this Agreement.



Lien. With respect to the Mortgaged Properties or any other lien or security interest granted by any of the Loan Parties pursuant to the Loan Documents.

Loan. Has the meaning ascribed thereto in the Recitals.

Loan Documents. Has the meaning ascribed thereto in the Recitals.

Loan Parties. Has the meaning ascribed thereto in the Preamble.



Mortgaged Properties. Shall mean the real properties recorded in the Registry of the Property of Puerto Rico, as follows: (i) Section of Fajardo, as property number 4,969 recorded at page number 220 of volume 92 of Luquillo, together with any buildings, structures, fixtures and all items of personal property situated thereon; and (ii) Section of Fajardo, as property number 5,722 recorded at page number 155 of volume 106 of Luquillo, together with any buildings, structures, fixtures and all items of personal property situated thereon.

Obligations. All obligations of the Loan Parties to the Creditor under the Loan Documents, whether now existing or hereafter arising, including, but not limited to, principal, interest, fees, costs, expenses and other amounts payable to the Creditor under the Loan Documents.

3

Obligor Released Matters. Has the meaning assigned to that term in Section 19 hereof.

Original Creditor. Has the meaning ascribed thereto in the Recitals.

Parties. Has the meaning ascribed thereto in the Preamble.

Person. Any natural person, corporation, limited liability company, trust, joint venture, association, company, partnership or other entity.

Proof of Claim. Shall refer to Proof of Claim No. 1 filed by the Creditor in the Bankruptcy Case.

Release Termination Events. Has the meaning assigned to that term in Section 19 hereof.

Releasing Loan Parties. Has the meaning assigned to that term in Section 19 hereof.

State Court Litigation. Shall refer to the pending state court action captioned as *Triangle Cayman Asset Company v. Azure Development, Inc.,et al*, Civil No. NSCI2015-00410 and pending in the Puerto Rico Court of First Instance, Fajardo.

State Court. The Puerto Rico Court of First Instance in Fajardo presiding over the State Court Litigation.

Surviving Obligations. The indemnification, and other, obligations of the Loan Parties under the Loan Documents and under this Agreement that, by their express terms, are intended to survive satisfaction of the Obligations and the delivery of the Discounted Payoff Amount by the Loan Parties to the Creditor.

**SECTION 3.** Outstanding Balance of the Loan. The Loan Parties hereby confirm and represent to the Creditor that the current outstanding balance of the Loan as of November 8, 2023, is as follows (together with any other amounts which may due or become due by the Loan Parties under this Agreement or the Loan Documents, the "Obligations"):

| Principal | $ 1,026,969.77 |
|---|---|
| Interest | $597,667.84 |
| Late Fees | $25,464.73 |
| Default Interest | $276,768.35 |
| Legal Expenses as of August 30, 2023 | $236,738.02 |
| Insurance | $644.00 |
| Valuation Expenses | $2,285.50 |
| **Total** | **$2,166,538.21** |

**SECTION 4.** Forbearance. The Creditor hereby agrees that during the Forbearance Period (as defined in Section 5 below) and provided that no Event of Default (as defined in Section 12(B)) occurs under the Loan Documents or this Agreement, the Creditor shall forbear from exercising the rights and remedies available to the Creditor under this Agreement, the Judgment by Consent, the Loan Documents, and applicable law or equity.

**SECTION 5.** Forbearance Period. The period commencing on the Effective Date and expiring on the earlier of: (a) the 9 Month Period (defined in Section 7) and, if applicable and exercised as set forth in

4

Section 7, the 3 Month Extension (defined in Section 7) (such period, the "<u>Maturity Date</u>") or (b) the occurrence of an Event of Default under Section 12(B) of this Agreement (the "<u>Forbearance Period</u>").

**SECTION 6.**   <u>Satisfaction of Obligations</u>. The Creditor covenants and agrees with the Loan Parties that, subject to the terms and conditions hereof, the Creditor will accept the Triangle Reduced Claim Amount or the Triangle Total Claim Amount, as applicable and only as set forth in Section 7, from the Loan Parties, or any other Person instructed by the Loan Parties, in full satisfaction of all the Obligations, except for the Surviving Obligations.

**SECTION 7.**   <u>Terms for Satisfaction of Obligations</u>. The Parties agree on the following terms and conditions to satisfy the Current Debt during the Forbearance Period.



(i)   **Triangle Total Claim.**  The Creditor shall have an allowed secured claim as part of the Bankruptcy Case and in the Judgment by Consent in the amount of $2,166,538.21. This includes all amounts due under the Proof of Claim, including accrued default interest through November 8, 2023, legal fees and any additional costs through August 30, 2023 (such amount, the "<u>Triangle Total Claim</u>").  The amounts of the Triangle Total Claim shall be updated as of the Effective Date.  The Triangle Total Claim shall accrue interest after the Effective Date at the rate of 11.50% *per annum* plus any additional legal fees and costs incurred until paid in full.  Accordingly, the Triangle Total Claim continues to accrue interest at the *per diem* rate of $692.09 until paid in full as set forth in this Agreement.

(ii)  **Consigned Funds**.  Within two business days after the Effective Date, as set forth in Section 7(vi), the Parties will file in the State Court Action the Joint Motion to Disburse to the Creditor the Consigned Funds. Once the Consigned Funds are received by the Creditor, the Consigned Funds will be applied to reduce the interest due under the Triangle Reduced Claim Amount (defined below) during the 9 Month Period (defined below).

(iii) **9 Month Period to Pay Triangle Reduced Claim Amount.** The Loan Parties shall have, during the Forbearance Period, a period of 9 months (the "<u>9 Month Period</u>"), starting on the Effective Date, to satisfy in full the Triangle Total Claim by paying to Creditor, by wire or other means acceptable to Creditor, the amount of $1,889,769.86 (the "<u>Triangle Reduced Claim Amount</u>"). The amounts detailed herein for the Triangle Reduced Claim Amount are calculated as of November 8, 2023, and shall accrue interest at the rate of 11.50% *per annum* until paid in full. Accordingly, the Triangle Reduced Claim Amount continues to accrue interest at the *per diem* rate of $603.68 until paid in full as set forth in this Agreement.

(iv)  **3 Month Extension to Pay Triangle Total Claim**.  If, at the end of the 9 Month Period, (i) the Loan Parties have not delivered to the Creditor the payment in full of the Triangle Reduced Claim and satisfied the other closing conditions set forth in Section 10, and, (ii) provided there are no other Events of Default under this Agreement, then the Loan Parties may extend the Forbearance Period for an additional 3 months to satisfy the Triangle Total Claim (such extension, the "<u>3 Month Extension</u>") by delivering to Creditor on or before the expiration of the 9 Month Period a payment equal to three months of interest, at 11.50% *per annum*, and the amounts due under the Triangle Total Claim.  For the avoidance of doubt, the Loan Parties have the 9 Month Period to pay the Triangle Reduced Claim and the 3 Month Extension, if exercised as set forth in this Agreement, to pay the Triangle Total Claim. Further, for the avoidance of doubt, if the Loan Parties exercise the 3 Month Extension as set forth in this Agreement, then the Forbearance Period would expire one year (365 days) after the Effective Date or upon the occurrence of an Event of Default, whichever occurs earlier.  Finally, if the Loan Parties do not exercise the 3 Month Extension as set forth in this Agreement, then the Forbearance Period shall expire at the end of the 9 Month Period or upon the occurrence of an Event of Default, whichever occurs earlier.

(v)   **Reports.** The Loan Parties shall provide to the Creditor copies of all offers or indications of interest received for any of the Mortgaged Properties within five (5) business days of receipt by any of the Loan Parties. The Loan Parties shall also provide to the Creditor a monthly report, beginning on the Effective Date and thereafter on or before the 1st day of each month during the Forbearance Period, detailing the permitting process and sale efforts and any progress, offers received or relevant information for such matters regarding the Mortgage Property.

(vi)   **Documents to Effectuate Transactions under this Agreement.** The Parties shall file the following documents to effectuate the transactions under this Agreement and shall cooperate and jointly defend and prosecute them to obtain their prompt approval.

    (a) <u>State Court Action</u>. The Parties shall file in the State Court Action, within two (2) business days after the Effective Date, the Judgment by Consent, the Joint Motion to Disburse Funds, the Joint Motion to Dismiss Appeal, and the Joint Motion to Issue Writ and Order and proposed order and writ. Upon the occurrence of an Event of Default under Section 12(B) of this Agreement, each of the Loan Parties hereby consents and agrees (and agrees to raise no objection to any such relief) that the Creditor may, in addition to exercising any of its other rights and remedies and in its sole discretion, proceed, without any further notice, to file in the State Court Action the Joint Motion to Substitute Party.

    (b) <u>Bankruptcy Court</u>. The Parties shall file in the Bankruptcy Court, within two business days after the Effective Date, the Joint 9019 Motion and proposed order. The Parties shall file in the Bankruptcy Court, within seven (7) business days after the order approving the Joint 9019 Motion is final and unappealable, the Joint Motion to Dismiss and the proposed order approving the same.

(vii)   **Insurance and Taxes.** The Borrower shall maintain insurance over the real estate, naming Creditor as a loss payee, and shall timely pay all real estate and other taxes regarding the Mortgage Properties when due and provide evidence of such payment to Creditor.

**SECTION 8.**  <u>Conditions Precedents</u>.

The obligations of the Creditor under this Agreement shall be subject to the following conditions precedent:



    (i)   <u>No Debt</u>. Loan Parties shall have delivered to the Creditor Certificates of No Debts issued by the Municipal Revenue Collection Center (by its acronym in Spanish "CRIM") and the Department of Treasury of Puerto Rico corresponding to the Mortgaged Properties.

    (ii)   <u>Execution of Documents</u>. The Loan Parties shall have delivered to the Creditor this Agreement, the Judgment by Consent, the Joint Motion to Disburse Funds, the Joint Motion to Dismiss Appeal, the Joint Motion to Issue Writ and Order and proposed order and writ, the Joint Motion to Substitute Party, the Joint 9019 Motion and proposed order, and the Joint Motion to Dismiss and proposed order, each duly executed by each of the Loan Parties and or approved for filing by each of the Loan Parties, as applicable, under the terms set forth in Section 7; and



    (iii)   <u>Entity Action</u>. The Creditor shall have received from the Loan Parties who are corporations, limited liability companies, partnerships or other legal entities copies, certified by a duly authorized officer  of the Loan Parties to be true, correct and complete as of the Effective Date, of the resolutions of the Board of Directors (or applicable board of management) of the Loan Parties, authorizing the execution, delivery and performance by the Loan Parties of this Agreement and each of the other documents to be executed in connection with the same. The Loan Parties who are corporations, limited

liability companies or any other legal entity registered in the Puerto Rico Department of State shall provide to the Creditor recent certificates of good standing.

SECTION 9.    Certain Agreements.    Once the Creditor has received confirmation that either the full amount of the Triangle Reduced Claim Amount during the 9 Month Period or the full amount of the Triangle Total Claim during the 3 Month Extension, if applicable, has been received via wire transfer to the account indicated by the Creditor or that the manager's check delivered at Closing to the Creditor for the full amounts due has cleared, and subject to satisfaction of the other conditions precedent to the Closing, the Creditor will notify the Loan Parties that the following documents are available for collection: (i) all promissory notes subscribed in respect of the Obligations under the Loan Documents, as more particularly described in **Exhibit A** attached hereto and made a part hereof, endorsed to maker without any recourse, warranty or representation, express, implied or by operation of law, of any kind or nature whatsoever; (ii) all mortgage notes described in **Exhibit A** attached hereto and made a part hereof, endorsed to maker without any recourse, warranty or representation, express, implied or by operation of law, of any kind or nature whatsoever; and (iii) the Guarantees.

SECTION 10.    Closing.    The Closing shall occur on the date, at the time and in the manner mutually agreed by the Parties, following the satisfaction or waiver of the conditions set forth in this Agreement (the "Closing Date"), provided, however, in all events and under all circumstances, the Closing Date shall occur during the Forbearance Period.    The following are the conditions to Closing:

(i) No Event of Default shall have occurred;

(ii) The full amount of the Triangle Reduced Claim Amount during the 9 Month Period or the full amount of the Triangle Total Claim during the 3 Month Extension, if applicable, shall have been remitted to the Creditor by wire transfer to the account indicated by the Creditor or by means of a manager's check that has cleared payable to the Creditor; and



(iii) The Creditor shall have delivered to the Loan Parties a notification including instructions on time and place for the Loan Parties to collect the documents set forth in Section 9 of this Agreement; and

SECTION 11.    Loan Parties' Representations and Warranties.    The Loan Parties hereby represent and warrant to the Creditor the following:



(i) Each of the Loan Parties is authorized to enter into, and perform its obligations under, this Agreement, including, but not limited to, the releases set forth in Section 19 of this Agreement and the indemnifications set forth in Section 20 of this Agreement, the agreement to pay the Triangle Reduced Claim Amount or the Triangle Total Claim, as applicable, and the required deliveries at Closing, and, to the extent required for such authorization, each of the Loan Parties has sought and received any and all necessary consents or other approvals, including, but not limited to, all necessary corporate approvals and any necessary approvals of any Governmental Authority.

(ii) The Loan Parties, as applicable, are entities duly organized, validly existing and in good standing under the laws of the Commonwealth of Puerto Rico, and have all necessary power and authority to own their properties, to conduct their businesses as presently conducted and as proposed to be conducted and to enter into and perform their obligations under this Agreement.

(iii) The execution, delivery and performance by the Loan Parties of this Agreement, and the consummation of the transactions contemplated hereby, have been duly authorized by all necessary or required legal action, and do not violate, conflict with or result in any breach or contravention of any provision of law, statute, rule or regulation to which any of the Loan Parties is subject, or any judgment,

order, writ, injunction, license or permit applicable to any of the Loan Parties or any agreement or other instrument binding upon any of the Loan Parties, or affecting their property, including, but not limited to, the Collateral.

(iv) This Agreement has been duly executed and delivered by each of the Loan Parties and constitutes a legal, valid and binding obligation of each of the Loan Parties, enforceable in accordance with its respective terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or other laws relating to, or affecting generally, the enforcement of creditors' rights, or by general principles of equity.

(v) The execution, delivery and performance by the Loan Parties of this Agreement, and the consummation of the transactions contemplated hereby, do not require any approval or consent of, or filing with, any Governmental Authority, other than those already obtained or made.

(vi) There are no actions, suits, proceedings or investigations of any kind pending or threatened against any of the Loan Parties before any court, tribunal or Governmental Authority, which, if adversely determined, would, in any case, question or impair, in any way, the validity of this Agreement or any action taken or to be taken pursuant hereto.

(vii) No representation or warranty made by any of the Loan Parties to the Creditor in this Agreement, or in any agreement, instrument, document, certificate, statement or letter furnished to the Creditor, or to its legal and financial counsels or advisors, by or on behalf of any of the Loan Parties, and no other information previously furnished in writing by any of the Loan Parties to the Creditor, or said counsels or advisors, contains any statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein, in light of the circumstances in which they were made, not misleading.

(viii) None of the Loan Parties has any defenses, offsets, claims or counterclaims of any nature, whether liquidated or unliquidated, now or hereafter existing, matured or unmatured, direct or indirect, against the Creditor or the Creditor Released Parties, directly or indirectly related to the Obligations or the Loan Documents, and any and all such defenses, offsets, claims and counterclaims are hereby expressly and forever waived and released by each Loan Parties.



**SECTION 12**.  Judgment by Consent and Events of Default



(A)      Judgment by Consent.  Concurrently with the execution of this Agreement, each of the Loan Parties shall execute the Judgment by Consent and the Joint Motion for Writ and Order and shall file and request approval of the same as set forth in Section 7. The Creditor shall, however, forbear from foreclosing upon the Judgment by Consent and the order and writ of foreclosure until such time and unless an Event of Default has occurred.

(B)      Events of Default.  If any of the following events (each, an "Event of Default") occurs and is continuing for any reason (and whether such occurrence is voluntary or involuntary or comes about or is effected by operation of law or otherwise), then (i) the forbearance provided for under this Agreement shall immediately and automatically expire as provided in Section 5 hereof, (ii) all of Loan Parties' obligations to Creditor under the Loan Documents shall be immediately due and payable in full, and (iii) Creditor may immediately and without further notice proceed to exercise any and all rights and remedies available to the Creditor under this Agreement, the Judgment by Consent, the order and writ of foreclosure, the Collateral and the other Loan Documents and under any applicable law or in equity:

(i)      If any of the Loan Parties defaults in the due observance, compliance or performance of any covenant or condition to be observed by any of them under this Agreement or under any of the Loan Documents; or

(ii)     If the Loan Parties fail to pay the Triangle Reduced Claim Amount during the 9 Month Period and fail to exercise the 3 Month Extension as and when required by Section 7 of this Agreement; or

(iii)    If the Loan Parties fail to pay the Triangle Total Claim on or before the expiration of the 3 Month Extension during the Forbearance Period; or

(iv)     If the Judgment by Consent, the Joint Motion to Disburse Funds, the Joint Motion to Dismiss Appeal, the Joint Motion to Issue Writ and Order and proposed writ and order, the Joint 9019 Motion and proposed order, and the Joint Motion to Dismiss and proposed order are not executed or filed under the terms and timelines set forth in Section 7.

(v)      If the State Court enters an order denying the approval of the Judgment by Consent, the Joint Motion to Disburse Funds, the Joint Motion to Dismiss Appeal, or the Joint Motion to Issue Writ and Order.

(vi)     If the Bankruptcy Court denies the approval of the Joint 9019 Motion or the Joint Motion to Dismiss.

(vii)    If any representation or warranty made herein by any of the Loan Parties that shall be false or misleading in any material respect at any time following the Effective Date; or

(viii)   If a default occurs under the Loan Documents or any other contract or arrangement between Creditor and/or any of the Loan Parties; or



(ix)     If there occurs any change in any applicable laws and/or regulation or in the circumstances of any of the Loan Parties that in the sole opinion of Creditor, may affect the ability of any of the Loan Parties to comply with the provisions of this Agreement; or

(x)      If any of the Loan Parties shall make an assignment for the benefit of creditors, or shall admit in writing its inability to pay or generally shall fail to pay its debts as they mature or become due, or if any of its assets shall be attached, seized, levied upon or subjected to a writ or distress warrant, or if any of the Loan Parties shall petition or apply for the appointment of a trustee or other custodian, liquidator or receiver for any of them or of any substantial part of their assets or shall commence any case or other proceedings under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation or similar law of any jurisdiction, now or hereafter in effect, or shall take any action to authorize or in furtherance of any of the foregoing; or



(xi)     If any Insolvency Proceeding (as defined in Section 16 below) is commenced by or against any of the Loan Parties; or

(xii)    If at any time any of the Loan Parties shall be prohibited by law from engaging in their respective businesses; or

(xiii)   If any event shall have occurred to any of the Loan Parties, which would have a Material Adverse Effect (which event would not also constitute an Event of Default under any of the preceding paragraphs or elsewhere in this Agreement); provided that the term "Material Adverse Effect" shall mean any adverse effect on (a) the business, assets, operations, prospects or financial condition of any of the Loan

Parties; (b) the ability of any of the Loan Parties to pay their obligations in accordance with the terms of the Loan Documents and/or this Agreement; and/or (c) the validity or the perfection of the Collateral and security interests established by the Loan Documents; or

Notwithstanding anything herein to the contrary, the occurrence of an Event of Default hereunder, shall cause the accrual and payment of interest on all outstanding amounts owed to the Creditor at an interest rate of five percentage points (5.00) above the stipulated rate in this Agreement, i.e. a total of 16.5% per annum.

**SECTION 13.** <u>Foreclosure of Judgment by Consent</u>. Upon the occurrence of an Event of Default under Section 12(B) of this Agreement, each of the Loan Parties hereby consents and agrees (and agrees to raise no objection to any such relief) that the Creditor may, in addition to exercising any of its other rights and remedies and in its sole discretion, proceed, without any further notice, to file in the State Court Action the Joint Motion to Substitute Party and/or to execute upon the Judgment by Consent and/or the order and writ of foreclosure and foreclose on the Collateral (such process, the "<u>Foreclosure Process</u>") pursuant to the terms and conditions described therein (such date when title to the Collateral passes to the Creditor or its designee through the Foreclosure Process, the "<u>Transfer of Title</u>"). Subject to the Accord and Satisfaction Conditions in the following sentence of this section, upon the completion of the Transfer of Title to the Creditor or its designee, such Transfer of Title shall be in full accord and satisfaction of all Obligations under the Loan Documents and the Creditor shall have no further recourse on account of the Obligations against the Loan Parties, and the Loan Parties shall be released from the Obligations under the Loan Documents. This is subject to and expressly conditioned on: (a) excluding, solely, Events of Default pursuant to Sections 12(B)(ii) or (iii) of this Agreement (<u>e.g.</u>, the failure to pay the Triangle Reduced Claim or the Triangle Total Claim pursuant to the terms of this Agreement), no additional Event of Default occurs or is continuing after the commencement of the Foreclosure Process which may interfere with the Foreclosure Process; (b) none of the Loan Parties commencing an Insolvency Proceeding prior to the Transfer of Title; and (c) the Loan Parties consenting, not objecting, and otherwise acquiescing to the Foreclosure Process and the Transfer of Title (collectively, the "<u>Accord and Satisfaction Conditions</u>"). If any of the Loan Parties fails to comply with the Accord and Satisfaction Conditions, the Creditor shall have the right to exercise all remedies against the Loan Parties at law, equity, under this Agreement, the Consent Judgment, or the Loan Documents.



**SECTION 14**. <u>Acknowledgement of Obligations and Default</u>.

Each of the Loan Parties, jointly and severally among themselves ("solidariamente"), acknowledges, represents, covenants, and agrees with the Creditor that (i) the Loan Parties have defaulted (the "<u>Acknowledged Defaults</u>") under the Loan Documents by, among other things, failing to pay the outstanding Obligations and Loan when due under such Loan Documents; (ii) that the occurrence of the Acknowledged Defaults gives the Creditor the right to, among other things, accelerate payment of, and collect on, all amounts under the Loan and to foreclose on the Collateral; (iii) the Loan Parties' obligation to pay in full the Obligations, is valid, binding and enforceable in all respects; and (iv) the Loan Parties' Obligations to the Creditor are absolute and unconditional, and there exists no right of setoff or recoupment, claim, counterclaim or defense, either in law or in equity, of any nature whatsoever to payment or performance of any such Obligations, all of which are hereby expressly and forever waived and released. Each of the Loan Parties further acknowledges and affirms that the Creditor has faithfully, and in good faith, performed and discharged all of the Creditor's obligations under the Loan Documents.



**SECTION 15.** <u>Loan Parties' Consent</u>. Each of the Loan Parties hereby: (i) consents to the transaction contemplated herein and acknowledges, reaffirms, and ratifies all security interests granted and

liens constituted or purported to be granted or constituted pursuant to the Loan Documents as Collateral for the payment and performance of all of the Loan Parties' Obligations and their first priority rank; (ii) acknowledges and agrees that the Loan Documents (and all security therefor) are, and shall continue to remain, in full force and effect after giving effect to this Agreement; (iii) ratifies the Loan Documents; and (iv) agrees and expressly and irrevocably waives any and all rights to subrogation for payments made to the Creditor hereunder or under the Loan Documents, if any. The Loan Parties hereby expressly agree that the Creditor shall not have any duty to exhaust any guaranty or collateral before seeking enforcement, foreclosure or collection of any other Collateral.

**SECTION 16.** <u>Consent to Relief from Automatic Stay.</u> As a material inducement for the Creditor to enter into this Agreement, in recognition of the risks associated with the Creditor's execution and performance of this Agreement, and in consideration of the recitals and mutual covenants contained herein, and for other good and valuable consideration, including the agreement of the Creditor to forbear from the exercise of its rights and remedies as a result of the Acknowledged Defaults, the receipt and sufficiency of which are hereby acknowledged, each of the Loan Parties hereby agrees and consents that if any Debtor shall (1) file or be the subject of any petition under Title 11 of the U.S. Code, as the same may be amended from time to time (the "<u>Bankruptcy Code</u>"), (2) be the subject of any order for relief issued under the Bankruptcy Code, (3) file or be the subject of any voluntary or involuntary petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors (individually, an "<u>Insolvency Proceeding</u>" and, collectively, "<u>Insolvency Proceedings</u>"), (4) seek, consent to or acquiesce in the appointment of any trustee, receiver, conservator or liquidator, or (5) be the subject of any order, judgment or decree entered by any court of competent jurisdiction approving a petition filed against any of the Loan Parties or related party in any Insolvency Proceeding, then the Creditor shall thereupon be entitled to relief from any automatic stay imposed by §362 of the Bankruptcy Code, or from any other stay or suspension of remedies imposed in any other manner with respect to the exercise of the rights and remedies otherwise available to the Creditor under the Loan Documents, and as otherwise provided by law, and each of the Loan Parties hereby expressly and unconditionally waives the benefit of such automatic stay and consents and agrees to raise no objection to such relief.



**SECTION 17.** <u>Bar to Commence Insolvency Proceeding.</u> As a material inducement for the Creditor to enter into this Agreement, in recognition of the risks associated with the Creditor's execution and performance of this Agreement, and in consideration of the recitals and mutual covenants contained herein, and for other good and valuable consideration, including the agreement of the Creditor to forbear from the exercise of its rights and remedies, the receipt and sufficiency of which are hereby acknowledged, each of the Loan Parties hereby agrees, affirms, acknowledges, and consents to request the entry of a final order from the Bankruptcy Court, upon approval of each of the Joint 9019 Motion and Joint Motion to Dismiss, that includes a bar to file or commence an Insolvency Proceeding for three years after the date of entry of an order dismissing the Bankruptcy Case.



**SECTION 18.** <u>No Waiver by the Creditor.</u>  Neither a failure nor a delay on the part of the Creditor to exercise any right, power, or privilege hereunder or under any of the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder or under any of the Loan Documents preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.  No notice to or demand upon any Debtor shall be deemed to be a waiver of the obligations of any Debtor or of the right of the Creditor to take further action without notice or demand.

**SECTION 19.** <u>Releases.</u> Effective upon the Execution Date, each of the Loan Parties, on behalf of themselves and on behalf of, and intending to legally bind their respective parents, subsidiaries, affiliates, employees, officers, directors, agents, representatives, shareholders, successors, heirs and assigns

(collectively, the "Releasing Loan Parties") hereby irrevocably and unconditionally releases and forever discharges Creditor, Capital Crossing Puerto Rico, LLC, the Original Creditor and each and all of their subsidiaries, parents, and affiliates, and each of their respective employees, agents, representatives, consultants, attorneys, fiduciaries, servants, officers, directors, partners, servicers, predecessors, successors and assigns, and all persons acting by, through, under or in concert with any of the aforesaid persons or entities (collectively, the "Creditor Released Parties"), from any and all actions and causes of action, judgments, executions, suits, debts, claims, demands, liabilities, obligations, damages and expenses of any and every character, known or unknown, direct and/or indirect, at law or in equity, of whatsoever kind or nature, whether heretofore or hereafter arising prior to and including the date of execution hereof, and in any way directly or indirectly arising out of or in any way connected to the Loan, the Mortgaged Property, this Agreement and/or the Loan Documents, including, without limitation, claims relating to any settlement negotiations and any theory of lender liability or the like (collectively, the "Creditor Released Matters").

In furtherance of the foregoing release, the Releasing Loan Parties covenant and agree never to institute or cause to be instituted, or continue prosecution of, or assist, any suit or other action or proceeding of any kind or nature against any of the Creditor Released Parties, by reason of, or in connection with, any of the Creditor Released Matters.

Effective upon the Closing Date, and subject to the non-occurrence of any Release Termination Events, the Creditor hereby releases and forever discharges the Loan Parties from and against any and all causes of action, suits, debts, Liens, obligations, liabilities, claims, demands, damages, judgments, losses, orders, penalties, costs and expenses, of any kind or character, including, but not limited to, attorneys', professional or para-professional fees, of any kind or nature whatsoever, known or unknown, direct or indirect, suspected or unsuspected, fixed or contingent, liquidated or unliquidated, arising at law or in equity, of whatsoever kind or nature, which the Creditor has, owns, holds or claims to have, own or hold, or at any time heretofore has had, owned, held or claimed to have had, owned or held, against any of the Loan Parties, arising from, based upon or related to, whether directly or indirectly: (i) the Obligations and the transactions relating thereto; (ii) the Loan Documents; (iii) any and all other agreements, documents or instruments referenced herein, in any Loan Document, or related hereto or thereto; or (iv) any default under any of the Loan Documents (collectively, the "Obligor Released Matters"); provided, however, that the Loan Parties shall not be released from the Surviving Obligations.



In addition, this Section 19 and the conditional release granted by the Creditor hereunder shall have no force or effect, and all of the Obligations of the Loan Parties under the Loan Documents shall continue to be effective and be automatically reinstated and/or reinstituted against the Loan Parties, without any action on the part of the Creditor, all as if the release granted pursuant to this Agreement and this Section had not been made: (A) if any Loan Party files a voluntary petition under the United States Bankruptcy Code within ninety-one (91) days of the Closing Date; or (B) in the event any suit or other proceeding is instituted or filed by or on behalf of any Loan Party, or any creditor of any Loan Party, that seeks to avoid or invalidate any of the transactions contemplated hereby, including any suit or other proceeding that seeks a determination that any portion of the any payment made under the Agreement is a "preferential transfer", "voidable preference", "fraudulent conveyance" or "fraudulent transfer" or other "avoidance" action of any type with respect to any such payment. In such event, each Loan Party stipulates and agrees that, to the extent that any payment or any part thereof is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, receiver or any other party under any debtor relief proceedings or equitable cause, then, to the extent of such payment received, the Obligations intended to be satisfied through this Agreement shall be revived and continue to be in full force and effect, as if such payment or proceeds had not been received by the Creditor, and all rights, Liens, and remedies available to the Creditor under the Loan Documents, this Agreement, at law or in equity with respect to the Loan Parties, including any rights with respect to the Collateral, shall be automatically reinstated and continue to be in full force and effect.

12

The provisions of this Section 19 shall survive the Closing Date.

**SECTION 20**. Indemnity and Hold Harmless. As a material inducement for the Creditor to enter into this Agreement, in recognition of the risks associated with the Creditor's execution and performance of this Agreement, and in consideration of the recitals and mutual covenants contained herein, and for other good and valuable consideration, including the agreement of the Creditor to forbear from the exercise of its rights and remedies, the receipt and sufficiency of which are hereby acknowledged, each of the Loan Parties hereby agrees to, jointly and severally, defend, indemnify, and release from any and all liability the Creditor and each of the other Released Parties from any claim, damage, judgment, penalty, fee, expense (including the attorney fees, costs and expenses incurred by the Creditor and/or any Released Party in enforcing their respective rights under this Section of the Agreement) that arise, directly or indirectly, from the Loan, the Loan Documents, the Collateral, the Mortgaged Properties, or a breach by any of the Loan Parties of any of their representations, warranties, covenants and obligations under the Loan Documents or this Agreement.

The Loan Parties hereby further agree to defend, indemnify and hold harmless each of the Released Parties from and against all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by any of the Released Parties by reason of, or resulting from, the filing by any of the Loan Parties of an Insolvency Proceeding.

**SECTION 21**. Cooperation. Unless the Creditor otherwise consents in writing, each of the Loan Parties agrees that it will execute, at its sole cost and expense, such other and further documents and instruments as the Creditor may request to implement any of the provisions of this Agreement and to perfect and protect the liens and security interests created by any of the Loan Documents.



**SECTION 22**. Covenants. Each of the Loan Parties hereby agrees and covenants that none of the Loan Parties shall: (a) fail to perform and/or breach any covenant, representation and/or warranty contained in this Agreement and/or the Loan Documents; (b) except for a sale to pay in full the Triangle Reduced Claim Amount or Triangle Total Claim as contemplated herein, sell, transfer or convey of any of the Mortgaged Properties or Collateral; (c) lease or assign any right or property interests in any of the Mortgaged Properties; (d) allow the creation or perfection of any lien or encumbrances on any of the Mortgaged Properties; and (e) engage (or allow any entity or person to engage) in any acts or conduct that may deteriorate or diminish the value of any of the Mortgaged Properties.

**SECTION 23**. Solvency. Each of the Loan Parties hereby represents, covenants and agrees that: (a) each of the Loan Parties is receiving at least 'reasonably equivalent value for each of the transfers and/or transactions contemplated under this Agreement; (b) each of the Loan Parties is solvent as of the Effective Date; and (c) each of the Loan Parties will continue to be solvent after each and every one of the transfers and/or transactions contemplated under this Agreement.

**SECTION 24**. No Novation. It is hereby understood and agreed by each of the Parties hereto that this Agreement is not intended to constitute an extinctive novation ("novación extintiva") of the obligations and undertakings of the Parties under any of the Loan Documents, as amended to date, including the amendments herein made. Each of the Loan Parties hereby ratifies, reaffirms, confirms, consents to and acknowledges all of the terms of the Loan Documents, except as amended in this Agreement, and all the terms, priority and conditions of, security interest, mortgages or liens over the Collateral provided for in the Loan Documents and the Loan Parties' obligations under such documents.

SECTION 25. <u>Benefit of the Agreement</u>.  This Agreement shall be binding upon and inure to the benefit of and be enforceable by the Parties thereto, their respective successors and assigns.  No other person or entity shall be entitled to claim any right or benefit hereunder, including, without limitation, the status of a third-party beneficiary of this Agreement or the other Loan Documents.

SECTION 26. <u>Integration</u>.  This Agreement, together with the Loan Documents and the Judgment by Consent, constitutes the entire agreement and understanding among the Parties relating to the subject matter hereof, and supersedes all prior proposals, negotiations, agreements and understandings relating to such subject matter.  In entering into this Agreement, each Debtor acknowledges that it is relying on no statement, representation, warranty, covenant or agreement of any kind made by the Creditor or any employee or agent of the Creditor other than those specifically contained herein.  This Agreement is an integral part of and an amendment to (as and only to the extent explicitly stated herein) the Loan Documents.

SECTION 27. <u>Amendment</u>.  No amendment, modification, rescission, waiver or release of any provision of this Agreement shall be effective unless the same shall be in writing and signed by the parties hereto.

SECTION 28. <u>Time is of the Essence</u>.  The Loan Parties agree that time is of the essence in each provision hereof.

SECTION 29. <u>Severability</u>.  The invalidity of any one or more phrases, sentences, clauses or sections contained in this Agreement shall not affect the remaining portions of this Agreement or any part thereof.  Such provision shall be deemed severed and of no effect and the remainder of the Agreement shall remain operative and in full effect.





SECTION 30. <u>Governing Law and Retention of Jurisdiction</u>.  This Agreement shall be governed by and constructed in accordance with the laws of the Commonwealth of Puerto Rico.  The Bankruptcy Court shall retain jurisdiction to interpret and/or enforce the terms of this Agreement.  The State Court shall retain jurisdiction to interpret and/or enforce the terms of the Judgment by Consent.

SECTION 31. <u>Relationship of Parties</u>.  Nothing in this Agreement or in any of the Loan Documents, expressed or implied, is intended to or shall constitute the Parties hereto as partners or participants in a joint venture.  Further, each of the Loan Parties hereby acknowledges and stipulates that the Creditor is not a: (i) director of any of the Loan Parties; (ii) officer of any of the Loan Parties; (iii) person in control of any of the Loan Parties; (iv) partnership in which any of the Loan Parties is a general partner; (v) general partner of any of the Loan Parties; or (vi) relative of a general partner, director, officer, or person in control of any of the Loan Parties.

SECTION 32. <u>Construction / Negotiation</u>.  The Loan Parties state that they have received legal, accounting, and financial advice as to all the subjects contained in this Agreement and that they have consulted with counsel.  The Loan Parties further state that this Agreement is the product of negotiation, and that it has been drafted jointly by all the Parties.  Consequently, this Agreement shall be interpreted without regard to any presumption or rule requiring construction against the party causing this Agreement

to be drafted.  Finally, the Loan Parties represent that they have executed this document freely, voluntarily, and without any coercion or intimidation whatsoever.

**SECTION 33.**  Counterparts. This Agreement may be executed by each Party on a separate counterpart, each of which, when so executed and delivered, shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument. In proving this Agreement, it shall not be necessary to produce or account for more than one such counterpart signed by the Party against whom enforcement is sought. In addition, the Parties may execute this document and evidence such execution by either PDF or facsimile, and each shall be binding and enforceable on such Parties.

**SECTION 34.**  Good and Adequate Consideration. Each of the Parties hereby acknowledges and agrees that it has received good and adequate consideration for entering into this Agreement.

**SECTION 35.**  Notices. Any notice, request, demand or other instrument authorized or required to be given or furnished under this Agreement shall be made in writing and shall be given as set forth in the Loan Documents to the following addresses:

If to the Loan Parties:

> Azure Development Inc.
> P.O. Box 191937
> San Juan, PR 00919

> Attention: Alfonso Valdés García

> E-mail:    avaldes1210@gmail.com



If to the Creditor:

> Triangle Cayman Asset Company
> c/o Capital Crossing Puerto Rico, LLC
> 221 Ponce de León Avenue
> 12th Floor, Suite 1204
> San Juan, Puerto Rico 00917
> Attention: Mr. Denis B. Stratford

E-mail: denis.stratford@capitalcrossing.com



**SECTION 36.**  Voluntary Agreement. The Loan Parties hereby acknowledge that they are or have had the opportunity to be represented by legal counsel of their choice, are fully aware of the terms contained in this Agreement and have voluntarily and without coercion or duress of any kind entered into this Agreement and the documents executed in connection with this Agreement. The Loan Parties further acknowledge and represent that they are fluent in English, and have understood the totality of the contents, provisions and covenants of this Agreement.

*[signature page follows]*

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their respective officers hereunto duly authorized in San Juan, Puerto Rico, this 21 day of November, 2023.

Triangle Cayman Asset Company
(Creditor)

By:
Name: José A. Díaz Brugueras
Title:  Authorized Representative

Azure Development, Inc.
(Borrower)

By:
Name: Alfonso Valdés
Title:  Authorized Representative

Cost Control Company, Inc.
(Guarantor)
By:
Name: Alfonso Valdés
Title:  Authorized Representative

Fideicomiso Valdés-Acevedo
(Guarantor)
By:
Name:
Title:  Authorized Representative

Alfonso Valdés García
(Guarantor)

16

Affidavit Number: 63

       Subscribed before me by (i) Alfonso Valdés García, of legal age, single, business executive and resident of Guaynabo, Puerto Rico, in his personal capacity, and in his capacity as Authorized Representative of Azure Development, Inc.; and Cost Control Company, Inc., whom I do not know personally and identify by means of his driver's license, number 330645 , issued by the Commonwealth of Puerto Rico, in accordance with article 17 (c) of the Notary Act of Puerto Rico. In San Juan, Puerto Rico, this 22nd day of November, 2023.



_____
Notary Public

Affidavit Number: 65

Subscribed before me by (i) Jaime I. Del Valle, of legal age, married, business executive and resident of San Juan, Puerto Rico, in his capacity as Trustee of Fideicomiso Valdés-Acevedo, who I do not personally know and identify by means of his passport card, number C27631007 issued by the United Stated Department of State, in accordance with article 17 (c) of the Notary Act of Puerto Rico . In San Juan, Puerto Rico, this 27th day of November, 2023.



Notary Public

Affidavit Number: - 661 -

Subscribed before me by José A. Díaz Brugueras, of legal age, married, attorney at law and resident San Juan, Puerto Rico, as Authorized Signatory of Triangle Cayman Asset Company, who is personally known to me.  In San Juan, Puerto Rico on this 21st day of November, 2023.



_____
NOTARY PUBLIC

# EXHIBIT A

## LOAN DOCUMENTS

I.     Loan Agreement and Promissory Note

1.   Loan Agreement dated November 21, 2003, executed by and between Azure Development Inc., (hereinafter, the "Borrower") and Banco Bilbao Vizcaya Argentaría Puerto Rico (hereinafter, "Original Creditor") in the principal amount of $1,725,000.00, authenticated under affidavit number 1,855 of Notary Public Miguel Agustín Blanco Fuertes (hereinafter, the "Loan Agreement").

2.   Promissory Note dated November 21, 2003, subscribed by the Borrower in favor of Original Creditor in the amount of $1,750,000.00, authenticated under affidavit number 67,618 of Notary Public Ernesto González Piñero.

II.    Mortgage Notes and Deeds of Mortgage

3.   Mortgage promissory note executed by Borrower payable to Original Creditor or to its order and due on demand, in the principal sum of $1,750,000.00 executed on November 21, 2003, authenticated as per affidavit number 67,618, before Notary Public Ernesto González Piñero  and secured by Deed of First Mortgage Number 132 of even date and before the same Notary Public, as thereafter enlarged to $1,750,000.00, by means of Deed Number One Hundred Thirty Two (132) executed on November 21, 2003, before the same Notary (the "Mortgage Note").

The Puerto Rico mortgaged properties are described in the Spanish language, in the Registry of the Property of Fajardo, as follows (the "Mortgaged Properties"):

### PROPERTY 4,969

---RÚSTICA: Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de doce cuerdas con setecientas catorce milésimas de otra (12.714 cuerdas.), equivalentes a cuarenta y nueve mil novecientos setenta metros cuadrados con seiscientas ochenta y una milésimas de otro (49,970.681 m), en lindes por el **NORTE**, en catorce (14) alineaciones que totalizan cuatrocientos sesenta y cinco metros con setecientas veinticinco milésimas de otro (465.725 m), con la zona marítimo terrestre que la separa del Océano Atlántico; por el **SUR**, en una alineación de nueve metros con trescientas ochenta y tres milésimas de otro (9.383 m), con el Carlo Embarcadero, en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientas cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en otras cinco (5) alineaciones que totalizan cien metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en otras tres (3) alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en una alineación de dieciséis metros con cuatrocientas sesenta milésimas de otro (16.460 m), con terrenos de la Familia Pirallo y en una alineación de ciento cuarenta y seis metros con novecientos cincuenta y seis milésimas de otro (146.956 m), con Half Moon Development Corp.; por el **ESTE**, en dos (2) alineaciones que totalizan cincuenta y tres metros con, quinientas noventa y nueve milésimas de otro (53.599 m), con la zona marítimo terrestre que la separa del Océano Atlántico y en una alineación de dieciséis metros con doscientas treinta y una milésimas de otro (16.231 m), con terrenos de la Familia Pirallo; y por el **OESTE**, en dos (2) alineaciones que totalizan treinta metros con ciento una milésimas de otro (30.101 m), con la desembocadura del Carlo Embarcadero que



la separa del Océano Atlántico, en una alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con terrenos de la Familia Pirallo y en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705 m) con terrenos de la Familia Pirallo.-----------------------------------------------------------------------------------------------------

Property number 4,969 is recorded at page 220 of volume 92 of Luquillo, Registry of the Property of Fajardo ("Property 4,969").

### PROPERTY 5,722

---RÚSTICA: Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de cinco cuerdas con setecientas ochenta y dos milésimas de otra (5.782 cuerdas), equivalentes a veintidós mil setecientas veintiséis metros cuadrados con seiscientos noventa y siete milésimas de otro (22,726.697 mc), en lindes por el **NORTE**, en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientos cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en cinco alineaciones que totalizan den metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en tres alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en cuatro alineaciones que totalizan sesenta y cinco metros con quinientos treinta y seis milésimas de otro (65.536 m), con la Parcela C dedicada a use público y en una alineación de nueve metros con ochocientas sesenta y seis milésimas de otro (9.866 m), con la extensión de la Calle D existente; por el **SUR**, en cinco (5) alineaciones que totalizan doscientos noventa y un metros con cuarenta y siete milésimas de otro (291.047 m), con Sucesión Biascoechea y en seis alineaciones' que totalizan doscientos veinticuatro metros con seiscientas setenta y tres milésimas de otro (224.673 m), con el Carlo Embarcadero; por el **ESTE**, en una alineación de sesenta y nueve metros con novecientas veintisiete milésimas de otro (69.927 m), con la extensión de la Calle D existente, en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705), con terrenos de la Familia Pirallo, y en otra alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con dichos terrenos de la Familia Pirallo; y por el **OESTE**, en una alineación de nueve metros con novecientas diez milésimas de otro (9.910 m), con el Carlo Embarcadero que la separa del Océano Atlántico.---

Property number 5,722 is recorded at page 155 of volume 106 of Luquillo, Registry of the Property of Fajardo ("Property 5,722").



III.    Guaranties and Security Agreements

4.   To further secure and guarantee the due payment and performance of all of the Borrower's obligations under the Borrower's Loan Documents, on November 20, 2003, Mr. Alfonso Valdés García ("Guarantor I"), executed a Guaranty and Agreement, authenticated under affidavit number 1,851 of Notary Public Miguel Agustín Blanco Fuertes (the "Guaranty Agreement I"). Through the Guaranty Agreement I, Guarantor I unconditionally agreed to jointly and severally with Borrower guarantee the due performance and payment of all of the Borrower's obligations under the Borrower's Loan Documents.

5.   Furthermore, on January 16, 2014, Cost Control Company, Inc. ("Guarantor II") and Fideicomiso Valdés- Acevedo ("Guarantor III" and together with Guarantor II and Guarantor I, the "Guarantors"), executed a second Guaranty and Agreement authenticated under affidavits number 3,246 and 3,250 of Notary Public Pedro A. Cantero Frau (the "Guaranty Agreement II" and together with the Guaranty I, the "Guaranty Agreements"), wherein Guarantor II and Guarantor III agreed to jointly and severally with Borrower guarantee the due performance and payment of all of the Borrower's obligations under the Borrower's Loans Documents.

**EXHIBIT B-1**

(Joint 9019 Motion)


(see attached)

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: | Case No. 23-00462 (ESL) |
| AZURE DEVELOPMENT, INC. | Chapter 11 |
| Debtor. | |

**JOINT MOTION FOR THE APPROVAL OF**
**SETTLEMENT AND RELEASE AGREEMENT**
*(Docket References: 29, 43, 44, 45, 59, 60, 81, 97)*

TO THE HONORABLE ENRIQUE S. LAMOUTTE
UNITED STATES BANKRUPTCY JUDGE:

**COME NOW** Triangle Cayman Asset Company ("Triangle"), and Azure Development Inc.("Debtor") and jointly with Triangle, the "Parties"), through their respective undersigned counsel, and submit this *Joint Motion for the Approval* of that certain *Forbearance, Discounted Payoff and Settlement and Release Agreement* (the "Settlement Agreement") pursuant to Fed. R. Bankr. P. 9019 (the "9019 Motion"), respectfully requesting that the Court enter an order, similar in form and substance to the one proposed herein as **Exhibit A** (the "9019 Order"), approving the Settlement Agreement in its entirety, and this 9019 Motion. In support of the 9019 Motion, the Parties hereby state and request as follows:

**PRELIMINARY STATEMENT[1]**



For over eight (8) years in state court , Debtor and Triangle have been vigorously litigating Triangle's claims, which stem from a loan agreement executed by Debtor over twenty (20) years ago. The impasse between Debtor and Triangle ensued during five and a half months since the

---

[1] The Parties include, throughout this 9019 Motion, a summary of the terms, conditions, and obligations under the Settlement Agreement. The summaries and descriptions of the Settlement Agreement made in this 9019 Motion are intended solely as a summary of the Settlement Agreement; the Settlement Agreement sets forth the obligations and agreements reached by the Parties and, accordingly, in the event of any inconsistency between the 9019 Motion and the Settlement Agreement, the Settlement Agreement shall govern.

filing of the captioned case, as evidenced by the pending motion to dismiss the case, a motion for relief for relief from stay, Debtor's answers thereto and Triangle's objection to the approval of Debtor's Disclosure Statement, among others.

Nonetheless, Debtor and Triangle made substantial progress and have reached and executed the Settlement Agreement which finally resolves all pending controversies between them and related parties. The Parties agree that this bankruptcy case is a two-party dispute, thus the main benefit to the estate is that the Settlement Agreement resolves the same, all pending contested matters, Case Number NSCI 2015-00410 and all pending matters therein or related thereto ("State Court Case"). The Settlement Agreement establishes Triangle's claim and provides a nine-month period for Debtor to satisfy such claim, at a discount, from the proceeds of a sale or the refinancing of the Real Estate Collateral (defined below) and for an extension of three (3) months thereafter for Debtor to satisfy Triangle's claim in full. If Debtor complies with the terms of the Settlement Agreement and satisfies Triangle's claim, Debtor expects to generate funds from the sale or refinancing of the Real Estate Collateral that it may use to, *inter alia*, satisfy other claims. If Debtor fails to comply with the terms of the Settlement Agreement, Triangle may then foreclose on Debtor's Real Estate through a consent judgment in the State Court Case as provided herein and collect on its claim. Finally, to effectuate the aforesaid, the Parties have agreed to request for the Court to approve this Settlement, and, upon said approval becoming final and unappealable, they will request that the Court dismiss the captioned case, with a bar to refile for three years.

For the above reasons, and those detailed below, the Parties submit, as Exhibit 1 to this 9019 Motion, the Settlement Agreement reached by them, and respectfully request that the Court enter an order granting this 9019 Motion and approving the Settlement Agreement.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this 9019 Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the scope of 28 U.S.C. § 157(b)(2).

2.      Venue of this proceeding and of the 9019 Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory basis for the relief requested herein are Sections 105(a), 1107 and 1108 of Title 11 of the United States Code (the "Bankruptcy Code"), and Fed. R. Bank. P. 9019.

## BACKGROUND

4.      On February 17, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, under Case No. 23-00462 (ESL-11) (the "Bankruptcy Case"). See Docket No. 1.

5.      Since the Petition Date, Debtor has been managing its affairs and operating its businesses as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

### A.   Relevant Pre-Petition Events

#### i.   Triangle's Claim

6.      Prior to the Petition Date, on November 21, 2003, Banco Bilbao Vizcaya Argentaría Puerto Rico ("BBVA") and Debtor entered into a *Loan and Security Agreement*, amended on May 28, 2010, and January 16, 2014 (the "Loan Agreement"), in the principal amount of $1,725,000.00 (the "Loan"). See, Claim No. 1. As reflected in the last amendment to the Loan Agreement, dated January 16, 2014, its maturity date was December 31, 2014. See, Id. at p. 30.

7.      To secure the obligations under the Loan Agreement, on November 21, 2003, Debtor subscribed a *Mortgage Note* (the "Mortgage Note") in the principal amount of

$1,750,000.00, payable on demand, authenticated under affidavit number 67,618 of Notary Public Ernesto González Piñero. See, Claim No. 1 **Exhibit B**, *Mortgage Note*.[2]

8.     The Mortgage Note is secured by *Deed of First Mortgage* Number 132 (the "Mortgage" and collectively with the Loan Agreement and the Mortgage Note, the "Debtor's Loan Documents") executed by Debtor, on November 21, 2003, before Notary Public Ernesto González Piñero, constituted over two (2) adjacent lots,  property numbers 4,969 and 5,722, assigning the amount of $1,697,500.00 to property number 4,969 and $52,500.00 to property number 5,722 (the "Real Properties") , as their respective responsibility under the Mortgage Note See, Claim No. 1, **Exhibit C**, *Mortgage Deed*.

9.     Through the Mortgage, Debtor granted to BBVA (later Oriental, and now Triangle) a first priority lien over the real properties with the following legal description in the  Spanish Language:

**PROPERTY 4,969**

**RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de doce cuerdas con setecientas catorce milésimas de otra (12.714 cuerdas.), equivalentes a cuarenta y nueve mil novecientos setenta metros cuadrados con seiscientas ochenta y una milésimas de otro (49,970.681 m-), en lindes por el **NORTE**, en catorce (14) alineaciones que totalizan cuatrocientos sesenta y cinco metros con setecientas veinticinco milésimas de otro (465.725 m), con la zona marítimo terrestre que la separa del Océano Atlántico; por el **SUR,** en una alineación de nueve metros con trescientas ochenta y tres milésimas de otro (9.383 m), con el Carlo Embarcadero, en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientas cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en otras cinco (5) alineaciones que totalizan cien metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en otras tres (3) alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en una alineación de dieciséis metros con cuatrocientas sesenta milésimas de otro (16.460 m), con terrenos de la Familia Pirallo y en una alineación de ciento cuarenta y seis metros con novecientos cincuenta y seis milésimas

---

[2] On December 18, 2012, BBVA merged with Oriental Bank ("Oriental"). On September 28, 2015, Triangle acquired the credit relationships between Oriental and Debtor.

de otro (146.956 m), con Half Moon Development Corp.; por el **ESTE,** en dos (2) alineaciones que totalizan cincuenta y tres metros con, quinientas noventa y nueve milésimas de otro (53.599 m), con la zona marítimo terrestre que la separa del Océano Atlántico y en una alineación de dieciséis metros con doscientas treinta y una milésimas de otro (16.231 m), con terrenos de la Familia Pirallo; y por el **OESTE,** en dos (2) alineaciones que totalizan treinta metros con ciento una milésimas de otro (30.101 m), con la desembocadura del Carlo Embarcadero que la separa del Océano Atlántico, en una alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con terrenos de la Familia Pirallo y en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705 m) con terrenos de la Familia Pirallo.

Property number 4,969 is recorded at page 220 of volume 92 of Luquillo, Registry of the Property of Fajardo ("Property 4,969").

See Claim No. 1, **Exhibit D**, *Title Study for Property 4,969.*

**PROPERTY 5,722**

**RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de cinco cuerdas con setecientas ochenta y dos milésimas de otra (5.782 cuerdas), equivalentes a veintidós mil setecientos veintiséis metros cuadrados con seiscientos noventa y siete milésimas de otro (22,726.697 mc), en lindes por el **NORTE,** en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientos cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en cinco alineaciones que totalizan den metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en tres alineaciones que totalizan sesenta y seis metros con noventa y cuatro cuarenta milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en cuatro alineaciones que totalizan sesenta y cinco metros con quinientos treinta y seis milésimas de otro (65.536 m), con la Parcela C dedicada a use público y en una alineación de nueve metros con ochocientas sesenta y seis milésimas de otro (9.866 m), con la extensión de Ia Calle D existente; por el **SUR,** en cinco (5) alineaciones que totalizan doscientos noventa y un metros con cuarenta y siete milésimas de otro (291.047 m), con Sucesión Beascoechea y en seis alineaciones' que totalizan doscientos veinticuatro metros con seiscientas setenta y tres milésimas de otro (224.673 m), con el Carlo Embarcadero; por el **ESTE,** en una alineación de sesenta y nueve metros con novecientas veintisiete milésimas de otro (69.927 m), con la extensión de la Calle D existente, en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705), con terrenos de la Familia Paralelo, y en otra alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con dichos terrenos de la Familia Paralelo; y por el **OESTE,** en una alineación de nueve metros con novecientas diez milésimas de otro (9.910 m), con el Carlo Embarcadero que la separa del Océano Atlántico.



Property number 5,722 is recorded on page 155 of volume 106 of Luquillo, Registry of the Property of Fajardo ("Property 5,722" and together with Property 4,969, the "Real Estate Collateral").

See, Claim No. 1, **Exhibit E**, *Title Study for Property 5,722.*

10.     To further secure and guarantee the payment and performance of all of Debtor's obligations under Debtor's Loan Documents, on November 20, 2003, Mr. Alfonso Valdés García ("Valdés") executed a *Guaranty and Agreement*, authenticated under affidavit number 1,851 of Notary Public Miguel Agustín Blanco Fuertes (the "Guaranty Agreement I"). See, Claim No. 1, **Exhibit F**. Through Guaranty Agreement I, Valdés unconditionally agreed to jointly and severally with Debtor guarantee the due performance and payment of all of the Debtor's obligations under the Debtor's Loan Documents.

11.     Furthermore, on January 16, 2014, Cost Control Company, Inc. ("Cost Control") and Fideicomiso Valdés-Acevedo ("Fideicomiso", together with Valdés the "Guarantors") executed a *Guaranty and Agreement* authenticated under affidavit numbers 3,246 and 3,250 of Notary Public Pedro A. Cantero Frau (the "Guaranty Agreement II" and together with the Guaranty Agreement I, the "Guaranty Agreements" and together with the Debtor's Loan Documents, the "Loan Documents"), wherein Cost Control and Fideicomiso agreed to jointly and severally with Debtor guarantee the due performance and payment of all of Debtor's obligations under the Debtor's Loan Documents. See Claim No. 1, **Exhibit G**.

12.     Moreover, through the final amendment to the Loan Agreement, Debtor and the Guarantors ratified "all the guarantees and collateral given and/or executed for the concession of the Loan Agreement, including, but without being limited to, the joint and several guarantees on behalf of" Oriental, to Triangle. See Claim No. 1, **Exhibit A**, pp. 30-31, *Fourth Section*.

### ii. *Defaults under the Loan Documents*

13.     Prior to the Petition Date, Debtor and the Guarantors had defaulted under the Loan Documents.

14.     As a result of such defaults, Oriental, now Triangle, filed a complaint for collection of monies and foreclosure on June 9, 2015, in the State Court Case, before Puerto Rico Court of First Instance, Fajardo Section ("CFI").

15.     After several procedural events in the State Court Case, Debtor and the Guarantors deposited $153,000.00 in the CFI (the "Deposited Funds") raising several allegations and arguments regarding the right of redemption under Article 1425 of the Puerto Rico Civil Code. This dispute, however, was ultimately resolved in favor of Triangle, and the Deposited Funds remain in the CFI.

16.     On December 1, 2022, Triangle, after acquiring the Loan Documents from Oriental and substituting itself as plaintiff in the State Court Case filed a *Motion for Summary Judgment* (the "Motion for Summary Judgment").

17.     After the time to respond to the Motion for Summary Judgment, without filing a response thereto, Debtor filed for relief in the captioned case.



18.     On March 28, 2023, the CFI issued a partial judgment (the "Partial CFI Judgment") against the Guarantors.

**B.  Relevant Post-Petition Events**

19.     As part of the State Court Case and this Bankruptcy Case, the Parties have commenced, asserted and/or have pending several contested matters and actions. These include, but are not limited to Triangle's motion to dismiss, motion for relief from stay, Debtor's answers thereto and the objection to the approval of Debtor's Disclosure Statement. These controversies in this Bankruptcy Case and the State Court Case, and any other controversies and contested matters among the Parties and the Guarantors, known or unknown, are collectively referred to as the "Litigation".

20.     On November 22, 2023, the Parties and the Guarantors executed the Settlement Agreement.

21.     The Parties have engaged in arms' length negotiations and have agreed to enter into the Settlement Agreement, providing for total and full satisfaction of all claims between the Parties relating to the Credit Agreement, the Loan, the Loan Documents and the Litigation, in accordance with the terms and conditions set forth in the Settlement Agreement (the "Settlement Transaction").

## BASIS FOR RELIEF

22.     Bankruptcy Rule 9019(a) provides that a court may approve a debtor's "compromise and settlement" after notice and a hearing. See Bankruptcy Rule 9019(a). The Court of Appeals for the First Circuit (the "First Circuit") has emphasized that "[s]tipulations of settlement are favored by the courts, and they will rarely be set aside absent fraud, collusion, mistake or other such factor." In re Indian Motorcycle Co., 289 B.R. 269, 282 (B.A.P. 1st Cir. 2003); See also, In re Healthco Int'l, Inc., 136 F.3d 45, 50 n.5 (1st Cir. 1998).



23.     In deciding whether to approve a settlement pursuant to Federal Rule of Bankruptcy Procedure 9019, "[t]he bankruptcy court essentially is expected to assess and balance the value of the claims being compromised against the value of the compromise proposal." In re Yacovi, 411 F. App'x 342, 346 (1st Cir. 2011) (citing Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 50 n. 5 (1st Cir.1998). Further, "the trustee's judgment is to be accorded some deference." In re Healthco Int'l, Inc., 136 F.3d at 50 n. 5 (citing Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87, 89 (1st Cir. B.A.P. 1997). In short, as stated by the Court of Appeals for the First Circuit (the "First Circuit"), "'[t]he responsibility of the bankruptcy judge, and ours on

review, is ... to ... see whether the settlement falls below the lowest point in the range of reasonableness.'" Yacovi.

24.     The approval of settlements is within the court's "wide discretion." See, Jeremiah v. Richardson, 148 F.3d 17, 22 (1st Cir. 1998). However, while a court should apply its own independent judgment to determine whether to approve a settlement, it should also afford deference to the judgment of the trustee or debtor in possession. See, In re Receivership Estate of Indian Motorcycle Mfg., Inc., 299 B.R. 8, 21 (D. Mass. 2003) (the court should give "substantial deference to the business judgment of a bankruptcy trustee when deciding whether to approve a settlement"); Hill v. Burdick (In re Moorhead Corp.), 2008 B.R. 87, 89 (B.A.P. 1st Cir. 1997) ("The [bankruptcy] judge . . . is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference." (citation omitted)), City Sanitation, LLC v. Allied Waste Serves. Of Mass., LLC (In re Am. Cartage, Inc.), 656 F.3d 82, 92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference.") (citing In re Thompson, 965 F.2d 1136, 1145 (1st Cir. 1992)); In re Healthco Int'l, Inc., 136 F.3d at 50 n.5. ("the bankruptcy judge . . . is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference. Compromises are favored in bankruptcy.") (internal citations and quotations omitted).

25.     Likewise, the court should also consider the paramount interests of creditors and give deference to their views. See, Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995) (noting that court should give proper deference to the reasonable views of creditors). Accordingly, a settlement should generally be approved unless it "falls below the lowest point in the range of

reasonableness." <u>City Sanitation, LLC v. Allied Waste Serves. Of Mass., LLC (In re Am. Cartage, Inc.)</u>, 656 F.3d 82, 91 (1st Cir. 2011) (citing <u>Cosoff v. Rodman (In re W.T. Grant Co.)</u>, 699 F.2d 599, 608 (2nd Cir. 1983)).

26.     A court should consider four factors in striking the balance between the value of the compromise and the value of the claim:

> **(i)** the probability of success in the litigation being compromised.
> **(ii)** the difficulties, if any, to be encountered in the matter of collection.
> **(iii)** the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and,
> **(iv)** the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

<u>See</u>, <u>In re C.P. del Caribe, Inc.</u>, 140 B.R. 320, 325, (Bankr. D.P.R. 1992); <u>In re Robotic Vision Sys., Inc.</u>, No. 04-14151-JMD, 2006 WL 929322, at *4 (B.A.P. 1st Cir. Apr. 11, 2006) (citing <u>Jeremiah v. Richardson</u>, 148 F.3d 17, 23 (1st Cir.1998)).

27.     "The court's consideration of these factors should demonstrate whether the compromise is fair and equitable, and whether the claim the debtor is giving up is outweighed by the advantage to the debtor's estate." <u>In re Robotic Vision Sys., Inc.</u>, 2006 WL 929322, at *4.

28.     The standard for approving a settlement, whether it is in the best interest of the estate, entails an examination of the settlement's terms with the litigation's probable cost and benefits. When an agreement provides tangible benefits to the estate in return for sacrifice of uncertain claims against a creditor, the bankruptcy court does not err in approving the settlement. <u>In re Bond</u>, 16 F.3d 408, 30 C.B.C.2d 784 (4th Cir. 1994).

29.     Entering into a settlement agreement under Rule 9019 must be accorded some deference by the courts. <u>See</u>, <u>In re Healthco Int'l, Inc.</u>, 136 F.3d 45, 54 at fn. 5 (1st Cir. 1998) (citing <u>In re Moorhead Corp.</u>, 208 B.R. 87, 89 (B.A.P. 1st Cir. 1997) ("the [bankruptcy] judge…is not to substitute her judgment for that of the trustee [debtor-in-possession], and the trustee's judgment is

to be accorded some deference."). Furthermore, "[c]ompromises are favored in bankruptcy." <u>See</u>, Richard Levin & Henry J. Sommer, 10 <u>Collier on Bankruptcy</u> ¶9019.01 (16[th] ed. 2020).

30.   The Parties submit that the Settlement Transaction and Settlement Agreement should be approved as they constitute a sound exercise of Debtor's business judgment, are in the best interest of creditors and the estate and resolve the Litigation.

## <u>SUMMARY OF SETTLEMENT TRANSACTION AND BENEFITS RESULTING THEREFROM</u>

31.   The terms of the Settlement Transaction are set forth and detailed in the Settlement Agreement, attached as <u>Exhibit 1</u>. The following description is intended solely as a summary of the main terms of such Settlement Agreement and is not intended and does not constitute an exhaustive description of all terms or conditions of the Settlement Agreement. In the event of any inconsistency between the summary set forth herein and the Settlement Agreement, the Settlement Agreement governs and therefore all parties in interest should refer to the Settlement Agreement and not to the summary included herein.



32.   The Settlement Transaction is a sound exercise of Debtor's business judgment and provides numerous benefits to the estate and creditors:

- ***Consented Period for Sale of Real Estate Collateral.***

  (i)     Triangle has agreed for Debtor to have a consented nine-month period, commencing on the date of the execution of the Settlement Agreement (the "<u>9 Month Period</u>") to satisfy the amount of $1,889,769.86 in full payment of the Claim (the "<u>Triangle Reduced Claim Amount</u>") through the sale or refinancing of the Real Estate Collateral or otherwise. This amount is as of November 8, 2023, and will be updated as of the date of execution of the Settlement Agreement.

  (ii)    If, at the end of the 9 Month Period, Debtor has not delivered to Triangle payment of the Triangle Reduced Claim Amount, Debtor may extend the terms of the Settlement Agreement for an additional 3 month period (the "<u>3 Month Sale Extension Period</u>" and together with the 9 Month Period, the "<u>Sale Period</u>") to satisfy to Triangle the amount of

$2,166,538.21, in full settlement of the Claim (the "Triangle Total Claim"). This amount is as of November 8, 2023.

(iii)    For the avoidance of doubt, Debtor shall have a total of twelve (12) months from the date of the execution of the Settlement Agreement to finalize the sale or refinancing of the Real Estate Collateral or otherwise pay Triangle's claim provided, however, that **(i)** if sale of the Real Estate Collateral and/or the payment takes place during the 9 Month Period, the amount payable to Triangle shall be the Triangle Reduced Claim Amount, and **(ii)** if the sale and/or payment takes place during the 3 Month Sale Extension Period, the amount payable to Triangle shall be the Triangle Total Claim[3].

<u>See</u> Settlement Agreement at pp. 5-6, Sections 5-7.



- ***Allowed Claim of the Triangle Total Claim.*** The Settlement Transaction ratifies the Triangle Total Claim, providing for a discounted amount thereof pursuant to the terms and conditions set forth therein, conditioned upon the entry of an order approving the Settlement Agreement, which provides− subject to the terms and conditions of the Settlement Agreement− for mutual releases by the Parties, including the release of the Guarantors in the State Court Case, upon satisfaction of its terms. <u>See</u>, Settlement Agreement at pp. 5, 6, 10, 11, 12 and 13, Sections 6, 7, 15, 19 and 20.

- ***Resolution of Disputes regarding the Deposited Funds.*** The Parties have agreed that the Deposited Funds shall be jointly requested by Triangle, Debtor, and the Guarantors to be disbursed in favor of Triangle, to be applied to reduce the interest due under the Reduced Claim Amount during the 9 Month Sale Period. <u>See</u>, Settlement Agreement at p. 5, Section 7(ii).

- ***Periodic Reporting.*** Debtor shall provide Triangle with copies of all purchase offers received for the Real Estate Collateral within 5 business days of receipt thereof and Debtor shall also provide to Triangle a monthly report, on or before the 1st day of each month, detailing the Real Estate's permitting process and sale efforts

---

[3] The Parties have further agreed that both the Triangle Reduced Claim Amount and the Triangle Total Claim shall accrue interest at the rate of 11.50% and any additional legal fees incurred by Triangle until paid in full. <u>See</u>, Settlement Agreement at pp. 5-6, Section 7.

and any progress relative thereto, or relevant information as to such matters. <u>See</u>, Settlement Agreement at pp. 5-6, Section 7(v).

- ***Continued Payment of Insurance and Taxes.*** Debtor shall pay all real estate taxes when due and provide evidence of such payment to Triangle. <u>See</u>, Settlement Agreement at p. 6, Section 7(vii).

- ***Resolution of Obligations, Litigation and Consented Dismissal of Bankruptcy Case.*** As part of the Settlement Transaction, upon receipt of the Settlement Payment and satisfaction of the conditions to Closing, the Parties agree that **(i)** such Settlement Payment shall satisfy, in full, all of Debtor's and the Guarantor's Obligations under the Loan Agreement, the Loan and the Loan Documents and finally resolve all of the Litigation, including the State Court Case, and the release—subject to the terms and conditions of the Settlement Agreement—of the Guarantors, and **(ii)** upon approval of the Settlement Agreement and granting of the 9019 Motion, the Parties will jointly request the dismissal of the Bankruptcy Case to avoid chapter 11 expenses and fees during the Sale Period. <u>See</u>, Settlement Agreement at p. 11, Section 17.



- ***Bankruptcy Court Approval***. The Settlement Agreement is conditioned on the approval by this Court of the 9019 Motion. <u>See</u>, Settlement Agreement at pp. 5-6, 7, Section 7(vi)(b) and 10.

**WHEREFORE**, the Parties stipulate to the above, as set forth in more detail in the Settlement Agreement attached hereto as <u>Exhibit 1</u>, and jointly request that this Court enter an order granting this 9019 Motion and approving the Settlement Agreement in its entirety, and granting any other relief it deems just and proper.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case, including, but not limited to, Debtors' counsel and the U.S. Trustee.

<u>**NOTICE**</u>

Within twenty-one (21) days after service as evidenced by the certification, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this paper with the

clerk's office of the United States Bankruptcy Court for the District of Puerto Rico on or before **December 13, 2023**. If no objection or other response is filed within the time allowed herein, this paper will be deemed unopposed and may be granted without a need for a hearing unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

**RESPECTFULLY SUBMITTED,**

San Juan, Puerto Rico, this 22nd day of November, 2023.

| | |
|---|---|
| **CHARLES A. CUPRILL LAW OFFICE, P.S.C.** | */s/ Ignacio J. Labarca-Morales* |
| *Attorneys for Debtor* | M | P | M **MARINI PIETRANTONI MUÑIZ LLC** |
| 356 Calle Fortaleza | *Attorneys for Triangle Cayman Asset Company* |
| Second Floor | Luis C. Marini-Biaggi - USDC No. 222301 |
| San Juan, P.R. 00901 | Ignacio Labarca-Morales - USDC No. 303307 |
| Tel: (787) 977-0515 | |

*/s/ Charles A. Cuprill-Hernández*
Charles A. Cuprill-Hernández
USDC No. 114312
E-mail: ccuprill@cuprill.com

250 Ponce De León Ave.
Suite 900
San Juan, PR 00918
Tel.: (787) 705-2171

lmarini@mpmlawpr.com
ilabarca@mpmlawpr.com



**EXHIBIT B-2**

<u>(Proposed Order Granting Joint 9019 Motion)</u>

(see attached)



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | Case No. 23-00462 (ESL) |
| AZURE DEVELOPMENT, INC. | Chapter 11 |
| Debtor. | |

## ORDER GRANTING MOTION FOR APPROVAL OF SETTLEMENT AND RELEASE AGREEMENT PURSUANT TO FED. R. BANKR. 9019

**WHEREAS,** Triangle Cayman Asset Company ("Triangle"), and Azure Development Inc.("Debtor") and jointly with Triangle, the "Parties") filed a *Joint Motion for the Approval of Settlement and Release Agreement* (the "Settlement Agreement") pursuant to Fed. R. Bankr. P. 9019 (the "9019 Motion").

**WHEREAS,** as part of the 9019 Motion, the Parties requested an order approving the Settlement Agreement and the entry of this order (the "9019 Order"), respectively attached to the 9019 Motion as Exhibit 1 thereto.

**IT IS FOUND AND DETERMINED THAT[4]:**

1.      The Court has jurisdiction to consider the 9019 Motion and relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334.

2.      The relief requested in the 9019 Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Due and proper notice of the 9019 Motion was adequate and appropriate under the circumstances to all interested persons and entities, including the Office of the United States Trustee.

---

[4]  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See, Fed. R. Bankr. P. 7052

16

4.      This Court finds and determines that the relief sought in the 9019 Motion is in the best interests of Debtor's estate, its creditors, and other parties in interest, and that the legal and factual bases set forth in the 9019 Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and any objections to the relief requested in the 9019 Motion having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

5.      The recitals, determinations, conclusions, and findings set forth above are incorporated into this Order.

6.      The 9019 Motion is GRANTED on the terms set forth herein.

7.      The Settlement Agreement, in the form attached to the 9019 Motion as Exhibit 1, is APPROVED in its entirety. The lack of a specific description or inclusion in this Order of any particular provision of the Settlement Agreement shall in no way diminish or impair the effectiveness of any such provision.

8.      This Order and the Settlement Agreement constitute and evidence the valid and binding covenants between the Parties thereto.

9.      No party served with notice of and/or with the 9019 Motion shall, in any way interfere with the transactions contemplated in the Settlement Agreement.

10.      The terms and conditions of this Order shall be immediately enforceable, and the Parties thereto are authorized to take all actions, and to execute all documents, necessary or appropriate to effectuate the relief granted herein.

**IN LIGHT OF THE APPROVAL OF THE SETTLEMENT AGREEMENT, IT IS FURTHER ORDERED,**

11.      That the Parties shall be bound by the terms and conditions of the Settlement

Agreement.

      12.     That, within seven (7) business days after the entry of this Order, the Parties shall file a joint motion to dismiss Debtor's Chapter 11 case, with a proposed order in connection therewith, providing for the dismissal of the captioned case, pursuant to the terms and conditions set forth in the Settlement Agreement and;

      13.     The Court shall retain exclusive jurisdiction to hear and determine all matters arising from or related to this Order or the Settlement Agreement.

      IT IS SO ORDERED,

In San Juan, Puerto Rico, this ___ day of November, 2023.


                                      _____
                                        HON. ENRIQUE S. LAMOUTTE
                                    UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C-1**

(<u>Joint Motion to Dismiss</u>)

(see attached)



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | Case No. 23-00462 (ESL) |
| AZURE DEVELOPMENT, INC. | Chapter 11 |
| Debtor. | |

## JOINT MOTION FOR DISMISSAL OF CASE
## PURSUANT TO SETTLEMENT AND RELEASE AGREEMENT

TO THE HONORABLE ENRIQUE S. LAMOUTTE
UNITED STATES BANKRUPTCY JUDGE:

**COME NOW** Triangle Cayman Asset Company ("Triangle"), and Azure Development

Inc.("Debtor") and jointly with Triangle, the "Parties"), through their respective undersigned

counsel, and respectfully submit this *Joint Motion for Dismissal* (the "Dismissal Motion"),

requesting that the Court enter an order, substantially similar in form and substance to the one

proposed herein as **Exhibit A**, pursuant to the terms and conditions of that certain *Forbearance,*



*Discounted Payoff And Settlement And Release Agreement* (the "Settlement Agreement"),

approved pursuant to this Court's *Order Granting Motion For Approval Of Settlement And Release*

*Agreement  Pursuant To Fed. R. Bankr. Pr. 9019* (the "9019 Order") (ECF No. __). In support of

this Dismissal Motion, the Parties hereby state and pray as follows:

## PRELIMINARY STATEMENT

As stated in the joint motion for approval, pursuant to Fed. R. Bankr. P. 9019 of the

Settlement Agreement (the "9019 Motion"), Debtor and Triangle have reached and executed the

Settlement Agreement that finally resolves years of pending controversies between the Parties. As

noted in the 9019 Motion, because it is a stipulated fact that the captioned case is a two-party

dispute, one of the main benefits to the estate of the Settlement Agreement is that it resolves this

two-party dispute and avoids the depletion of valuable resources, time, and efforts that the

continued litigation thereof would otherwise entail. To that end, the Settlement Agreement —the terms of which are now binding between the Parties, contemplates the elimination of chapter 11 administrative fees through the dismissal of the captioned case, with a bar to refile of three years (specifically, 1,095 days) from the date of the entry of the dismissal order.

For these reasons, and those detailed below, the Parties respectfully request that the Court enter an order granting this Dismissal Motion, pursuant to the terms and conditions of the Settlement Agreement. The Parties note that this request to dismiss is contingent and conditioned on the Court including, in any order dismissing this case, a bar to refile or commence any bankruptcy proceeding of three years, starting from the date that this case is dismissed.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Dismissal Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the scope of 28 U.S.C. § 157(b)(2).

2.      Venue of this proceeding and of the Dismissal Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory basis for the relief requested herein are Sections 105(a) and 1112(b) of Title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

4.      On February 17, 2023 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, under case num. 23-00462 (ESL-11) (the "Bankruptcy Case"). See Docket No. 1.

5.      Since the Petition Date, Debtor has been managing its affairs and operating its businesses as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

6.      Since the Petition Date, the Parties have actively engaged in the litigation of an adversary proceeding (ECF No. 41) and several contested matters, including a motion to dismiss



pursuant to 11 U.S.C. §1112(b)(4)(A) (ECF No. 29), a motion for relief from stay pursuant to 11 U.S.C. §362(d)(3) (ECF No. 60) and an objection to the approval of Debtor's disclosure statement (the "Bankruptcy Litigations") (ECF No. 59).

## BASIS FOR REQUESTED RELIEF

7.      The Parties respectfully request that the Court enter an order dismissing the case pursuant to 11 U.S.C. §1112(b) and the terms and conditions of the Settlement Agreement. Specifically, the Parties submit that the execution of the Settlement Agreement renders moot the protections that Debtor sought through this Bankruptcy Case, as part of the terms of such agreement provide that the Debtor will have a period of time to sell or refinance its real estate (the "Real Estate Collateral") or otherwise pay Triangle as set forth in the Settlement Agreement and focus on all efforts to sell the Real Estate Collateral without having to face, during that time, continued litigation in the Bankruptcy and State Court. Furthermore, the Settlement Agreement also resolves the controversies in the case styled *Triangle Cayman Asset Company v. Azure Development, Inc., et al*, Civil Case No. NSCI2015-00410, Puerto Rico Court of First Instance ("CFI"), Fajardo Section (the "State Court Action"), and all appellate proceedings stemming therefrom. Debtor submits that as a result of the Settlement Agreement, it has reached a settlement with its main creditor and, thus, seeks this dismissal to avoid additional administrative expenses and costs and to implement the terms of the Settlement Agreement.



8.      As noted by commentators Levin and Sommer:

"In evaluating the purposes of chapter 11 as they relate to section 1112(b), it is also important to bear in mind that Congress designed the reorganization process to provide a forum for the negotiated resolution of the debtor's case in a manner that is as accommodating as possible. On the other hand, not every case is capable of bearing the weight of this ideal. In reality, while the chapter 11 forum provides a medium for negotiation and an opportunity to better accommodate the interests of a broad range of constituents by potentially preserving the value of the debtor as a going concern, the Code does not guarantee this result or **even require its pursuit beyond the point at which the**

**costs are not justified or the intended benefits of the process are unlikely to be obtained.**"

<u>See</u>, Richard Levin & Henry J. Sommer, 7 <u>Collier on Bankruptcy</u> ¶1112.04[5][b] (16th ed. 2023), Basic *Purposes of Chapter 11 Related to Section 1112(b), Providing for Negotiated Accommodation.* (Emphasis added).

9.      Here, following the Debtor's business judgment, Debtor hereby requests, and Triangle agrees subject to the entry of the bar to refile of three years, the voluntary dismissal of the captioned case.

10.      Lastly, conversion instead of dismissal would yield no benefit to the estate and creditors, as it would result in an additional layer of administrative expenses and fees of a chapter 7 trustee who would be appointed to, in effect, conduct the same transactions that the Parties have agreed the Debtor will conduct pursuant to the Settlement Agreement: the sale or financing of the Real Estate Collateral or otherwise pay Triangle as set forth in the Settlement Agreement, the failure of which resulting in the foreclosure of Triangle of the Real Estate Collateral in the State Court Action as full payment and–subject to the terms and conditions of the Settlement Agreement– release of the defendants in said case.



11.      For the reasons detailed herein, the Parties respectfully request that the Court grant this Dismissal Motion.

**WHEREFORE**, the Parties respectfully request that the Court enter an order dismissing the captioned case with a bar to re-file for three (3) years (or 1,095 days) from the date of entry of such order.

**WE HEREBY CERTIFY** that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case, including, but not limited to, Debtors' counsel and the U.S. Trustee.

<u>**NOTICE**</u>

Within seven (7) days after service as evidenced by the certification, any party against whom this paper has been served, or any other party to the action who objects to the relief sought herein,

4

shall serve and file an objection or other appropriate response to this paper with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico on or before **December [___], 2023**. If no objection or other response is filed within the time allowed herein, this paper will be deemed unopposed and may be granted without a need for a hearing unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

**RESPECTFULLY SUBMITTED,**

San Juan, Puerto Rico, this [___]th day of November, 2023.

**CHARLES A. CUPRILL LAW OFFICE, P.S.C.**
*Attorneys for Debtor*
356 Calle Fortaleza
Second Floor
San Juan, P.R. 00901
Tel: (787) 977-0515

*/s/ Charles A. Cuprill-Hernández*
Charles A. Cuprill-Hernández
USDC No. 114312
E-mail: ccuprill@cuprill.com

*/s/ Ignacio J. Labarca-Morales*
M | P | M **MARINI PIETRANTONI MUÑIZ LLC**
*Attorneys for Triangle Cayman Asset Company*
Luis C. Marini-Biaggi - USDC No. 222301
Ignacio Labarca-Morales - USDC No. 303307

250 Ponce De León Ave.
Suite 900
San Juan, PR 00918
Tel.: (787) 705-2171

lmarini@mpmlawpr.com
ilabarca@mpmlawpr.com



**EXHIBIT C-2**

(Proposed Order Granting Joint Motion to Dismiss)

(see attached)



## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | Case No. 23-00462 (ESL) |
| AZURE DEVELOPMENT, INC. | Chapter 11 |
| Debtor. | |

### ORDER DISMISSING BANKRUPTCY CASE PURSUANT TO SETTLEMENT AND RELEASE AGREEMENT UNDER FED. R. BANKR. 9019

**WHEREAS,** Triangle Cayman Asset Company ("Triangle"), and Azure Development Inc.("Debtor") and jointly with Triangle, the "Parties") jointly filed a *Joint Motion For Dismissal Of Case* (the "Dismissal Motion") pursuant to the *Forbearance, Discounted Payoff And Settlement And Release Agreement* (the "Settlement Agreement") executed on November 22, 2023, by the Parties, Cost Control Company, Inc. ("Cost Control"), Alfonso Valdés García ("Valdés") and Fideicomiso Valdés-Acevedo ("Fideicomiso" and together with Cost Control and Valdés, the "Guarantors");



**WHEREAS**, on November 22, 2023, the Parties filed a joint motion for approval of the Settlement Agreement pursuant to Fed. R. Bankr. P. 9019 (the "9019 Motion").

**WHEREAS**, on December [____], 2023, in finding that notice of the 9019 Motion was appropriate under the particular circumstances to all interested persons and entities, including the Office of the United States Trustee; that the relief sought in the 9019 Motion was in the best interests of the Debtor's estates, its creditors, and other parties in interest, and that the legal and factual bases set forth in the 9019 Motion established just cause for the relief granted therein; and after due deliberation and sufficient cause appearing therefor, this Court entered an order granting the 9019 Motion (the "9019 Order");

**WHEREAS**, as part of the terms and conditions of the Settlement Agreement, the 9019

7

Motion and the 9019 Order, the Parties agreed that the Dismissal Motion would be jointly submitted within seven (7) business days after the entry of the 9019 Order.

**WHEREAS**, the Parties also agreed that, subject to the terms and conditions of the Settlement Agreement, the 9019 Motion and the 9019 Order, all contested matters and litigations between the Parties, in this case and in the case styled *Triangle Cayman Asset Company v. Azure Development, Inc., et al*, Civil Case No. NSCI2015-00410, Puerto Rico Court of First Instance ("CFI"), Fajardo Section (the "State Court Action"), would be resolved and/or voluntarily and jointly sought to be dismissed;

**IT IS FOUND AND DETERMINED THAT**[1]:

1.      The Court has jurisdiction to consider the Dismissal Motion and relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334.

2.      The relief requested in the Dismissal Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      Due and proper notice of the Dismissal Motion was adequate and appropriate under the particular circumstances to all interested persons and entities, including the Office of the United States Trustee.

4.      This Court finds and determines that the relief sought in the Dismissal Motion is in the best interests of Debtor's estate, its creditors, and other parties in interest, and that the legal and factual bases set forth in the Dismissal Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and any objections to the relief requested herein are nonexistent, having been withdrawn or overruled on the merits; and after

---

[1]   Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See, Fed. R. Bankr. P. 7052

due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

5.      The recitals, determinations, conclusions, and findings set forth above are incorporated into this Dismissal Order.

6.      The Dismissal Motion is GRANTED on the terms set forth herein.

7.      The captioned case is hereby DISMISSED.

**IN LIGHT OF THE GRANTING OF THE DISMISSAL MOTION, IT IS FURTHER ORDERED,**

8.      That Azure Development, Inc. is hereby prohibited from being a debtor under any proceeding under title 11 of the United States Code, whether voluntary or involuntary, for the three (3) years (or 1,095 days) from the date of entry of this Dismissal Order.

9.      The terms and conditions of this Order shall be immediately enforceable, and the Parties thereto are authorized to take all actions, and to execute all documents, necessary or appropriate to effectuate the relief granted herein.

**IT IS SO ORDERED,**

In San Juan, Puerto Rico, this ____ day of December, 2023.

_____
HON. ENRIQUE S. LAMOUTTE
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT D**

(<u>Joint Motion to Disburse Consigned Funds</u>)

(see attached)

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE FAJARDO**

| | |
|---|---|
| TRIANGLE CAYMAN ASSET COMPANY, | CIVIL NÚM.: NSCI 2015-00410 |
| *Demandante* | |
| v. | SOBRE: EJECUCIÓN DE HIPOTECA; SENTENCIA POR CONSENTIMIENTO |
| AZURE DEVELOPMENT, INC, et al. | |
| *Demandados* | |

<u>**SOLICITUD CONJUNTA DE DESEMBOLSO DE DÉPOSITO JUDICIAL**</u>

**AL HONORABLE TRIBUNAL:**



      **COMPARECE** Triangle Cayman Asset Company ("Triangle"), y Azure Development, Inc., Cost Control Company, Inc., Alfonso Valdés García y Fideicomiso Valdés- Acevedo (en conjunto, "<u>Deudor y Garantizadores</u>", y junto a Triangle las "<u>Partes</u>"), mediante sus respectivas representaciones legales y, respetuosamente exponen y solicitan:

      1.     Las Partes involucradas en el presente caso informan que libre y voluntariamente han llegado a un acuerdo titulado *Forbearance, Discounted Payoff and Settlement and Release Agreement*, firmado el 22 de noviembre de 2023, el cual pone fin a todas y cada una de las controversias de epígrafe (en adelante, el "<u>Acuerdo</u>").

      2.     Conforme a los términos y condiciones del *Acuerdo* el Deudor y los Garantizadores consintieron a que este foro ordene el desembolso del depósito judicial retenido por la suma de **$153,289.74** más cualquier interés acumulado a favor de Triangle, para que esta sea acreditada a la cuantía adeudada por el Deudor y los Garantizadores. <u>Véase</u>, la Sección 2 del Acuerdo, a la pág. 2.

      3.     En virtud del *Acuerdo*, las Partes respetuosamente solicitan que este Honorable Tribunal **(i)** tome conocimiento de lo antes expuesto y **(ii)** ordene el desembolso de la suma de **$153,289.74** más cualquier interés acumulado, mediante un cheque a nombre de Triangle.

      **POR TODO LO CUAL**, Las Partes respetuosamente solicitan que este Honorable Tribunal **(i)** tome conocimiento de lo antes expuesto y **(ii)** ordene el desembolso de la suma de **$153,289.74** más cualquier interés acumulado, mediante un cheque a nombre de Triangle.

      **RESPETUOSAMENTE SOMETIDA.**

      En San Juan, Puerto Rico hoy 22 de noviembre de 2023.

CERTIFICAMOS que en el día de hoy se notificó este escrito por correo electrónico a

todos los abogados de récord del pleito de epígrafe, a las direcciones que aparecen en récord.

**M | P | M | MARINI PIETRANTONI MUÑIZ LLC**
250 Avenida Ponce de León, Suite 900
San Juan, Puerto Rico 00917
Tel. 787.705.2171
Fax: 787.936.7494

Luis C. Marini-Biaggi
RUA Núm. 14091
lmarini@mpmlawpr.com

Karena Montes Berríos
RUA Núm. 19345
kmontes@mpmlawpr.com

Melanie Pérez Rivera
RUA Núm. 21125
mperez@mpmlawpr.com

*Abogados de Triangle Cayman Asset Company*

**CHARLES A. CUPRILL, PSC LAW OFFICES**
356 Calle Fortaleza, 2do Piso
San Juan, PR 00901

Charles A. Cuprill Hernández
RUA Núm. 3198
Tel. 787-977-0515
Fax. 787-977-0518
ccuprill@cuprill.com

Oscar L. Padilla López
RUA Núm. 9110
Cond. San Martín Suite 704
Ave. Ponce de León 1605
San Juan, PR 00909
Tel. 787-981-7474
Cel. 787-449-2458
opadillalopez@yahoo.com

*Abogados de Azure Development Inc.*

**LEGAL CORP**
P O Box 191033
San Juan, PR 00919
Tel 787-294-0750
Fax. 787-294-0753

f/Rubén Colón Por: Roberto Padilla Pérez
Rubén Colón Morales
RUA Núm. 9939
rcolon@legalcooppr.com

Roberto Padial Pérez
RUA Núm. 13155
rpadial@legalcooppr.com

Rubén J Lucena Quiles
RUA Núm. 15873
rlucena@legalcooppr.com

*Abogados de Alfonso Valdés García y Cost Control
Company Inc.*

Miguel A. Pérez Vargas
RUA Núm. 9578
P.O. Box 620315
Oviedo, FL 32762-0315
Tel 787-473-7352
perezvargasmiguel@gmail.com

*Abogado del Fideicomiso Valdés- Acevedo*

2

**EXHIBIT E-1**

(<u>Joint Motion to Issue Writ and Order</u>)

(see attached)



**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE FAJARDO**

| | |
|---|---|
| TRIANGLE CAYMAN ASSET COMPANY | CIVIL NÚM: NSCI 2015-00410 |
| Demandante, | |
| v. | SOBRE: |
| AZURE DEVELOPMENT, INC, *et al.* | SENTENCIA POR CONSENTIMIENTO |
| Demandado. | |

**MOCIÓN DE EJECUCIÓN  DE SENTENCIA Y PARA QUE SE AUTORICE VENTA
EN PÚBLICA SUBASTA**

**COMPARECE** Triangle Cayman Asset Company ("Triangle") por conducto de la
representación legal que suscribe y muy respetuosamente expone, alega y solicita:

1.  El 22 de noviembre de 2023, Triangle, de una parte, y Azure Development, Inc., Cost
Control Company, Inc., Alfonso Valdés García y Fideicomiso Valdés- Acevedo (en conjunto, "Deudor
y Garantizadores", y junto a Triangle las "Partes"), presentaron una solicitud de sentencia por
consentimiento titulada ("Sentencia por Consentimiento"), suscrita el 22 de noviembre de 2023 y
presentada el mismo día, mediante la cual le solicitaron al Tribunal que dictara sentencia conforme a los
acuerdos alcanzados entre las Partes.

2.  En la referida Sentencia por Consentimiento, se acordó, entre otras cosas, que el Acreedor
puede: **(i)** ejecutar la Sentencia por Consentimiento, **(ii)** comenzar un procedimiento de ejecución de la
Colateral dada en prenda o gravada a favor del Acreedor en virtud de los Documentos de Financiamiento
descritos en la Sentencia por Consentimiento, como pago total y absoluto de todas las reclamaciones
existentes contra el Deudor y los Garantizadores. <u>Véase</u>, Sentencia por Consentimiento a la pág. 10.

3.  El ___ de _____ de 2023, este Honorable Tribunal dictó una sentencia (la "Sentencia")
consistente con la Sentencia por Consentimiento, a favor de Triangle.

4.  En la Sentencia por Consentimiento, se reiteró que el 21 de noviembre de 2003, el
Deudor y el Banco Bilbao Vizcaya Argentaría Puerto Rico (luego Oriental Bank) (en adelante, "BBVA")
suscribieron el *Loan and Security Agreement,* (en adelante, el "<u>Contrato de préstamo original</u>"). La suma
principal del préstamo conferido al Deudor ascendía a $1,725,000.00. <u>Véase</u>, la Sentencia por
Consentimiento a la pág. 3.

1

5.    Según se recoge en la Sentencia por Consentimiento, ese mismo día, el Deudor otorgó un

*Mortgage Note* a favor de BBVA o a su orden, por la suma de $1,750,000.00 (el "Pagaré Hipotecario").

Para garantizar el referido Pagaré hipotecario, Azure otorgó la siguiente hipoteca:

> Hipoteca en garantía de un pagaré hipotecario a favor de BBVA, o a su orden, por
> la suma principal de $1,750,000.00, con intereses al 14% anual, vencedero a la
> presentación, constituida mediante la Escritura Número 132 otorgada el 21 de
> noviembre de 2003 ante el Notario Público Ernesto González Piñero, e inscrita el
> 2 de diciembre de 2003 en el Registro de la Propiedad de Fajardo (en adelante la
> "Hipoteca").

6.    La Hipoteca que garantiza el Pagaré hipotecario, dado en prenda a Triangle grava las

siguientes propiedades inmuebles (en adelante, las "Propiedades Hipotecadas"):

**Finca Número 4,969**



> **RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de
> forma irregular, con una cabida de doce cuerdas con setecientas catorce milésimas
> de otra (12.714 cuerdas.), equivalentes a cuarenta y nueve mil novecientos setenta
> metros cuadrados con seiscientas ochenta y una milésimas de otro (49,970.681 m),
> en lindes por el **NORTE,** en catorce (14) alineaciones que totalizan cuatrocientos
> sesenta y cinco metros con setecientas veinticinco milésimas de otro (465.725 m),
> con la zona marítimo terrestre que la separa del Océano Atlántico; por el **SUR,** en
> una alineación de nueve metros con trescientas ochenta y tres milésimas de otro
> (9.383 m), con el Carlo Embarcadero, en cuatro (4) alineaciones que totalizan
> doscientos dos metros con seiscientas cuarenta y cinco milésimas de otro (202.645
> m), con terrenos de la Familia Pirallo, luego en otras cinco (5) alineaciones que
> totalizan cien metros con noventa milésimas de otro (100.090 m), con terrenos de la
> Familia Pirallo, luego en otras tres (3) alineaciones que totalizan sesenta y seis
> metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la
> Familia Pirallo, luego en una alineación de dieciséis metros con cuatrocientas
> sesenta milésimas de otro (16.460 m), con terrenos de la Familia Pirallo y en una
> alineación de ciento cuarenta y seis metros con novecientos cincuenta y seis milésimas
> de otro (146.956 m), con Half Moon Development Corp.; por el **ESTE,** en dos (2)
> alineaciones que totalizan cincuenta y tres metros con, quinientas noventa y nueve
> milésimas de otro (53.599 m), con la zona marítimo terrestre que la separa del Océano
> Atlántico y en una alineación de dieciséis metros con doscientas treinta y una milésimas
> de otro (16.231 m), con terrenos de la Familia Pirallo; y por el **OESTE,** en dos (2)
> alineaciones que totalizan treinta metros con ciento una milésimas de otro (30.101 m),
> con la desembocadura del Carlo Embarcadero que la separa del Océano Atlántico, en una
> alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565
> m), con terrenos de la Familia Pirallo y en otra alineación de dieciséis metros con
> setecientas cinco milésimas de otro (16.705 m) con terrenos de la Familia Pirallo.--------

> Finca número 4,969 inscrita al folio 223 del tomo 92 de Luquillo, en el Registro
> de la Propiedad de Fajardo.

**Finca Número 5,722**

> **RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma
> irregular, con una cabida de cinco cuerdas con setecientas ochenta y dos milésimas de otra
> (5.782 cuerdas), equivalentes a veintidós mil setecientos veintiséis metros cuadrados con
> seiscientos noventa y siete milésimas de otro (22,726.697 mc), en lindes por el **NORTE,**
> en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientos cuarenta y
> cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en cinco
> alineaciones que totalizan den metros con noventa milésimas de otro (100.090 m), con
> terrenos de la Familia Pirallo, luego en tres alineaciones que totalizan sesenta y seis metros

2

con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en cuatro alineaciones que totalizan sesenta y cinco metros con quinientos treinta y seis milésimas de otro (65.536 m), con la Parcela C dedicada a use público y en una alineación de nueve metros con ochocientas sesenta y seis milésimas de otro (9.866 m), con la extensión de la Calle D existente; por el **SUR**, en cinco (5) alineaciones que totalizan doscientos noventa y un metros con cuarenta y siete milésimas de otro (291.047 m), con Sucesión Biascoechea y en seis alineaciones' que totalizan doscientos veinticuatro metros con seiscientas setenta y tres milésimas de otro (224.673 m), con el Carlo Embarcadero; por el **ESTE**, en una alineación de sesenta y nueve metros con novecientas veintisiete milésimas de otro (69.927 m), con la extensión de la Calle D existente, en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705), con terrenos de la Familia Pirallo, y en otra alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con dichos terrenos de la Familia Pirallo; y por el **OESTE**, en una alineación de nueve metros con novecientas diez milésimas de otro (9.910 m), con el Carlo Embarcadero que la separa del Océano Atlántico.-------------

Finca número 5,722 inscrita al folio 159 del tomo 109 de Luquillo, en el Registro de la Propiedad de Fajardo.

7.    Al 8 de noviembre de 2023, el Deudor y los Garantizadores adeudan solidariamente a Triangle una suma no menor de $2,166,538.21 desglosados como sigue:

| | |
|---|---|
| Balance Principal | $1,026,969.77 |
| Intereses | $597,667.84 |
| Recargos | $25,464.73 |
| Intereses por incumplimiento | $276,768.35 |
| Costas, gastos y honorarios de abogados al 30 de agosto de 2023 | $236,738.02 |
| Seguros | $644.00 |
| Gastos de Valoración | $2,285.50 |
| **Total** | $2,166,538.21 |

8.    Las cantidades establecidas en la *Sentencia* acumulan intereses de conformidad con la Regla 44.3 de Procedimiento Civil, 32 LPRA Ap. V, hasta que se realice el pago total y completo. A esos efectos, la Regla 51.1 de Procedimiento Civil, 32 LPRA Ap. V, dispone lo siguiente:

> La parte a cuyo favor se dicte sentencia podrá ejecutarla mediante el procedimiento fijado en esta Regla 51, **en cualquier tiempo dentro de cinco (5) años de ésta ser firme**. Expirado dicho término, la sentencia podrá ejecutarse mediante una autorización del tribunal, a moción de parte y previa notificación a todas las partes. Si después de registrada la sentencia se suspende su ejecución por una orden o sentencia del tribunal, o por efecto de ley, el tiempo durante el cual ha sido suspendida dicha ejecución deberá excluirse del cómputo de los cinco (5) años durante los cuales podrá expedirse el mandamiento de ejecución. (Énfasis suplido). Regla 51.1 de Procedimiento Civil, 32 LPRA Ap. V., R. 51.1.

9.    La mencionada Regla 51 de Procedimiento Civil, establece que el procedimiento para ejecutar una sentencia u orden para el pago de una suma de dinero y recobrar las costas concedidas por el tribunal será mediante un mandamiento de ejecución. A estos efectos, Triangle aneja con esta moción, el correspondiente proyecto de *Orden y Mandamiento de Ejecución*. Véase, **Anejos A y B.**

3

10.     A la Sentencia por Consentimiento se anejó el acuerdo que pone fin a todas las controversias entre las Partes (en adelante, "Settlement and Release Agreement"). El cual dispone que el acreedor ejercitará la Sentencia por Consentimiento según los términos del *Settlement and Release Agreement* que se encuentran recogidos en este documento.

11.     Por tanto, Triangle ejecutará la *Orden y Mandamiento de Ejecución* en caso de que el Deudor y los Garantizadores incumplan con los términos y condiciones establecidos en la Sección 12 del *Settlement and Release Agreement*. Véase, el **Exhibit I** de la Sentencia por Consentimiento, págs. 8-10.

12.     Conforme a lo antes expuesto, solicitamos a este Honorable Tribunal que, con el propósito de hacer efectiva la *Sentencia* emitida a favor de Triangle, expida la correspondiente *Orden y Mandamiento de Ejecución* dirigido al Alguacil de este Tribunal para que, de conformidad con lo establecido en la Regla 51.3(b) de Procedimiento Civil, 32 LPRA Ap. V, proceda con la ejecución de la Hipoteca y posterior venta en pública subasta de la Finca Número 4,969 y la Finca Número 5,722.

**POR TODO LO CUAL,** Triangle solicita muy respetuosamente de este Honorable Tribunal, que declare CON LUGAR la presente moción, expidiendo una *Orden y un Mandamiento de Ejecución* dirigido al Alguacil de este Honorable Tribunal, a tenor con lo ordenado en la *Sentencia*.

**RESPETUOSAMENTE SOMETIDO.**

En San Juan, Puerto Rico, hoy __ de noviembre de 2023.

**CERTIFICAMOS** haber enviado copia del presente escrito, por correo certificado al Lcdo. Oscar Padilla López, Avenida Luis Muñoz Rivera #109, Suite 6, Guayanilla, PR 00656; al Lcdo. Rubén A. Colón Morales, Lcdo. Roberto Padial Pérez y Lcdo. Rubén J. Lucena Quiles, PO Box 191033, San Juan, PR 00919; al Lcdo. Miguel A. Pérez Vargas, P.O. Box 620315, Oviedo, FL 32762-0315; y al Lcdo. Charles A. Cupril Hernández, Charles A. 356 Calle Fortaleza, Second Floor, San Juan, PR 00901.

**MARINI PIETRANTONI MUÑIZ, LLC**
*Abogados de Triangle Cayman Asset Company*
250 Ponce De León Ave.
Suite 900
San Juan, PR 00918
Tel.: (787) 705-2171

_____
**Luis C. Marini Biaggi**
RUA Núm. 14091
lmarini@mpmlawpr.com

4

**Karena Montes Berríos**
RUA Núm. 19345
kmontes@mpmlawpr.com

**Melanie Pérez Rivera**
RUA Núm. 21125
mperez@mpmlawpr.com

**EXHIBIT E-2**

(Proposed Writ and Order)


(see attached)

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE FAJARDO**

| | |
|---|---|
| TRIANGLE CAYMAN ASSET COMPANY | CIVIL NÚM: NSCI 2015-00410 |
| Demandante, | |
| | SOBRE: |
| v. | SENTENCIA POR |
| | CONSENTIMIENTO |
| AZURE DEVELOPMENT, INC, et al. | |
| Demandado. | |

**ORDEN DE EJECUCIÓN DE SENTENCIA**

Examinado el escrito titulado "*Moción de Ejecución de Sentencia y Para que se Autorice Venta en Pública Subasta*" presentada por Triangle Cayman Asset Company ("Triangle") y surgiendo de dicho escrito y de los autos de este caso que la Sentencia aquí dictada es final y firme, se declara la misma **CON LUGAR** y en su virtud:

Se ordena a la Secretaría de este Tribunal a librar un *Mandamiento de Ejecución* dirigido al Alguacil, requiriéndole vender en pública subasta los inmuebles en cuestión, para la satisfacción de la *Sentencia*.

El precio de remate se destinará, sin dilación alguna, al pago de los créditos hipotecarios de la parte demandante Triangle a tenor con la *Sentencia* dictada. Dicho producto del remate servirá para satisfacer parte de las sumas adeudadas las cuales se detallan en la *Sentencia*.

Se ordena la ejecución de la Hipoteca (según definida más adelante) y posterior venta en pública subasta del título, derechos e intereses de Azure Development, Inc., Cost Control Company, Inc., Alfonso Valdés García y Fideicomiso Valdés- Acevedo (en conjunto todos, "Deudor y Garantizadores") sobre los inmuebles que se describen a continuación:

**I.    Finca Número 4,969**

**RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de doce cuerdas con setecientas catorce milésimas de otra (12.714 cuerdas.), equivalentes a cuarenta y nueve mil novecientos setenta metros cuadrados con seiscientas ochenta y una milésimas de otro (49,970.681 m), en lindes por el **NORTE,** en catorce (14) alineaciones que totalizan cuatrocientos sesenta y cinco metros con setecientas veinticinco milésimas de otro (465.725 m), con la zona marítimo terrestre que la separa del Océano Atlántico; por el **SUR,** en una alineación de nueve metros con trescientas ochenta y tres milésimas de otro (9.383 m), con el Carlo Embarcadero, en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientas cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en otras cinco (5) alineaciones que totalizan cien metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en otras tres (3) alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la

1

Familia Pirallo, luego en una alineación de dieciséis metros con cuatrocientas sesenta milésimas de otro (16.460 m), con terrenos de la Familia Pirallo y en una alineación de ciento cuarenta y seis metros con novecientos cincuenta y seis milésimas de otro (146.956 m), con Half Moon Development Corp.; por el **ESTE,** en dos (2) alineaciones que totalizan cincuenta y tres metros con, quinientas noventa y nueve milésimas de otro (53.599 m), con la zona marítimo terrestre que la separa del Océano Atlántico y en una alineación de dieciséis metros con doscienta treinta y una milésimas de otro (16.231 m), con terrenos de la Familia Pirallo; y por el **OESTE,** en dos (2) alineaciones que totalizan treinta metros con ciento una milésimas de otro (30.101 m), con la desembocadura del Carlo Embarcadero que la separa del Océano Atlántico, en una alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con terrenos de la Familia Pirallo y en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705 m) con terrenos de la Familia Pirallo.--------

La Finca Número 4,969 consta inscrita al folio 223 del tomo 92 de Luquillo, Registro de la Propiedad de Fajardo. La titularidad de la Finca Número 4,969 consta inscrita a favor de Azure Development Inc.

II.    **Finca número 5,722 inscrita en el Registro de la Propiedad de Fajardo al folio 159 del tomo 109 de Luquillo, la cual se describe como sigue:**

**RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de cinco cuerdas con setecientas ochenta y dos milésimas de otra (5.782 cuerdas), equivalentes a veintidós mil setecientos veintiséis metros cuadrados con seiscientos noventa y siete milésimas de otro (22,726.697 mc), en lindes por el **NORTE,** en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientos cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en cinco alineaciones que totalizan den metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en tres alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en cuatro alineaciones que totalizan sesenta y cinco metros con quinientos treinta y seis milésimas de otro (65.536 m), con la Parcela C dedicada a use público y en una alineación de nueve metros con ochocientas sesenta y seis milésimas de otro (9.866 m), con la extensión de la Calle D existente; por el **SUR,** en cinco (5) alineaciones que totalizan doscientos noventa y un metros con cuarenta y siete milésimas de otro (291.047 m), con Sucesión Biascoechea y en seis alineaciones' que totalizan doscientos veinticuatro metros con seiscientas setenta y tres milésimas de otro (224.673 m), con el Carlo Embarcadero; por el **ESTE,** en una alineación de sesenta y nueve metros con novecientas veintisiete milésimas de otro (69.927 m), con la extensión de la Calle D existente, en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705), con terrenos de la Familia Pirallo, y en otra alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con dichos terrenos de la Familia Pirallo; y por el **OESTE,** en una alineación de nueve metros con novecientas diez milésimas de otro (9.910 m), con el Carlo Embarcadero que la separa del Océano Atlántico.-------------

La Finca Número 5,722 consta inscrita al folio 159 del tomo 109 de Luquillo, en el Registro de la Propiedad de Fajardo. La titularidad de la Finca Número 5,722 consta inscrita a favor de Azure Development Inc.

En específico, la hipoteca que grava las Fincas Número 4,969 y 5,722 y que Triangle interesa ejecutar se describe a continuación:

Hipoteca en garantía de un pagaré a favor de BBVA, o a su orden, por la suma de $1,750,000.00, vencedor a la presentación, con interés al 14% anual desde la fecha del otorgamiento hasta que el contrato de préstamo sea pagado en su totalidad. En caso de que el portador tenga que recurrir en un procedimiento judicial para ejecución hipotecaria o cobro de dinero el deudor hipotecario se compromete a

pagar una suma adicional de $175,000.00 por concepto de costas, gastos y honorarios de abogado; hipoteca constituida mediante la escritura número 132, otorgada el 21 de noviembre de 2003 ante el Notario Público Ernesto González Piñero, en San Juan, Puerto Rico, e inscrita , e inscrita el 2 de diciembre de 2003 en el Registro de la Propiedad de Fajardo (en adelante la "Hipoteca").

El tipo mínimo para la primera subasta de la Hipoteca anteriormente descrita es la suma de **$1,750,000.00** de los cuales la Finca 4,969 responde por **$1,697,500.00** y la Finca 5,722 responde por **$52,500.00**. Si no se produjese remate ni adjudicación en la primera subasta, en la segunda subasta que se celebre servirá de tipo mínimo las dos terceras (2/3) partes de la cantidad pactada para la primera subasta. Si no se produjese remate ni adjudicación en la segunda subasta, servirá como tipo mínimo para la tercera subasta la mitad (1/2) de la cantidad pactada para la primera subasta.



Conforme a todo lo anterior, se ordena a Triangle a notificar la venta pública al Deudor y Garantizadores, así como a los acreedores con créditos preferentes o posteriores inscritos, si alguno, conforme a las disposiciones aplicables de la Ley de Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210 de 8 de diciembre de 2015, según enmendada, y su Reglamento y la Regla 51.7 de las Reglas de Procedimiento Civil de Puerto Rico de 2009, 32 LPRA Ap. V, R. 51.7.

Se ordena al Alguacil del Tribunal de Fajardo a que revise y acredite los documentos que evidencien el cumplimiento de Triangle con las disposiciones de la Regla 51.7 de Procedimiento Civil, 32 LPRA Ap. V, al comparecer a la primera subasta señalada, en cuanto la Finca Número 4,969 y la Finca Número 5,722.

El Tribunal ha reconocido que el acreedor ejecutante, Triangle, ha cumplido con las disposiciones del Art. 98 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico y, por tanto, tiene el derecho a licitar en las subastas.

Por razón de que la *Sentencia* es final y firme, se ordena la ejecución de la misma y se autoriza la ejecución de la Hipoteca antes descrita, y la venta en pública subasta de la Finca Número 4,969 y la Finca Número 5,722.

El Alguacil de este Tribunal ejecutará la orden de venta del inmueble y teniendo ésta el efecto de un auto posesorio pondrá al comprador en cada subasta, en posesión material de la propiedad vendida dentro del plazo de veinte (20) días contados desde la venta, de conformidad con las disposiciones de las Reglas de Procedimiento Civil. Además, se ordena al Alguacil que para darle posesión material al adjudicatario, en los casos que fuere necesario, proceda al

lanzamiento de la parte demandada de las propiedades subastadas, quedando autorizado el Alguacil de este Tribunal a tomar todas las medidas necesarias, incluyendo pero no limitadas a, forzar puertas, romper cerraduras o candados, sacar propiedad personal o mueble y llevar a cabo cualquier otro acto o tomar cualquier otra medida necesaria para dar fiel cumplimiento a esta orden de lanzamiento, sin más requisito para ello y sin necesidad de orden posterior de este Tribunal.

**REGÍSTRESE Y NOTIFÍQUESE.**

En Fajardo, Puerto Rico a ___ de _____ de 2023.

_____

Juez(a) Superior



**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE FAJARDO**

| | |
|---|---|
| TRIANGLE CAYMAN ASSET COMPANY | CIVIL NÚM: NSCI 2015-00410 |
| Demandante, | |
| v. | SOBRE:<br>SENTENCIA POR<br>CONSENTIMIENTO |
| AZURE DEVELOPMENT, INC, et al. | |
| Demandado. | |

**MANDAMIENTO DE EJECUCIÓN DE SENTENCIA**

ESTADOS UNIDOS DE AMÉRICA,                    )
EL PRESIDENTE DE LOS ESTADOS UNIDOS,   )   SS.
EL ESTADO LIBRE ASOCIADO DE PUERTO RICO   )

AL ALGUACIL DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE FAJARDO:

POR CUANTO con fecha de ___ de _____ de 2023 se dictó Sentencia ("la Sentencia") en el caso de epígrafe conforme a los términos de una solicitud de sentencia por consentimiento ("la Sentencia por Consentimiento"), suscrita el 22 de noviembre de 2023 y presentada el mismo día.

POR CUANTO la parte dispositiva de dicha *Sentencia por Consentimiento*, según incorporada a la *Sentencia*, entre otros extremos, condenó a Azure Development, Inc., Cost Control Company, Inc., Alfonso Valdés García y Fideicomiso Valdés- Acevedo (en conjunto todos, "Deudor y Garantizadores"), y determinó que estos adeudaban solidariamente a Triangle Cayman Asset Company ("Triangle") la suma de $2,166,538.21, al 8 de noviembre de 2023.

POR CUANTO la parte dispositiva de dicha *Sentencia por Consentimiento*, según incorporada a la *Sentencia*, también ordenó la ejecución y correspondiente venta en pública subasta de la la Finca Número 4,969 y la Finca Número 5,722, según allí definidas, en satisfacción de la *Sentencia*.

POR CUANTO la referida *Sentencia* advino final y firme.

POR CUANTO el __ de _____ de 2023, Triangle presentó una "*Moción de Ejecución de Sentencia y para que se Autorice Venta en Pública Subasta*".

POR CUANTO el _____, el Honorable Tribunal dictó una "*Orden de Ejecución de Sentencia*" mediante la cual ordenó a esta Secretaría a librar un "*Mandamiento de Ejecución*" dirigido al Alguacil para que proceda a vender en pública subasta las propiedades

inmuebles descritas en dicha Orden de Ejecución de Sentencia, la cual literalmente reza de la
siguiente forma:

### ORDEN DE EJECUCIÓN DE SENTENCIA

Examinado el escrito titulado "*Moción de Ejecución de Sentencia y Para que se Autorice
Venta en Pública Subasta*" presentada por Triangle Cayman Asset Company ("Triangle") y
surgiendo de dicho escrito y de los autos de este caso que la *Sentencia* aquí dictada es final y firme,
se declara la misma **CON LUGAR** y en su virtud:

Se ordena a la Secretaría de este Tribunal a librar un "*Mandamiento de Ejecución*" dirigido
al Alguacil, requiriéndole vender en pública subasta los inmuebles en cuestión, para la satisfacción
de la *Sentencia*.

El precio de remate se destinará, sin dilación alguna, al pago de los créditos hipotecarios
de la parte demandante Triangle a tenor con la *Sentencia* dictada. Dicho producto del remate
servirá para satisfacer parte de las sumas adeudadas las cuales se detallan en la *Sentencia*.

Se ordena la ejecución de la Hipoteca (según definida más adelante) y posterior venta en
pública subasta del título, derechos e intereses de Azure Development, Inc., Cost Control
Company, Inc., Alfonso Valdés García y Fideicomiso Valdés- Acevedo (en conjunto todos,
"Deudor y Garantizadores") sobre los inmuebles que se describen a continuación:

I.      **Finca Número 4,969**

**RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de
forma irregular, con una cabida de doce cuerdas con setecientas catorce milésimas
de otra (12.714 cuerdas.), equivalentes a cuarenta y nueve mil novecientos setenta
metros cuadrados con seiscientas ochenta y una milésimas de otro (49,970.681 m),
en lindes por el **NORTE,** en catorce (14) alineaciones que totalizan cuatrocientos
sesenta y cinco metros con setecientas veinticinco milésimas de otro (465.725 m),
con la zona marítimo terrestre que la separa del Océano Atlántico; por el **SUR,** en
una alineación de nueve metros con trescientas ochenta y tres milésimas de otro
(9.383 m), con el Carlo Embarcadero, en cuatro (4) alineaciones que totalizan
doscientos dos metros con seiscientas cuarenta y cinco milésimas de otro (202.645
m), con terrenos de la Familia Pirallo, luego en otras cinco (5) alineaciones que
totalizan cien metros con noventa milésimas de otro (100.090 m), con terrenos de la
Familia Pirallo, luego en otras tres (3) alineaciones que totalizan sesenta y seis
metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la
Familia Pirallo, luego en una alineación de dieciséis metros con cuatrocientas
sesenta milésimas de otro (16.460 m), con terrenos de la Familia Pirallo y en una
alineación de ciento cuarenta y seis metros con novecientos cincuenta y seis milésimas
de otro (146.956 m), con Half Moon Development Corp.; por el **ESTE,** en dos (2)
alineaciones que totalizan cincuenta y tres metros con, quinientas noventa y nueve
milésimas de otro (53.599 m), con la zona marítimo terrestre que la separa del Océano
Atlántico y en una alineación de dieciséis metros con doscientas treinta y una milésimas
de otro (16.231 m), con terrenos de la Familia Pirallo; y por el **OESTE,** en dos (2)
alineaciones que totalizan treinta metros con ciento una milésimas de otro (30.101 m),
con la desembocadura del Carlo Embarcadero que la separa del Océano Atlántico, en una
alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565

m), con terrenos de la Familia Pirallo y en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705 m) con terrenos de la Familia Pirallo.--------

La Finca Número 4,969 consta inscrita al folio 223 del tomo 92 de Luquillo, Registro de la Propiedad de Fajardo. La titularidad de la Finca Número 4,969 consta inscrita a favor de Azure Development Inc.

II.     **Finca número 5,722 inscrita en el Registro de la Propiedad de Fajardo al folio 159 del tomo 109 de Luquillo, la cual se describe como sigue:**

**RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de cinco cuerdas con setecientas ochenta y dos milésimas de otra (5.782 cuerdas), equivalentes a veintidós mil setecientas veintiséis metros cuadrados con seiscientos noventa y siete milésimas de otro (22,726.697 mc), en lindes por el **NORTE,** en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientos cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en cinco alineaciones que totalizan den metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en tres alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en cuatro alineaciones que totalizan sesenta y cinco metros con quinientos treinta y seis milésimas de otro (65.536 m), con la Parcela C dedicada a use público y en una alineación de nueve metros con ochocientas sesenta y seis milésimas de otro (9.866 m), con la extensión de la Calle D existente; por el **SUR,** en cinco (5) alineaciones que totalizan doscientos noventa y un metros con cuarenta y siete milésimas de otro (291.047 m), con Sucesión Biascoechea y en seis alineaciones' que totalizan doscientos veinticuatro metros con seiscientas setenta y tres milésimas de otro (224.673 m), con el Carlo Embarcadero; por el **ESTE,** en una alineación de sesenta y nueve metros con novecientas veintisiete milésimas de otro (69.927 m), con la extensión de la Calle D existente, en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705), con terrenos de la Familia Pirallo, y en otra alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con dichos terrenos de la Familia Pirallo; y por el **OESTE,** en una alineación de nueve metros con novecientas diez milésimas de otro (9.910 m), con el Carlo Embarcadero que la separa del Océano Atlántico.-------------

La Finca Número 5,722 consta inscrita al folio 159 del tomo 109 de Luquillo, en el Registro de la Propiedad de Fajardo. La titularidad de la Finca Número 5,722 consta inscrita a favor de Azure Development Inc.

En específico, la hipoteca que grava la Finca Número 4,969 y la Finca Número 5,722, que Triangle interesa ejecutar se describe a continuación:

Hipoteca en garantía de un pagaré a favor de BBVA, o a su orden, por la suma de $1,750,000.00, vencedero a la presentación, con interés al 14% anual desde la fecha del otorgamiento hasta que el contrato de préstamo sea pagado en su totalidad. En caso de que el portador tenga que recurrir en un procedimiento judicial para ejecución hipotecaria o cobro de dinero el deudor hipotecario se compromete a pagar una suma adicional de $175,000.00 por concepto de costas, gastos y honorarios de abogado; hipoteca constituida mediante la escritura número 132, otorgada el 21 de noviembre de 2003 ante el Notario Público Ernesto González Piñero, en San Juan, Puerto Rico, e inscrita el 2 de diciembre de 2003 en el Registro de la Propiedad de Fajardo (en adelante la "Hipoteca").

El tipo mínimo para la primera subasta de la Hipoteca anteriormente descrita es la suma de $1,750,000.00 de los cuales la Finca 4,969 responde por $1,697,500.00 y la Finca 5,722 responde por $52,500.00. Si no se produjese remate ni adjudicación en la primera subasta, en la segunda

subasta que se celebre servirá de tipo mínimo las dos terceras (2/3) partes de la cantidad pactada para la primera subasta. Si no se produjese remate ni adjudicación en la segunda subasta, servirá como tipo mínimo para la tercera subasta la mitad (1/2) de la cantidad pactada para la primera subasta.

Conforme a todo lo anterior, se ordena a Triangle a notificar la venta pública al Deudor y Garantizadores, así como a los acreedores con créditos preferentes o posteriores inscritos, si alguno, conforme a las disposiciones aplicables de la Ley de Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico, Ley Núm. 210 de 8 de diciembre de 2015, según enmendada, y su Reglamento y la Regla 51.7 de las Reglas de Procedimiento Civil de Puerto Rico de 2009, 32 LPRA Ap. V, R. 51.7.

Se ordena al Alguacil del Tribunal de Fajardo a que revise y acredite los documentos que evidencien el cumplimiento de Triangle con las disposiciones de la Regla 51.7 de Procedimiento Civil, 32 LPRA Ap. V, al comparecer a la primera subasta señalada, en cuanto la Finca Número 4,969 y la Finca Número 5,722.

El Tribunal ha reconocido que el acreedor ejecutante, Triangle, ha cumplido con las disposiciones del Art. 98 de la Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico y, por tanto, tiene el derecho a licitar en las subastas.

Por razón de que la *Sentencia* es final y firme, se ordena la ejecución de la misma y se autoriza la ejecución de la Hipoteca antes descrita, y la venta en pública subasta de la Finca Número 4,969 y la Finca Número 5,722.

El Alguacil de este Tribunal ejecutará la orden de venta del inmueble y teniendo ésta el efecto de un auto posesorio pondrá al comprador en cada subasta, en posesión material de la propiedad vendida dentro del plazo de veinte (20) días contados desde la venta, de conformidad con las disposiciones de las Reglas de Procedimiento Civil. Además, se ordena al Alguacil que para darle posesión material al adjudicatario, en los casos que fuere necesario, proceda al lanzamiento de la parte demandada de las propiedades subastadas, quedando autorizado el Alguacil de este Tribunal a tomar todas las medidas necesarias, incluyendo pero no limitadas a, forzar puertas, romper cerraduras o candados, sacar propiedad personal o mueble y llevar a cabo cualquier otro acto o tomar cualquier otra medida necesaria para dar fiel cumplimiento a esta orden de lanzamiento, sin más requisito para ello y sin necesidad de orden posterior de este Tribunal.

4

**REGÍSTRESE Y NOTIFÍQUESE.**

En Fajardo, Puerto Rico a ____ de _____ de 2023.

_____

Juez(a) Superior

POR TANTO, se requiere de usted, Alguacil, que efectúe las notificaciones requeridas y proceda con la ejecución y venta en pública subasta de la Finca Número 4,969 y la Finca Número 5,722 a las cuales se hace referencia en la Orden de Ejecución de Sentencia anteriormente transcrita.

Por orden del/la Honorable _____, Juez de este Tribunal, expido el presente Mandamiento de Ejecución bajo mi firma y sello del Tribunal en Fajardo, Puerto Rico, a _____ de 2023.

_____

Secretaria/o

_____

Sub-Secretaria/o

5

**EXHIBIT F**

(<u>Joint Motion to Dismiss Appeal</u>)


(see attached)

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL SUPREMO DE PUERTO RICO**

| | |
|---|---|
| TRIANGLE CAYMAN ASSET COMPANY, | TS NÚM.: AC20230084 |
| *Apelada- Demandante* | |
| v. | TA NÚM.: KLAN202300516 |
| AZURE DEVELOPMENT, INC, et al. | CIVIL NÚM.: NSCI201500410 |
| *Apelantes- Demandados* | SOBRE: EJECUCIÓN DE HIPOTECA |



**<u>MOCIÓN CONJUNTA DE DESISTIMIENTO VOLUNTARIO CON PERJUICIO</u>**

**AL HONORABLE TRIBUNAL:**

**COMPARECE** la parte apelada-demandante Triangle Cayman Asset Company (la Parte Apelada"), y los apelantes-demandados Azure Development, Inc., Cost Control Company, Inc., Alfonso Valdés García, y Fideicomiso Valdés-Acevedo ( la "Parte Apelante" y en conjunto con la Parte Apelada "las Partes"), por conducto de sus respectivas representaciones legales que suscriben y respetuosamente solicitan a este Honorable Tribunal que tome conocimiento que las Partes han concretado un acuerdo de desistimiento que dispone en su totalidad y con perjuicio de las controversias de epígrafe, por tanto exponen y solicitan:

1. El 2 de octubre de 2023, la parte apelante-demandada acudió a este Honorable Tribunal mediante un recurso de *apelación* solicitando la revocación de la Sentencia emitida por el Tribunal de Apelaciones el 17 de agosto de 2023.

2. Informamos mediante la presente que luego de numerosas gestiones y esfuerzos transaccionales, llevados a cabo de buena fe y con la intención de resolver todos los asuntos pendientes en este caso, las Partes han suscrito un *Acuerdo Transaccional* ("*el Acuerdo*") que, en principio, pone fin y resuelve las controversias existentes entre las Partes.

3. Conforme a la Regla 39.1 de Procedimiento Civil, 32 LPRA Ap. V., R.39, se informa a este Honorable Tribunal que la parte Apelante ha acordado desistir de todas las reclamaciones pendientes, según se establece en el *Acuerdo Transaccional*.

4. Lo anterior significa que este ilustre Foro ya no tiene una controversia justiciable que atender debido a que las Partes han acordado desestimar esta *apelación*.

**POR TODO LO CUAL** la Parte Apelada Triangle Cayman Asset Company, y los Apelantes Azure Development, Inc., Cost Control Company, Inc., Alfonso Valdés García, y Fideicomiso Valdés- Acevedo, respetuosamente solicitan de este Honorable Tribunal que tome

1

conocimiento del desistimiento con perjuicio de esta apelación por ambas partes y emita una orden

a esos efectos decretando el archivo **con perjuicio** del recurso de apelación presentado

(AC20230084).

**RESPETUOSAMENTE SOMETIDA.**

En San Juan, Puerto Rico, hoy 22 de noviembre de 2023.

**| M | P | M | MARINI PIETRANTONI MUÑIZ LLC**
250 Avenida Ponce de León, Suite 900
San Juan, Puerto Rico 00917
Tel: 787.705.2171
Fax: 787.936.7494

Luis C. Marini-Biaggi
RUA Núm. 14091
lmarini@mpmlawpr.com

Karina Montes Berríos
RUA Núm. 19345
kmontes@mpmlawpr.com

Melanie Pérez Rivera
RUA Núm. 21125
mperez@mpmlawpr.com

*Abogados de Triangle Cayman Asset Company*

**CHARLES A. CUPRILL, PSC LAW OFFICES**
356 Calle Fortaleza, 2do Piso
San Juan, PR 00901

Charles A. Cuprill Hernández
RUA Núm. 3198
Tel. 787-977-0515
Fax. 787-977-0518
ccuprill@cuprill.com

Oscar L. Padilla López
RUA Núm. 9110
Cond. San Martín Suite 704
Ave. Ponce de León 1605
San Juan, PR 00909
Tel. 787-981-7474
Cel. 787-449-2458
opadillalopez@yahoo.com

*Abogados de Azure Developments Inc.*

**LEGAL CORP**
P.O. Box 191033
San Juan, PR 00919
Tel. 787-294-0750
Fax. 787-294-0753

Rubén Colón Morales
RUA Núm. 9939
rcolon@legalcooppr.com

Roberto Padial Pérez
RUA Núm. 13155
rpadial@legalcooppr.com

Rubén I. Lozena Quiles
RUA Núm. 15873
rlozena@legalcooppr.com

*Abogados de Alfonso Valdés García y Cost Control Company Inc.*

Miguel A. Pérez Vargas
RUA Núm. 9578
P.O. Box 620315
Oviedo, FL 32762-0315
Tel. 787-473-7352

2

**EXHIBIT G**

(Joint Motion to Substitute Party)

(see attached)

29

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE FAJARDO**

| | |
|---|---|
| TRIANGLE CAYMAN ASSET COMPANY, | CIVIL NÚM.: NSCI 2015-00410 |
| *Demandante* | |
| v. | SOBRE: |
| AZURE DEVELOPMENT, INC, *et al.* | EJECUCIÓN DE HIPOTECA |
| *Demandados.* | |

<u>**MOCIÓN PARA SUSTITUIR A LA PARTE DEMANDANTE**</u>

**AL HONORABLE TRIBUNAL:**

**COMPARECE** Triangle REO PR Corp ("Triangle REO"), por conducto de la representación legal que suscribe, y muy respetuosamente expone y solicita:

1.  El 28 de septiembre de 2015, Triangle Cayman Asset Company ("Triangle"), adquirió de Oriental Bank ("Oriental"), las acreencias e instrumentos negociables objetos del caso de epígrafe.

2.  Así, el 28 de octubre de 2015, Triangle presentó una Moción para solicitar sustitución de la parte demandante en el caso, de Oriental por Triangle ("Moción de Sustitución").

3.  Consecuentemente, este Honorable Tribunal autorizó la Moción de Sustitución de Triangle mediante la Orden de 25 de noviembre de 2015, notificada el 10 de diciembre de 2015.

4.  El 22 de noviembre de 2023 la demandante Triangle y los demandados Azure Development, Inc., Cost Control Company, Inc., Alfonso Valdés García y Fideicomiso Valdés-Acevedo (en conjunto, "los Demandados") radicaron una Sentencia por Consentimiento tras haber logrado un acuerdo transaccional, solicitando a este distinguido Foro que dictara *Sentencia* en contra de los Demandados y a favor de Triangle. Consistente con ello, este Honorable Tribunal dictó *Sentencia* el __ de noviembre de 2023, notificada el __ de noviembre de 2023 mediante la cual declaró ha lugar la Sentencia por Consentimiento conforme los términos y condiciones allí detallados.

5.  Posteriormente, y de conformidad con la Sentencia por Consentimiento Triangle cedió a Triangle REO todo su interés como acreedor de los derechos y remedios que le fueron concedidos por la *Sentencia*, entre ellos:

> **(i)** ejecutar esta Sentencia por Consentimiento, y **(ii)** comenzar un procedimiento de ejecución de la Colateral dada en prenda o gravada a favor del Acreedor en virtud de los

1

Documentos de Financiamiento descritos en esta Sentencia por Consentimiento, como pago total y absoluto de todas las reclamaciones existentes contra el Deudor y los Garantizadores.

Véase, acápite 42 de la Sentencia por Consentimiento.

6. Como resultado de lo anterior, Triangle endosó a la orden de Triangle REO, el pagaré objeto de la hipoteca cuya ejecución se autorizó mediante la *Sentencia* dictada por este Tribunal el ___ de noviembre de 2023. Véase, **Anejo A.**

7. Por consiguiente, Triangle REO es actualmente la verdadera parte con interés en continuar con los procedimientos.

8. Se hace constar que Triangle REO PR Corp., es una corporación debidamente organizada y existente bajo las leyes del Estado Libre Asociado de Puerto Rico, tiene su oficina designada en la Metro Office Park #7, Suite 204, Guaynabo, Puerto Rico, 00968 y su dirección postal es la misma. Además, se hace constar que el nombre y dirección postal del administrador ("servicer") de los activos adquiridos por Triangle REO es Capital Crossing Puerto Rico, LLC, Avenida Ponce De León #221, Piso 12, Oficina 1204, San Juan, Puerto Rico 00917.



9. En vista de ello, se solicita muy respetuosamente de este Honorable Tribunal que tome conocimiento de lo anterior y emita una orden sustituyendo a Triangle por Triangle REO como parte demandante, conforme dispone la Regla 22.3 de Procedimiento Civil, 32 LPRA Ap. V., sujeto y sin renuncia o perjuicio a las defensas, derechos y protecciones de Triangle REO.



**POR TODO LO CUAL** Triangle REO respetuosamente solicita de este Honorable Tribunal, que: **(i)** tome conocimiento de lo anterior; **(ii)** excluya a Triangle como parte demandante en el pleito de autos; y **(iii)** emita una orden autorizando la sustitución de Triangle REO como parte demandante.

**RESPETUOSAMENTE SOMETIDA**.

En San Juan, Puerto Rico, hoy 22 de noviembre de 2023.

**CERTIFICAMOS** haber enviado copia del presente escrito, por correo certificado al Lcdo. Oscar Padilla López, Avenida Luis Muñoz Rivera #109, Suite 6, Guayanilla, PR 00656; al Lcdo. Rubén A. Colón Morales, Lcdo. Roberto Padial Pérez y Lcdo. Rubén J. Lucena Quiles, PO Box 191033, San Juan, PR 00919; al Lcdo. Miguel A. Pérez Vargas, P.O. Box 620315, Oviedo, FL 32762-0315; y al Lcdo. Charles A. Cupril Hernández, Charles A. 356 Calle Fortaleza, Second Floor, San Juan, PR 00901.

**MARINI PIETRANTONI MUÑIZ, LLC**
*Abogados de Triangle Cayman Asset Company y
Triangle REO PR Corp.*
250 Ponce De León Ave.
Suite 900
San Juan, PR 00918
Tel.: (787) 705-2171


**Luis C. Marini Biaggi**
RUA Núm. 14091
lmarini@mpmlawpr.com

**Karena Montes Berríos**
RUA Núm. 19345
kmontes@mpmlawpr.com

**Melanie Pérez Rivera**
RUA Núm. 21125
mperez@mpmlawpr.com

**EXHIBIT H**

(Judgment by Consent)

(see attached)

30

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE FAJARDO**

| | |
|---|---|
| TRIANGLE CAYMAN ASSET COMPANY,<br><br>*Demandante*<br><br>v.<br><br>AZURE DEVELOPMENT, INC, et al.<br><br>*Demandados* | CIVIL NÚM.: NSCI 2015-00410<br><br><br><br>SOBRE: EJECUCIÓN DE HIPOTECA; SENTENCIA POR CONSENTIMIENTO |

**MOCIÓN PARA SOMETER SENTENCIA POR CONSENTIMIENTO**

**AL HONORABLE TRIBUNAL:**

**COMPARECE** Triangle Cayman Asset Company, Azure Development, Inc., Cost Control Company, Inc., Alfonso Valdés García y Fideicomiso Valdés-Acevedo (en conjunto "las Partes"), mediante sus respectivas representaciones legales, respetuosamente exponen, y solicitan:

1.     Las Partes involucradas en el presente caso informan que han llegado a un acuerdo que pone fin a todas y cada una de las controversias de epígrafe. Dicho acuerdo se encuentra recogido en la Sentencia por Consentimiento que se aneja a esta moción como **Anejo 1**.

2.     Debido a la localización y la residencia de algunas de las Partes, la Sentencia por Consentimiento fue firmada en contrapartes las cuales, todas en conjunto, se considerarán un original y constituirán un mismo y solo documento.



3.     En consideración de lo anterior, respetuosamente se solicita que se dé por sometida la Sentencia por Consentimiento anejada como **Anejo 1** y que este Tribunal proceda a dictar los remedios allí solicitados, dando cumplimiento a los acuerdos vertidos conforme la voluntad de las Partes.

**POR TODO LO CUAL**, Las Partes respetuosamente solicitan que este Honorable Tribunal **(i)** tome conocimiento de lo antes expuesto y **(ii)** proceda a dictar Sentencia por Consentimiento conforme la solicitud anejada como **Anejo 1** de esta moción.

**RESPETUOSAMENTE SOMETIDA.**

En San Juan, Puerto Rico hoy 22 de noviembre de 2023.

**CERTIFICAMOS** que en el día de hoy se notificó este escrito por correo electrónico a todos los abogados de récord del pleito de epígrafe, a las direcciones que aparecen en récord.

| **M | P | M | MARINI PIETRANTONI MUÑIZ LLC** | **CHARLES A. CUPRILL, PSC LAW OFFICES** |
|---|---|

**M | P | M | MARINI PIETRANTONI MUÑIZ LLC**
250 Avenida Ponce de León, Suite 900
San Juan, Puerto Rico 00917
Tel: 787.705.2171
Fax: 787.936.7494

Luis C. Marini-Biaggi
RUA Núm. 14091
lmarini@mpmlawpr.com

Karena Montes Berrios
RUA Núm. 19345
kmontes@mpmlawpr.com

Melanie Pérez Rivera
RUA Núm. 21125
mperez@mpmlawpr.com

*Abogados de Triangle Cayman Asset Company*



**CHARLES A. CUPRILL, PSC LAW OFFICES**
356 Calle Fortaleza, 2do Piso
San Juan, PR 00901

Charles A. Cuprill Hernández
RUA Núm. 3198
Tel. 787-977-0515
Fax. 787-977-0518
ccuprill@cuprill.com

Oscar L. Padilla López
RUA Núm. 9110
Cond. San Martín Suite 704
Ave. Ponce de León 1605
San Juan, PR 00909
Tel. 787-981-7474
Cel. 787-449-2458
ospadillalopez@yahoo.com

*Abogados de Azure Development Inc.*

**LEGAL CORP**
P.O. Box 191033
San Juan, PR 00919
Tel. 787-294-0750
Fax. 787-294-0753

Rubén Colón Morales
RUA Núm. 9939
rcolon@legalcorppr.com

Roberto Padial Pérez
RUA Núm. 13155
rpadial@legalcorppr.com

Rubén J. Lucena Quiles
RUA Núm. 15873
rlucena@legalcorppr.com

*Abogados de Alfonso Valdés García y Cost Control Company Inc.*

Miguel A. Pérez Vargas
RUA Núm. 9578
P.O. Box 620315
Oviedo, FL 32762-0315
Tel. 787-473-7352
perezvargasmiguel@gmail.com

*Abogado del Fideicomiso Valdés- Acevedo*

**ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE PRIMERA INSTANCIA
SALA SUPERIOR DE FAJARDO**

| | |
|---|---|
| TRIANGLE CAYMAN ASSET COMPANY, | CIVIL NÚM.: NSCI 2015-00410 |
| *Demandante* | |
| v. | |
| AZURE DEVELOPMENT, INC, et al. | SOBRE: EJECUCIÓN DE HIPOTECA; SENTENCIA POR CONSENTIMIENTO |
| *Demandados* | |

<u>**SENTENCIA POR CONSENTIMIENTO**</u>

**AL HONORABLE TRIBUNAL:**

**COMPARECE** Triangle Cayman Asset Company (en adelante, "Acreedor"), Azure

Development, Inc. (el "Deudor"), Cost Control Company, Inc., Alfonso Valdés García y

Fideicomiso Valdés- Acevedo (los "Garantizadores" en conjunto "las Partes"), mediante sus

respectivas representaciones legales, respetuosamente, exponen, alegan y solicitan:

**I.    <u>INTRODUCCIÓN</u>**

El Deudor y los Garantizadores comparecen para solicitar, bajo juramento, que este

Honorable Tribunal dicte Sentencia por Consentimiento en contra de ellos y a favor del Acreedor,

como comprador y sucesor en interés de ciertos activos de Oriental Bank (el "Acreedor Original"),

incluyendo, pero no limitado a la deuda objeto del presente litigio y el Pagaré hipotecario por la

suma principal de un millón setecientos cincuenta mil dólares ($1,750,000.00), más los intereses

y recargos que continúen acumulándose hasta el pago total y completo de la obligación.

Al día de hoy, el Contrato de Préstamo (según dicho término se define más adelante) está

vencido y es pagadero al Acreedor. El Deudor y los Garantizadores han incumplido con sus

obligaciones bajo el Contrato de Préstamo, incluyendo, pero no limitado con, la falta de pago de

los plazos mensuales de principal e intereses bajo los mismos. Además, el Deudor y los

Garantizadores reconocen y afirman que han incumplido sus obligaciones bajo el Contrato de

préstamo. En virtud de lo anterior, el Deudor y los Garantizadores respetuosamente solicitan a este

Honorable Tribunal que dicte Sentencia por Consentimiento en su contra y a favor del Acreedor,

por las razones que se esbozan a continuación.

**II.    <u>LAS PARTES</u>**



1.    Triangle Cayman Asset Company, es una compañía exenta ("exempted company") debidamente organizada y existente bajo las leyes de las Islas Caimán, tiene su oficina designada en Maples Corporate Services Limited, PO Box 309, Ugland Haouse, Grand Cayman, KY1-1104, Cayman Islands y su oficina principal de negocios está localizada en 301 Commerce Street, Suite 3300, Fort Worth, Texas 76102. Además, se hace constar que el nombre y dirección postal del administrador ("servicer") en el Estado Libre Asociado de Puerto Rico de los activos adquiridos por Triangle Cayman es Capital Crossing Puerto Rico, LLC, Avenida Ponce de León #221, Piso 12, Oficina 1204, San Juan, Puerto Rico 00917. Con número de teléfono 787-545-8063.

2.    El Deudor Azure Development, Inc. es una corporación organizada y existente al amparo de las leyes del Estado Libre Asociado de Puerto Rico, con dirección física en la Ave. Ponce de León Edificio Esquire, Piso 5, Suite 502, Calle Vela, Hato Rey, PR 00918 y postal en PO BOX 192095 San Juan, PR 00919-2095. Con número de teléfono 787-281-6730.

3.    El co-demandado Alfonso Valdés García es mayor edad, soltero y vecino de Guaynabo, Puerto Rico con dirección física en la Urbanización San Patricio Ave. Rivera Ferrer Núm. 2 Guaynabo, PR 00969 y postal en PO BOX 192095 San Juan, PR 00919-2095. Con número de teléfono 787-281-6730.

4.    El co-demandado Cost Control Company, Inc. es una corporación organizada y existente al amparo de las leyes del Estado Libre Asociado de Puerto Rico, con dirección física en la Avenida Ponce de León Edificio Esquire Piso 5 Suite 501 Calle Vela Hato Rey, PR 00918 y postal en el PO BOX 192095 San Juan, PR 00919-2095. Con número de teléfono 787-281-6730.

5.    El co-demandado Fideicomiso Valdés-Acevedo es un Fideicomiso irrevocable, creado mediante la Escritura Núm. 2 de Constitución de Fideicomiso fechada el 8 de abril de 2008 ante el Notario Marichal Aponte a favor de Alfonso Enrique Valdés Acevedo y María del Pilar Valdés Acevedo. Mediante dicha Escritura se nombró al Sr. Jaime del Valle Cruz como Fiduciario, quien es mayor de edad, casado, propietario, y vecino de San Juan, Puerto Rico con dirección postal de P.O. Box 9314, San Juan, P.R. 00908-0314. Con número teléfono 787-281-6730.

## III.   **HECHOS**

### A.  **EL PRÉSTAMO**

6.    El 21 de noviembre de 2003, el Deudor y el Banco Bilbao Vizcaya Argentaría Puerto Rico (luego Oriental Bank) (en adelante, "BBVA") suscribieron el *Loan and Security Agreement,* (en adelante, el "Contrato de préstamo original"). La suma principal del préstamo

conferido al Deudor fue por $1,725,000.00. El Contrato de Préstamo Original vencía el 31 de agosto de 2004. Véase, **Exhibit A.**

7.      La sección 8 del Contrato de Préstamo Original identifica la falta de pago como un evento de incumplimiento. Por consiguiente, ante un escenario de incumplimiento bajo la referida sección del contrato, el acreedor puede terminarlo y declarar la deuda vencida, líquida y exigible. Íd., pág. 15.

8.      Por otra parte, la sección 10 del Contrato de Préstamo Original dispone que la deuda está evidenciada mediante Pagaré hipotecario garantizado, a su vez, por una primera hipoteca. Íd. pág. 19.

9.      El 27 y 28 de mayo de 2010, el Deudor y el BBVA suscribieron una primera enmienda al Contrato de Préstamo Original, mediante el documento titulado "Enmienda al Acuerdo de Préstamo y Garantía; ratificación de Garantía, Acuerdo de Indemnización y Documentos del Préstamo" ("Enmienda I") ante el Notario Público Pedro A. Cantero Frau, bajo los afidávits número 3,245 y 3,248 respectivamente. En la Enmienda I, las partes pactaron que la deuda con el BBVA ascendía a $1,539,000.00 de principal más intereses. Además, mediante esta se enmendó la sección 3 (C) del Contrato de Préstamo para extender la fecha de vencimiento al 31 de diciembre de 2011. Véase, **Exhibit B**.

10.     Para clarificar el tracto de los acreedores del préstamo objeto de este caso, es necesario señalar que el 18 de diciembre de 2012, el BBVA se fusionó con Oriental Bank. Véase, **Exhibit C,** *Certificate of Merger*.

11.     Así, el 16 de enero de 2014, el Deudor y los Garantizadores, y Oriental suscribieron un *Amendment to Loan and Security Agreement* ("Enmienda II") ante el Notario Público Juan C. Ortega Torres, bajo el afidávit número 14,362. Véase, **Exhibit D.**

12.     En este, nuevamente se enmendó la sección 3(C) del Contrato de Préstamo Original para incluir que la cuantía adeudada por el principal para ese entonces de $1,175,000.00. Además, la fecha de vencimiento del préstamo fue aplazada hasta el 31 de diciembre de 2014. Íd., pág. 2.

13. En conjunto, el Contrato de Préstamo Original, la Enmienda I y la Enmienda II, son de ahora en adelante denominados conjuntamente como el "Contrato de préstamo".

14. Al presente, el Deudor y los Garantizadores adeudan al Acreedor, de manera solidaria e incondicional, una suma de no menos de dos millones ciento sesenta y seis mil quinientos treinta

3

y ocho dólares con veintiún centavos ($2,166,538.21) bajo el Contrato de Préstamo, calculada

hasta el 8 de noviembre de 2023, la cual se desglosa como sigue:

| Balance Principal | $1,026,969.77 |
| Intereses | $597,667.84 |
| Recargos | $25,464.73 |
| Intereses por incumplimiento | $276,768.35 |
| Costas, gastos y honorarios de abogados al 30 de agosto de 2023 | $236,738.02 |
| Seguros | $644.00 |
| Gastos de Valoración | $2,285.50 |
| **Total** | $2,166,538.21 |

## B.    PAGARÉ HIPOTECARIO



15.    El Contrato de Préstamo está garantizado, entre otras cosas, por el siguiente pagaré

hipotecario: *Mortgage Note* (Pagaré hipotecario), suscrito por el Deudor el 21 de noviembre de

2003, pagadero al portador, debidamente endosado a favor del Acreedor, con vencimiento a la

presentación, por la cantidad principal de un millón setecientos cincuenta mil dólares

($1,750,000.00) autenticado mediante el testimonio número 67,618 del Notario Público Ernesto

González Piñero (en adelante, el "Pagaré Hipotecario"). Véase, **Exhibit E.**

16.    El Pagaré Hipotecario dispone en cuanto a los intereses a una tasa de catorce

por ciento (14%) anual, desde la fecha del otorgamiento hasta que el Contrato de Préstamo

sea satisfecho en su totalidad. En caso de que el portador tenga que recurrir en un

procedimiento judicial para ejecución hipotecaria o cobro de dinero el deudor hipotecario

se compromete a pagar una suma adicional de $175,000.00 por concepto de costas, gastos

y honorarios de abogado. Íd., pág. 1

17.    El Pagaré Hipotecario está garantizado por una primera hipoteca constituida

en virtud de los términos de la Escritura Número 132 otorgada el 21 de noviembre de 2003

ante el Notario Público Ernesto González Piñero (la "Hipoteca") sobre la Finca 4,969

("Propiedad A") y la Finca 5,722 ("Propiedad B"), (según se definen a continuación).

Véase, **Exhibit F.**

18. La carga hipotecaria está distribuida de la siguiente manera: a la Propiedad A se le asignó una suma de $1,697,500.00 y a la Propiedad B se le asignó la suma de $52,500.00, para un total de $1,750,000.00. Íd., pág. 26.

C. **DESCRIPCIÓN LEGAL**

19. La Hipoteca descrita en la Sección III(B) de esta Sentencia por Consentimiento que garantiza el Pagaré Hipotecario, dado en prenda al Acreedor grava las siguientes propiedades inmuebles (en adelante, las "Propiedades Hipotecadas").

a) Finca número 4,969 inscrita en el Registro de la Propiedad de Fajardo al folio 223 del tomo 92 de Luquillo, la cual se describe como sigue:

**RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de doce cuerdas con setecientas catorce milésimas de otra (12.714 cuerdas.), equivalentes a cuarenta y nueve mil novecientos setenta metros cuadrados con seiscientas ochenta y una milésimas de otro (49,970.681 m), en lindes por el **NORTE,** en catorce (14) alineaciones que totalizan cuatrocientos sesenta y cinco metros con setecientas veinticinco milésimas de otro (465.725 m), con la zona marítimo terrestre que la separa del Océano Atlántico; por el **SUR,** en una alineación de nueve metros con trescientas ochenta y tres milésimas de otro (9.383 m), con el Carlo Embarcadero, en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientas cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en otras cinco (5) alineaciones que totalizan cien metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en otras tres (3) alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en una alineación de dieciséis metros con cuatrocientas sesenta milésimas de otro (16.460 m), con terrenos de la Familia Pirallo y en una alineación de ciento cuarenta y seis metros con novecientos cincuenta y seis milésimas de otro (146.956 m), con Half Moon Development Corp.; por el **ESTE,** en dos (2) alineaciones que totalizan cincuenta y tres metros con, quinientas noventa y nueve milésimas de otro (53.599 m), con la zona marítimo terrestre que la separa del Océano Atlántico y en una alineación de dieciséis metros con doscientas treinta y una milésimas de otro (16.231 m), con terrenos de la Familia Pirallo; y por el **OESTE,** en dos (2) alineaciones que totalizan treinta metros con ciento una milésimas de otro (30.101 m), con la desembocadura del Carlo Embarcadero que la separa del Océano Atlántico, en una alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con terrenos de la Familia Pirallo y en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705 m) con terrenos de la Familia Pirallo.--------

b) Finca número 5,722 inscrita en el Registro de la Propiedad de Fajardo al folio 159 del tomo 109 de Luquillo, la cual se describe como sigue:

**RÚSTICA:** Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de cinco cuerdas con setecientas ochenta y dos milésimas de otra (5.782 cuerdas), equivalentes a veintidós mil setecientos veintiséis metros cuadrados con seiscientos noventa y siete milésimas de otro (22,726.697 mc), en lindes por el **NORTE,** en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientas cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en cinco alineaciones que totalizan den metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en tres alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en cuatro alineaciones que totalizan sesenta y cinco metros con quinientos treinta y seis milésimas de otro (65.536 m), con la Parcela C dedicada a use público y en una alineación de nueve metros con ochocientas sesenta y seis milésimas de otro (9.866 m), con

5

la extensión de la Calle D existente; por el **SUR**, en cinco (5) alineaciones que totalizan doscientos noventa y un metros con cuarenta y siete milésimas de otro (291.047 m), con Sucesión Biascoechea y en seis alineaciones' que totalizan doscientos veinticuatro metros con seiscientas setenta y tres milésimas de otro (224.673 m), con el Carlo Embarcadero; por el **ESTE**, en una alineación de sesenta y nueve metros con novecientas veintisiete milésimas de otro (69.927 m), con la extensión de la Calle D existente, en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705), con terrenos de la Familia Pirallo, y en otra alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con dichos terrenos de la Familia Pirallo; y por el **OESTE**, en una alineación de nueve metros con novecientas diez milésimas de otro (9.910 m), con el Carlo Embarcadero que la separa del Océano Atlántico.-------------------------------------1

**D.      DOCUMENTOS DE COLATERAL**

20.      El 21 de noviembre de 2003, tanto el Pagaré Hipotecario, como la Hipoteca fueron dados en prenda ("Prendas I-II"), al Acreedor original de conformidad con la sección 10 del Contrato de Préstamo. **Exhibit A**, pág. 19.

**E.      GARANTIZADORES SOLIDARIOS DE AZURE**

21.      El 20 de noviembre de 2003, el co-demandado Alfonso Valdés García suscribió un *Guaranty and Agreement* ("Garantía y Acuerdo para Adeudos I"), ante el notario público Miguel Agustín Blanco Fuertes, bajo el afidávit número 1,851, mediante el cual el Sr. Valdés García se convirtió en garantizador solidario por las obligaciones presentes y futuras del Deudor para con el Acreedor (en adelante, la "Garantía I"). Véase, **Exhibit G**.

22.      El 27 y 28 de mayo de 2010, los co-demandados de Cost Control Company, Inc. y el Fideicomiso Valdés-Acevedo suscribieron un contrato de "Garantía y Acuerdo" ("Garantía y Acuerdo para Adeudos II"), ante el Notario Pedro A. Cantero Frau, bajo afidávits número 3,246 y 3,250, respectivamente. Mediante éste se obligaron a garantizar solidariamente todos los adeudos pasados, presentes y futuros de Azure con el BBVA (en adelante, la "Garantía II"). Véase, **Exhibit H**.

23.      En conjunto, el Pagaré hipotecario, la Hipoteca, las Propiedades Hipotecadas, las Prendas I-II y las Garantías I- II son todos denominados en conjunto como la "Colateral".

24.      En conjunto, la Colateral y el Contrato de Préstamo descritos en esta Sentencia por Consentimiento son de ahora en adelante denominados como los "Documentos de Financiamiento".

---

1 La descripción de las Propiedades hipotecadas aquí incluida es la descripción de cada propiedad detallada en la Escritura 132 de la Hipoteca, suscrita ante el Notario Público Ernesto González Piñero, el 21 de noviembre de 2003.

**IV.    SOLICITUD DE REMEDIO**

25.    La Regla 35.4 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R. 35.4, establece que "podrá dictarse sentencia sin la celebración de un juicio o sin haberse iniciado un pleito, fundada en el consentimiento de una persona, ya sea por dinero debido o que haya de deber […] Una vez el tribunal pase juicio, la misma será registrada y notificada por el Secretario o Secretaria del tribunal y se advendrá final y firme desde la fecha de su registro".

26. En virtud de dicha regla y por medio de la presente Sentencia por Consentimiento, el Deudor y cada uno de los Garantizadores solicita y consiente, libre, voluntariamente, e incondicionalmente, bajo juramento, a que esta Sentencia por Consentimiento sea dictada en virtud de los términos aquí establecidos condenando al Deudor y a los Garantizadores a pagar solidariamente al Acreedor una suma no menor a dos millones ciento sesenta y seis mil quinientos treinta y ocho dólares con veintiún centavos ($2,166,538.21) incluyendo el principal, los intereses y recargos bajo los Documentos de Financiamiento hasta el 8 de noviembre de 2023. Mas no incluye gastos, costas y honorarios de abogado adicionales que puedan incurrirse hasta el pago completo de la suma adeudada.

27.    El Deudor y los Garantizadores reconocen bajo juramento que han sido advertidos de su derecho a representación legal por sus respectivos abogados, que han sido aconsejados legalmente y que entienden la naturaleza y consecuencias de otorgar este documento. El Deudor y los Garantizadores consienten libre e inteligentemente, a someterse voluntariamente a la jurisdicción de este Honorable Tribunal y a que este Honorable Tribunal dicte sentencia por consentimiento en contra del Deudor y los Garantizadores, según lo solicitan.

28.    El Deudor y los Garantizadores consienten a que este Honorable Tribunal dicte Sentencia por Consentimiento ordenando al Deudor y a los Garantizadores a pagar las deudas antes mencionadas, más la suma de ($175,000.00) por concepto de costas, gastos y honorarios de abogados pactados.

29.    El Deudor y los Garantizadores consiente a que este foro ordene el desembolso a favor del Acreedor de los fondos que fueron depositados en el Tribunal, a saber, ciento cincuenta y tres mil, doscientos ochenta y nueve dólares con setenta y cuatro centavos ($153,289.74), para que esta suma sea acreditada a la cuantía adeudada por intereses acumulados hasta el momento del pago completo y total de la obligación.

30.    El Deudor y los Garantizadores consienten a que la presente Sentencia por Consentimiento se convierta en final, firme e inapelable al momento de que sea dictada, por lo que expresamente renuncian a cualquier derecho que pudieran tener a solicitar la apelación o la reconsideración de esta.

31. El Deudor y los Garantizadores libre y voluntariamente han llegado a un acuerdo con el Acreedor que pone fin a todas las controversias entre las Partes (en adelante, "Settlement and Release Agreement"). El Acreedor ejercitará esta Sentencia por Consentimiento según los términos del *Settlement and Release Agreement* que se encuentran recogidos en este documento. Véase, **Exhibit I.**

32. El Acreedor, los Garantizadores y el Deudor estipulan que el *Settlement and Release Agreement* no altera, elimina ni de alguna manera nova o modifica los derechos del Acreedor bajo el Contrato de préstamo y los Documentos de Financiamiento, los cuales expresamente se ratifican y se acuerda permanecen en plena fuerza y vigor de manera inalterada. En caso de conflicto entre el Contrato de Préstamo, los Documentos de Financiamiento o esta Sentencia por Consentimiento, el Contrato de Préstamo y los Documentos de Financiamiento prevalecerán.

33.    El Deudor y los Garantizadores incondicionalmente consienten, acuerdan y estipulan que serán solidariamente responsables entre sí para el pago, ante el reclamo del Acreedor, en caso de incumplimiento, de todos los costos, sellos de rentas internas, asistencia legal, tarifas notariales, comprobantes de inscripción y cualesquiera otros tipos de gastos u honorarios relacionados con cualquier documento privado o público que tenga que ser otorgado o inscrito en cualquier registro con relación a las transacciones aquí contempladas y a otorgar, entregar y transferir al Acreedor o a cualesquiera de sus cesionarios o designados todos los documentos y propiedad que sean necesarios para alcanzar la transferencia efectiva e inscripción a favor del Acreedor, o cualesquiera de sus cesionarios o designados, toda la Colateral descrita en los Documentos de Financiamiento, incluyendo pero no limitado a, escrituras de transferencia de la Propiedad Hipotecada a favor del Acreedor, o cualesquiera de sus cesionarios o designados, escrituras de cancelación de gravámenes sobre las propiedades, y cualesquiera otros documentos que pueda solicitar el Acreedor.

34.    Las Partes acuerdan que cualquier retraso o fallo en el ejercicio de un derecho conferido aquí no se interpretará como una renuncia al mismo.

8

35.     El Deudor y los Garantizadores expresamente reconocen que a la fecha de hoy no existen defensas o reclamos en contra del Acreedor, incluyendo, pero no limitado a, aquellas relacionadas al pago de cantidades debidas al Acreedor, y el Deudor y los Garantizadores por la presente expresa e irrevocablemente renuncian a cualquier reclamo en contra del Acreedor bajo los Documentos de Financiamiento y la Colateral.

36.     El Deudor y los Garantizadores reconocen que el Acreedor es el prendatario, acreedor garantizado y poseedor del Pagaré hipotecario, garantizado con la Hipoteca, y que el Acreedor tiene el derecho a usar sus créditos garantizados con gravámenes sobre las Propiedades Hipotecadas como parte de su crédito a la hora de licitar en cualquier acción judicial de subasta sin notificación previa, según reza el Artículo 106 de la Ley del Registro de la Propiedad de del Estado Libre Asociado de Puerto Rico, 30 LPRA 6143.

37.     El Deudor y los Garantizadores consienten a que el Acreedor pueda modificar unilateralmente esta Sentencia por Consentimiento para el único propósito de poder enmendar las descripciones de las propiedades según las descripciones de estas surjan del Registro de la Propiedad en aquellos casos donde exista alguna discrepancia entre escrituras, el Registro de la Propiedad y esta Sentencia por Consentimiento.

38.     El Deudor y los Garantizadores expresamente acuerdan y consiente a que, en cualquier momento luego de que se dicte esta Sentencia por Consentimiento, el Acreedor puede, a su sola discreción, cederle en todo o en parte, todos sus derechos bajo esta Sentencia por Consentimiento a uno o más cesionarios o designados con el propósito de ejecución u otra forma de obtención de título de todo o parte de las Propiedades Hipotecadas. El Deudor y los Garantizadores también acuerdan y consienten a que dicha cesión de derechos y sustitución de parte demandante para propósitos de ejecución u otra forma de obtención de título de todo o parte de las Propiedades Hipotecadas será perfeccionado mediante la radicación de una moción informativa al Honorable Tribunal, renunciando así expresamente el Deudor y los Garantizadores a cualquier derecho que puedan tener a objetar u oponerse a dicha sustitución de parte y/o a la moción informativa y/o a ejercer el derecho de retracto.

39.     Cualquier moción o mociones sobre o relacionadas a esta Sentencia por Consentimiento que sean radicadas ante este Honorable Tribunal deben ser notificadas a todas las Partes aquí listadas.

40.     Conforme a todo lo antes expuesto, el Acreedor respetuosamente solicita a este Honorable Tribunal a que, ante el debido y oportuno pedido por parte del Acreedor en caso de incumplimiento por parte del Deudor y los Garantizadores con el *Settlement and Release Agreement*, este Foro ordene el correspondiente mandamiento de ejecución dirigido al alguacil del Honorable Tribunal para que según dicta la Regla 51.3(b) de las de Procedimiento Civil, 32 LPRA. Ap., V R. 51.3(b), se ordene al alguacil a que proceda con la ejecución y correspondiente venta en pública subasta de las Propiedades Hipotecadas descritas en esta Sentencia por Consentimiento y a que ordene la ejecución de la Colateral, ya sea en venta privada o pública, para que los productos de dicha venta sirvan para satisfacer las cantidades adeudadas reconocidas en esta Sentencia por Consentimiento, según los terminos del *Settlement and Release Agreement*.

41.     El Deudor y los Garantizadores expresamente acuerdan y consienten a que si el Acreedor ejecuta la Colateral bajo cualesquiera de los Documentos de Financiamiento, el Acreedor puede: **(i)** ceder cualquier parte de los derechos y remedios que tiene bajo esta Sentencia por Consentimiento y **(ii)** el Deudor y los Garantizadores expresamente renuncian a cualquier objeción que puedan tener y por la presente consiente a cualquier solicitud de sustitución de parte realizada por el Acreedor para que se le sustituya en esta Sentencia por Consentimiento por un cesionario suyo.

42.     Cónsono con lo anterior, el Deudor y los Garantizadores consienten a que, en caso de incumplimiento con el *Settlement and Release Agreement*, el Acreedor puede: **(i)** ejecutar esta Sentencia por Consentimiento; **(ii)** comenzar un procedimiento de ejecución de la Colateral dada en prenda o gravada a favor del Acreedor en virtud de los Documentos de Financiamiento descritos en esta Sentencia por Consentimiento, según los términos del *Settlement and Release Agreement*, y **(iii)** de existir un evento de incumplimiento bajo la sección 13 del *Settlement and Release Agreement*, cobrar contra los Garantizadores todas las cantidades adeudadas bajo el Contrato de Préstamo y el *Settlement and Release Agreement*.

**POR TODO LO CUAL** Triangle Cayman Asset Company, Azure Development, Inc., Cost Control Company, Inc., Alfonso Valdés García y el Fideicomiso Valdés- Acevedo ruegan que, en virtud de las disposiciones de la Regla 35.4 de las de Procedimiento Civil de Puerto Rico, *supra*, este Honorable Tribunal dicte Sentencia por Consentimiento en contra del Deudor y los Garantizadores cónsono con los términos aquí establecidos y que ordene el pago de las sumas descritas en esta Sentencia por Consentimiento según lo estipulado por las partes.

**RESPETUOSAMENTE SOMETIDA.**

En San Juan, Puerto Rico, hoy 22 de noviembre de 2023.

| LAS PARTES | LAS PARTES |
|---|---|
| **Triangle Cayman Asset Company** como Acreedor<br><br>Por: _____<br>Nombre: Kassandra Castellón Rivera<br>Título: Representante Autorizado | **Azure Development Inc.** como Deudor<br><br>Por: _____<br>Nombre: Alfonso Valdés García<br>Título: Representante Autorizado |
|  | **Cost Control Company Inc.** como Garantizador<br><br>_____<br>Nombre: Alfonso Valdés García<br>Título: Representante Autorizado |
|  | **Fideicomiso Valdés- Acevedo** como Garantizador<br><br>_____<br>Nombre:<br>Título: Representante Autorizado |
|  | **Alfonso Valdés García** como Garantizador<br><br>_____<br>Nombre: Alfonso Valdés García |
| **REPRESENTACIÓN LEGAL** | **REPRESENTACIÓN LEGAL** |
| **MARINI PIETRANTONI & MUÑIZ LLC**<br>250 Avenida Ponce de León, Suite 900<br>San Juan, PR 00917<br>Teléfono: (787) 705-2172<br>Fax: (787)936-7494<br><br>_____<br>Luis C. Marini-Biaggi<br>RUA Núm. 14091<br>lmarini@mpmlawpr.com<br><br>_____<br>Karena Montes Berríos<br>RUA Núm. 19345<br>kmontes@mpmlawpr.com<br><br>_____<br>Melánie Pérez Rivera | **CHARLES A. CUPRILL, PSC LAW OFFICES**<br>356 Calle Fortaleza, 2do Piso<br>San Juan, PR 00901<br><br>_____<br>Charles A. Cuprill Hernandez<br>RUA Núm. 3198<br>Tel. 787-977-0515<br>Fax. 787-977-0518<br>ccuprill@cuprill.com<br><br>_____<br>Oscar L. Padilla López<br>RUA Núm. 9110<br>Cond. San Martin Suite 704<br>Ave. Ponce de León 1605<br>San Juan, PR 00909<br>Tel. 787-981-7474<br>Cel. 787-449-2458<br>opadillalopez@yahoo.com |

**RESPETUOSAMENTE SOMETIDA.**

En San Juan, Puerto Rico, hoy 22 de noviembre de 2023.

| LAS PARTES | LAS PARTES |
|---|---|
| **Triangle Cayman Asset Company** como Acreedor | **Azure Development Inc.** como Deudor |
| Por: _____ Nombre: Título: Representante Autorizado | Por: _____ Nombre: Alfonso Valdés García Título: Representante Autorizado |
| | **Cost Control Company Inc.** como Garantizador Nombre: Alfonso Valdés García Título: Representante Autorizado |
| | **Fideicomiso Valdés- Azevedo** como Garantizador Nombre: Título: Representante Autorizado |
| | **Alfonso Valdés García** como Garantizador Nombre: Alfonso Valdés García |
| **REPRESENTACIÓN LEGAL** | **REPRESENTACIÓN LEGAL** |
| MARINI PIETRANTONI & MUÑIZ LLC 250 Avenida Ponce de León, Suite 900 San Juan, PR 00917 Teléfono: (787) 705-2172 Fax: (787)936-7494 | CHARLES A. CUPRILL, PSC LAW OFFICES 356 Calle Fortaleza, 2do Piso San Juan, PR 00901 |
| Luis C. Marini-Biaggi RUA Núm. 14091 lmarini@mpmlawpr.com | Charles A. Cuprill Hernandez RUA Núm. 3198 Tel. 787-977-0515 Fax. 787-977-0518 ccuprill@cuprill.com |
| Karena Montes Berrios RUA Núm. 19345 kmontes@mpmlawpr.com | Oscar L. Padilla López RUA Núm. 9110 Cond. San Martin Suite 704 Ave. Ponce de León 1605 San Juan, PR 00909 Tel. 787-281-7474 Cel. 787-449-2458 opadillalopez@yahoo.com |
| Melanie Pérez Rivera | |

11

RUA Núm. 21125
mperez@mpmlawpr.com

Abogados de Triangle Cayman Asset
Company

*Abogados de Azure Development Inc.*

**LEGAL CORP**
P.O. Box 191033
San Juan, PR 00919
Tel. 787-294-0750
Fax. 787-294-0753

Rubén Colón Morales
RUA Núm. 9939
rcolon@legalcooppr.com

Roberto Palini Pérez
RUA Núm. 13155
mblabel@legalcooppr.com

Rubén J. Lucena Quiles
RUA Núm. 15873
rlucena@legalcooppr.com

*Abogados de Alfonso Valdés García y Cost Control
Company Inc.*

Miguel A. Pérez Vargas
RUA Núm. 9578
P.O. Box 620315
Oviedo, FL 32762-0315
Tel. 787-473-7352
perez.vargas.miguel@gmail.com

*Abogado del Fideicomiso Valdés- Acevedo*

**JURAMENTO**

Yo, Alfonso Valdés García, mayor de edad, soltero, ejecutivo y vecino de Guaynabo, Puerto Rico, en mi capacidad personal, como Garantizador, y como representante autorizado de Azure Development, Inc., el Deudor, y Cost Control Company, Inc., el Garantizador, bajo juramento, declaro lo siguiente:

1. Mi nombre y circunstancias personales son según se describen arriba.

2. He leído todas las alegaciones, referencias y contenido en general de esta Sentencia por Consentimiento y las mismas son todas ciertas.

3. Estoy de acuerdo con todo lo establecido en esta Sentencia por Consentimiento.


En San Juan, Puerto Rico hoy 22 de noviembre de 2023.

Testimonio Número: 64

Jurado y suscrito ante mí por Alfonso Valdés García, de las circunstancias ante expresadas, a quien por no conocer personalmente he identificado mediante su licencia de conducir número 330645 emitida por el Estado Libre Asociado de Puerto Rico, en virtud del Artículo 17(C) de la Ley Notarial de Puerto Rico. En San Juan, Puerto Rico, hoy 22 de noviembre de 2023.



NOTARIO PÚBLICO

13

## OATH / *JURAMENTO*

I, _Kassandra Castrillón Rivera_ of legal age, _married_, _attorney at law_ ~~executive~~, and resident of _Guaynabo_, _Puerto Rico_, as authorized representative of Triangle Cayman Asset Company, the Creditor, under oath do hereby declare as follows: / *Yo, _____, mayor de edad, _____, ejecutivo y vecino de _____, _____, como representante autorizado de Triangle Cayman Asset Company, el Acreedor, bajo juramento, declaro lo siguiente:*

1. That my name and personal circumstances are those indicated above. / *Mi nombre y circunstancias personales son según se describen arriba.*

2. That I have read the allegations, references, and general content of the preceding Consent Judgment and that the same are true. / *He leído todas las alegaciones, referencias y contenido en general de esta Sentencia por Consentimiento y las mismas son todas ciertas.*

3. That I am in agreement with everything stated in the Consent Judgment. / *Estoy de acuerdo con todo lo establecido en esta Sentencia por Consentimiento.*

In San Juan, Puerto Rico, on _November 30, 2023_. / *En San Juan, Puerto Rico hoy _30_ de _noviembre_ de _2023_.*

Affidavit No. _69_ / *Testimonio Número:* _____

Sworn and subscribed before me, by _Kassandra Castrillón Rivera_ of the previously expressed personal circumstances, whom I do not know personally and identify by means of his driver's license, number _492 4901_, issued by the Commonwealth of Puerto Rico, in accordance with article 17 (c) of the Notary Act of Puerto Rico in San Juan, Puerto Rico, today _____. / *Jurado y suscrito ante mí por _Kassandra Castrillón Rivera_, de las circunstancias ante expresadas, a quien por no conocer personalmente he identificado mediante su licencia de conducir número _____ emitida por el Estado Libre Asociado de Puerto Rico, en virtud del Artículo 17(C) de la Ley Notarial de Puerto Rico. En San Juan, Puerto Rico, hoy _30_ de _noviembre_ de _2023_.*

NOTARY PUBLIC / *NOTARIO PUBLICO*



## JURAMENTO

Yo, Jaime I. Del Vallle, mayor de edad, casado, ejecutivo y vecino de San Juan, Puerto Rico, en representación del Fideicomiso Valdés- Acevedo como Garantizador, bajo juramento, declaro lo siguiente:

1. Mi nombre y circunstancias personales son según se describen arriba.

2. He leído todas las alegaciones, referencias y contenido en general de esta Sentencia por Consentimiento y las mismas son todas ciertas.

3. Estoy de acuerdo con todo lo establecido en esta Sentencia por Consentimiento.

En San Juan, Puerto Rico hoy 27 de noviembre de 2023.

Testimonio Número: _66_

Jurado y suscrito ante mí por Jaime I. Del Valle de las circunstancias ante expresadas, a quien por no conocer personalmente he identificado mediante su tarjeta de pasaporte número C27631007 emitida por el Departamento de Estado de los Estados Unidos de América, en virtud del Artículo 17(C) de la Ley Notarial de Puerto Rico. En San Juan, Puerto Rico, hoy 27 de noviembre de 2023.



NOTARIO PUBLICO