UNITED STATES BANKRUPTCY COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>**AZURE DEVELOPMENT, INC.**<br><br>Debtor | CASE NO. 23-000462-ESL<br><br>CHAPTER 11 |

**URGENT MOTION FOR SALE OF PROPERTIES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE, FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES TO IMPLEMENT SETTLEMENT AND RELEASE AGREEMENT, APPROVING THE FORM OF THE SALE ORDER WITH SHORTENED OBJECTION PERIOD**

COMES NOW Debtor, through its undersigned counsel, and respectfully states and requests:

**PRELIMINARY STATEMENT**

1. On December 6, 2013, Triangle Cayman Asset Company ("Triangle") and Debtor (Triangle and Debtor jointly the ("Parties") filed a Joint Motion for the Approval of Settlement and Release Agreement (the "Joint Motion"), whereby they requested the approval of a Forbearance, Discounted Payoff and Settlement and Release Agreement (the "Settlement Agreement") pursuant to Fed. R. Bankr. P. 9010, disposing of all pending controversies between them and related parties (**Docket No. 156**).

2. The Settlement Agreement was submitted as Exhibit 1 to the Joint Motion and is incorporated herein by reference, as if literally transcribed.

3. The Joint Motion provides the history of Triangle's claim against Debtor commencing with the original Loan and Security Agreement, as amended between Banco Bilbao Vizcaya Argentaria Puerto Rico ("BBVA") and Debtor for the principal amount of $1,725,000.00 with a maturity date of December 31, 2014, evidenced by a Mortgage Note for

the principal amount of $1,750,000.00 secured by Deed of First Mortgage No. 132 (the "Mortgage") executed by Debtor on November 21, 2003 before Notary Public Ernesto González Piñero, constituted over two (2) adjacent parcels of land at Luquillo, Puerto Rico (the "Properties"), described as follows in the Spanish language:

> RÚSTICA: Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de doce cuerdas con setecientas catorce milésimas de otra (12.714 cuerdas.), equivalentes a cuarenta y nueve mil novecientos setenta metros cuadrados con seiscientas ochenta y una milésimas de otro (49,970.681 m-), en lindes por el NORTE, en catorce (14) alineaciones que totalizan cuatrocientos sesenta y cinco metros con setecientas veinticinco milésimas de otro (465.725 m), con la zona marítimo terrestre que la separa del Océano Atlántico; por el SUR, en una alineación de nueve metros con trescientas ochenta y tres milésimas de otro (9.383 m), con el Carlo Embarcadero, en cuatro (4) alineaciones que totalizan doscientos dos metros con seiscientas cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en otras cinco (5) alineaciones que totalizan cien metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en otras tres (3) alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en una alineación de dieciséis metros con cuatrocientas sesenta milésimas de otro (16.460 m), con terrenos de la Familia Pirallo y en una alineación de ciento cuarenta y seis metros con novecientos cincuenta y seis milésimas de otro (146.956 m), con Half Moon Development Corp.; por el ESTE, en dos (2) alineaciones que totalizan cincuenta y tres metros con, quinientas noventa y nueve milésimas de otro (53.599 m), con la zona marítimo terrestre que la separa del Océano Atlántico y en una alineación de dieciséis metros con doscientas treinta y una milésimas de otro (16.231 m), con terrenos de la Familia Pirallo; y por el OESTE, en dos (2) alineaciones que totalizan treinta metros con ciento una milésimas de otro (30.101 m), con la desembocadura del Carlo Embarcadero que la separa del Océano Atlántico, en una alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con terrenos de la Familia Pirallo y en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705 m) con terrenos de la Familia Pirallo. Property number 4,969 is recorded at page 220 of volume 92 of Luquillo, Registry of the Property of Fajardo.

> RÚSTICA: Radicada en el Barrio Mata de Plátanos de Luquillo, Puerto Rico, de forma irregular, con una cabida de cinco cuerdas con setecientas ochenta y dos milésimas de otra (5.782 cuerdas), equivalentes a veintidós mil setecientos veintiséis metros cuadrados con seiscientos noventa y siete milésimas de otro (22,726.697 mc), en lindes por el NORTE, en cuatro (4) alineaciones que

2

totalizan doscientos dos metros con seiscientos cuarenta y cinco milésimas de otro (202.645 m), con terrenos de la Familia Pirallo, luego en cinco alineaciones que totalizan den metros con noventa milésimas de otro (100.090 m), con terrenos de la Familia Pirallo, luego en tres alineaciones que totalizan sesenta y seis metros con novecientas cuatro milésimas de otro (66.904 m), con terrenos de la Familia Pirallo, luego en cuatro alineaciones que totalizan sesenta y cinco metros con quinientos treinta y seis milésimas de otro (65.536 m), con la Parcela C dedicada a use público y en una alineación de nueve metros con ochocientas sesenta y seis milésimas de otro (9.866 m), con la extensión de Ia Calle D existente; por el SUR, en cinco (5) alineaciones que totalizan doscientos noventa y un metros con cuarenta y siete milésimas de otro (291.047 m), con Sucesión Beascoecheay en seis alineaciones' que totalizan doscientos veinticuatro metros con seiscientas setenta y tres milésimas de otro (224.673 m), con el Carlo Embarcadero; por el ESTE, en una alineación de sesenta y nueve metros con novecientas veintisiete milésimas de otro (69.927 m), con la extensión de la Calle D existente, en otra alineación de dieciséis metros con setecientas cinco milésimas de otro (16.705), con terrenos de la Familia Paralelo, y en otra alineación de veintiocho metros con quinientas sesenta y cinco milésimas de otro (28.565 m), con dichos terrenos de la Familia Paralelo; y por el OESTE, en una alineación de nueve metros con novecientas diez milésimas de otro (9.910 m), con el Carlo Embarcadero que la separa del Océano Atlántico. Property number 5,722 is recorded on page 155 of volume 106 of Luquillo, Registry of the Property of Fajardo.

4. On December 18, 2012, BBVA and Oriental merged and on September 28, 2015, Triangle acquired the Loan and Loan Documents from Oriental, thus becoming the holder of the first priority mortgage lien over the Properties. (See title study, **Exhibits A** and **B**)

5. The Loan is guaranteed by Mr. Alfonso Valdés García ("Mr. Valdés García"), Cost Control Company, Inc. ("Cost Control") and Fideicomiso Valdés-Acevedo ("Fideicomiso" together with Mr. Valdés García and Cost Control the "Guarantors").

6. Prior to the filing of Debtor's Chapter 11 petition on February 17, 2023, Debtor and the Guarantors had defaulted under the Loan and consequently Oriental and thereafter Triangle, filed a complaint for collection of monies and foreclosure of mortgage on June 9, 2015, in Case No. NSCI 2015-00410 before the Court of First Instance of Puerto Rico, Fajardo Section (the "State Court Case").

7. On November 12, 2023, the Parties and the Guarantors executed the Settlement Agreement, providing for total and full satisfaction of all claims between them.

8. Under the Settlement Agreement the Parties, inter alia, agreed to as follows:

• **Consented Period for the Sale of the Properties**.

(i) Triangle agreed for Debtor to have a consented nine-month period, commencing on the date of the execution of the Settlement Agreement (the "9 Month Period") to satisfy of $1,889,769.86, as of November 8, 2023, in full payment of the Claim (the "Triangle Reduced Claim Amount") through the sale or refinancing of the Properties or otherwise.

(ii) If, at the end of the 9 Month Period, Debtor had not delivered to Triangle payment of the Triangle Reduced Claim Amount, Debtor could extend the terms of the Settlement Agreement for an additional 3 month period (the "3 Month Sale Extension Period" and together with the 9 Month Period, the "Sale Period") to satisfy to Triangle the amount of $2,166,538.21, as of November 8, 2023, in full settlement of the Claim (the "Triangle Total Claim").

(iii) For the avoidance of doubt, Debtor had a total of twelve (12) months from the date of the execution of the Settlement Agreement to finalize the sale or refinancing of the Properties or otherwise pay Triangle's claim provided, however, that (i) if the sale of the Properties and/or the payment takes place during the 9 Month Period, the amount payable to Triangle would be the Triangle Reduced Claim Amount, and (ii) if the sale and/or payment takes place during the 3 Month Sale Extension Period, the amount payable to Triangle would be the Triangle Total Claim.

• **Allowed Claim of the Triangle Total Claim**.

The Settlement Transaction ratified the Triangle Total Claim, providing for a discounted amount thereof pursuant to the terms and conditions set forth therein and

4

provides subject to the terms and conditions of the Settlement Agreement for mutual releases by the Parties, including the release of the Guarantors in the State Court Case, upon satisfaction of its terms.

• **Resolution of Disputes regarding the Deposited Funds.**

That the Deposited Funds in the State Court Case shall be jointly requested by Triangle, Debtor, and the Guarantors to be disbursed in favor of Triangle, to be applied to reduce the interest due under the Reduced Claim Amount during the 9 Month Sale Period.

• **Continued Payment of Insurance and Taxes.**

Debtor would pay all real estate taxes when due and provide evidence of such payment to Triangle.

• **Resolution of Obligations, Litigation and Consented Dismissal of Bankruptcy Case.**

As part of the Settlement Transaction, upon receipt of the Settlement Payment and satisfaction of the conditions to Closing, the Parties agree that (i) such Settlement Payment shall satisfy, in full, all of Debtor's and the Guarantor's Obligations under the Loan Agreement, the Loan and the Loan Documents and finally resolve all of the litigation, including the State Court Case, and the release subject to the terms and conditions of the Settlement Agreement and (ii) upon approval of the Settlement Agreement and granting of the 9019 Motion, the Parties would jointly request the dismissal of the Bankruptcy Case to avoid chapter 11 expenses and fees during the Sale Period.

9. Section 30 of the Settlement Agreement provides for the retention of jurisdiction by this Court to interpret and/or enforce the terms thereof.

10. On January 3, 2024, the Court approved the Settlement Agreement. (Docket No. 164)

5

11. Pursuant to the Settlement Agreement on January 12, 2024, the Parties filed a joint motion for the dismissal of the Chapter 11 Case (Docket No. 170), and on January 24, 2024, the Court entered an order to that effect. (Docket No. 171)

12. On November 21, 2024, the Parties and the Guarantors executed a first amendment to Forbearance Agreement, Discounted Payoff and Settlement and Release Agreement to, inter alia, provide that the total amount of Triangle's claim as of November 21, 2024 was $2,219,326.81 extending the maturity date of the Forbearance Period up to February 21, 2025 provided Debtor delivered to Triangle a payment equal to $62,288.10 corresponding to three months of interest at 11.50% per annum of the amount due under the Triangle's claim as indicated above, and $50,000.00 as an extension, both payment were made by Debtor (See **Exhibit C**).

13. The Bankruptcy case was closed on November 26, 2024.

14. On February 21, 2025, Debtor did not make the $2,219,326.81 due to Triangle and the Parties could not come to an agreement as to a further extension of the forbearances period.

15. On October 28, 2015, Triangle filed a motion in the State Court Case for its substitution as plaintiff of Oriental Bank, granted by the State Court on November 29, 2015.

16. On December 7, 2023, Triangle, Debtor and the Guarantors filed a judgment by consent in the State Court Case requesting the entry of judgment against the defendants and in favor of Triangle which was entered in the State Court Case on December 1, 2023, by granting the judgment by consent.

17. On February 24, 2025, Triangle assigned to Triangle REO PR, Corp. ("Triangle REO") all of its interest as creditor of the rights and remedies granted thereto in the judgment by consent entered in the State Court Case. As a result, Triangle endorsed the order of Triangle REO, the promissory note object of the mortgage whose execution was authorized under the judgment by consent.

18. Also on February 24, 2025, Yukiyú Real Estate, LLC ("Yukiyú") acquired from Triangle Reo all of Triangle REO's interest as creditor of the rights and remedies granted under the judgment by consent, becoming the real party in interest in continuing with the proceedings in the State

6

Court Case. On that date Triangle REO endorsed the mortgage promissory note and the bank notes relative to Debtor's debt to Yukiyú becoming the successor in interest to the Settlement Agreement

19. On February 28, 2025, Yukiyú filed a motion in the State Court Case to substitute itself as plaintiff in the State Court Case, granted on March 19, 2025, and on March 20, 2025, filed a motion in the State Court Case for the issuance of an order and writ in execution of the judgment by consent.

20. Under the judgment by consent the amount owed accrue interest pursuant to Rule 44.3 of the Puerto Rico Rules of Civil Procedure until total payment is made as of February 24, 2025 the amount owed by Debtor to Yukiyú was $2,249,303.42, which amount continues to accrue interest at the daily rate of $692.09, plus expenses.

21. Triangle, Triangle REO and Yukiyú are represented by Marini Pietrantoni Muñiz, LLC, both in this case and in the State Court Case.

22. Punta Banderas Associates, Inc. ("Punta Banderas"), a corporation organized under the laws of Puerto Rico with register number 549261 at the Department of State of Puerto Rico, or its designee has offered to purchase the Properties encumbered now by Yukiyú for $2,500,000.00 with a repurchase agreement (pacto de retro) of $3,000,000.00 if effected within one (1) year from the date of the sale and of $3,500,000.00 if effected within two (2) years from the date of sale, the sale to Punta Banderas or its designee to be free and clear of all liens and encumbrances, the $2,500,000.00 to be utilized to pay Yukiyú's claim as indicated in the paragraph 20 above, any balance of the sale price to be paid to the holder of the second mortgage on the Properties, María de la Encarnación Valdés García a/k/a Encarnita Valdés Quinlan, or her order for $934,484.00, the Properties being responsible for $28,124.00 each, with interest at 15% per annum as it appears from deed number 3 dated March 27, 2012, before notary public Nestor J. Lo Presti Reyes. (See **Exhibits A** and **B**)

23. The sale to Punta Banderas or its designee will provide Debtor with up to two (2) years to repurchase the Properties, complete the permitting process for the development of the project thereon and sell the same, make a profit and pay off, while paying in full the amount due Yukiyú and the

resulting balance to be applied to the second mortgage up to the extent thereof with interest thereof vis a vis the principal amount as to which the Properties are responsible.

24. The sale to Punta Banderas or its designee is in the best interest of Debtor, Yukiyú as its claim will be paid in full and to the second holder mortgage who will receive payment of the secured portion of her claim, when otherwise the Properties would be foreclosed by Yukiyú, she will not receive anything as a result of the foreclosure and Debtor will lose the Properties.

## JURISDICTION AND VENUE

25. This Court has jurisdiction over this motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

26. Venue of this proceeding and of this motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

27. The statutory predicates for the relief requested herein are Sections 105 and 363 of Title 11 of the United States Code, 11 U.S.C. §§101 *et. seq.* (the "Bankruptcy Code"), Rules 2002, 4001(c)(2), 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Fed. R. Bankr. P."), and Rules 6004-1 and 9013-1(f) of the Local Bankruptcy Rules.

## THE COURT SHOULD APPROVE THE SALE

28. First, Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). A debtor in possession is given these rights by Section 1107(a) of the Bankruptcy Code. 11 U.S.C. §1107(a). Moreover, Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]" 11 U.S.C. 105(a).

29. Pursuant to Section 363(f) of the Bankruptcy Code, a debtor may sell property under Section 363(b) of the Bankruptcy Code free and clear of liens, claims and encumbrances if one of the following conditions is satisfied: (a) applicable non-bankruptcy law permits the sale of the

8

property free and clear of such interest; (b) the entity holding the lien, claim or encumbrance consents to the sale; (c) where the interest is a lien, the price at which such property is to be sold is greater than the aggregate value of all liens thereon; (d) the interest is in bona fide dispute; or (e) the entity could be compelled, in a legal or equitable proceeding, to accept a monetary satisfaction of its interest. 11 U.S.C. § 363(f).

30. Courts have consistently held that approval of a proposed sale of property pursuant to Section 363(b) is appropriate if the record reveals a "good business reason" for approval of the proposed sale outside of a plan. See *In re Eldercare*, 390 B.R. 762, 770 (Bankr. D. Conn. 2008); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a Section 363 sale in a Chapter 11 case are "that the proposed sale is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith."). The Court may find that a sound business purpose for the sale of assets outside the ordinary course of business exists when such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. *In re Lionel Corp.*, 722 F.2d 1063 (2 Cir. 1983).

31. Second, Section 363(f) of the Bankruptcy Code allows a debtor to sell assets free and clear of all liens, claims, interests, charges and encumbrances (with any such liens, claims, interests, charges and encumbrances attaching to the net proceeds of the sale with the same rights and priorities therein as in the sold assets).

32. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if --
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;

9

>(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>(4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

33. Therefore, in a sale of assets pursuant to Section 363(b) the debtor must meet one of the five requirements established under 363(f) in order for the sale to be approved.

34. Finally, pursuant to Section 363(m) of the Bankruptcy Code, a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 8 (1st. Cir.1993). The good faith requirement is related to the integrity of the purchaser's conduct in the course of the sale proceedings. *In re Rock Industries Machinery Corp.*, 572 F.2d 1198 (7th. Cir. 1978).

35. As indicated above the sale to Punta Banderas or its designee satisfies each of the elements necessary for the Court to approve the same.

36. Further, the Sale should be free and clear of all claims, liens, and interests, as Debtor submits that at least one of the requirements of Section 363(f) of the Bankruptcy Code, if not more, is met since any entity holding liens, claims, encumbrances and of other interests on the Properties has consented to the proposed sale or otherwise will receive notice of this motion. Accordingly, all parties in interest will be given sufficient opportunity to object to the relief requested herein. To the extent, however, that any such entity does not object to this motion, that entity should be deemed to have consented to the relief sought herein. See *Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; since the transaction costs would be prohibitive if everyone who might have an interest in bankrupt's assets had to execute formal consent before they could be sold.") (internal

citations omitted). Thus, to the extent that no party holding a lien object to the relief requested in this motion and the form of the Sale Order attached as **Exhibit D** hereto, the sale of the Properties to be free and clear of all liens, satisfies Section 363(f)(2) of the Bankruptcy Code.

37. Finally, Debtor requests that the Court determine that Punta Banderas or its designee is a "good faith" purchaser within the purview of Section 363(m) of the Bankruptcy Code, as the sale of the Properties was negotiated at arm's-length between Punta Banderas and Debtor, both represented by counsel, and all parties thereto have acted in good faith.

38. Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in property purchased from a debtor notwithstanding that the sale conducted under Section 363(b) of the Bankruptcy Code may be later reversed or modified on appeal. Specifically, Section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)]. . . does not affect the validity of a sale . . . to an entity that purchased . . . such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale . . . were stayed pending appeal.

39. Essentially, Section 363(m) affords "finality to judgments approving sales in bankruptcy by protecting good faith purchasers, innocent third parties who rely on the finality of bankruptcy judgments in making their offers and bids. . . . The finality and reliability of the judicial sales enhance the value of the assets sold in bankruptcy." *In re Stadium Management Corp.*, 895 F.2d 845, 847 (1st Cir. 1990) citing *In re Tri-Cran, Inc.*, 98 B.R. 609, 617 (Bankr.D.Mass. 1989) (citations omitted); *In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1172-73 (9th Cir. 1988); *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986).

40. The effect of § 363(m) is that "when an order confirming a sale to a good faith purchaser is entered and a stay of that sale is not obtained, the sale becomes final and cannot be reversed on appeal." *In re Stadium Management Corp.*, 895 F.2d at 847 quoting *Creditor Committee v. Armstrong Business Credit Corp. (In re Saco Local Development Corp.)*, 19

11

Bankr. 119, 121 (BAP 1st Cir. 1982). Absent a stay, the court must dismiss a pending appeal as moot. *In re Stadium Management Corp.*, 895 F.2d at 847 citing In re the Charter Co., 829 F.2d 1054 (11th Cir. 1987) (per curiam), cert. denied, 485 U.S. 1014, 108 S. Ct. 1488, 99 L. Ed. 2d 715 (1988); *Miami Center Partnership v. Bank of New York*, 820 F.2d 376, corrected in part and rehearing denied, 826 F.2d 1010 (11th Cir. 1987), vacating [826 F.2d 1010], reaffirming [820 F.2d 376] and rehearing denied, 838 F.2d 1547 (11th Cir. 1988), cert. denied, 488 U.S. 823, 109 S. Ct. 69, 102 L. Ed. 2d 46 (1988); *In re Sax*, 796 F.2d 994 (7th Cir. 1986); *In re MTI Holding Corp.*, 85 B.R. 666, 668 (D.Mass. 1988).

41. Although the Bankruptcy Code does not define "good faith purchaser", courts have adopted the traditional equitable definition of one who purchases the assets for value, in good faith, and without notice of adverse claims. To constitute lack of good faith, a party's conduct in connection with the sale must usually amount to fraud or collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders. Debtor submits that Punta Banderas is a "good faith purchaser" as defined above.

42. Further, in compliance with PR LBR 6004-1(b) and in support of this Sale Motion, Debtor is submitting the following documents: (i) Title Search for the Carolina Property as **Exhibits A** and **B**; and (ii) as **Exhibit E** a certification of debt from CRIM dated March 10, 2025, reflecting a claim for $1,416.76 and as **Exhibit F** Barchetta, LLC, Debtor's related entity, check number 464 of March 21, 2025 paying said amount to Claim with CRIM's stamp.

43. Moreover, the sale is in the best interest of Debtor's estate.

44. Due to the terms of the Settlement Agreement, the daily accrual of interest on Debtor's debt to Yukiyú and Debtor's agreement with Punta Banderas as to the need for an expeditious closing on the sale thereto, Debtor requests that pursuant to Rule 9006(c) of the Federal Rules of Bankruptcy Procedure that the notice process for any objection to the sale be reduced to five (5) days, considering that there are only four (4) creditors in this case, including Yukiyú, Mrs. Encarnita Valdés

Quinlan, CRIM who has been paid in full and Doris Maldonado with a $14,000.00 claim, all of which will be notified by e-mail of the instant motion

### NOTICE OF TIME TO RESPOND

Within five (5) days after service as evidenced by the certification of this motion, and an additional three (3) days pursuant to Fed. R. Bank. P. 9006(f) if you were served by mail, any party against whom this motion has been served, or any other party to the action who objects to the relief sought herein, shall serve and file an objection or other appropriate response to this motion with the clerk's office of the United States Bankruptcy Court for the District of Puerto Rico on or before April 1, 2025. If no objection or other response is filed within the time allowed herein, the motion will be deemed unopposed and may be granted without a need for a hearing unless: (i) the requested relief is forbidden by law; (ii) the requested relief is against public policy; or (iii) in the opinion of the court, the interest of justice requires otherwise.

**WHEREFORE,** Debtor hereby respectfully requests that (i) the time to respond to this motion be reduced to five (5) days, (ii) that this motion and the sale order be approved, and (ii) such other relief as is just and proper be granted.

**CERTIFICATE OF SERVICE**: I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all participants of CM/ECF, and by e-mail to Yukiyú Real Estate, LLC through its attorney Luis Marini Biaggi, Esq. at lmarini@mpmlawpr.com to Mrs. Encarnita Valdés Quinlan, through her attorney Pedro Jiménez, Esq. at smv@amgprlaw.com, to Ms. Doris Maldonado at dmvallejo8@hotmail.com and to counsel for CRIM Carmen P. Figueroa, Esq. at cfigueroa@crimpr.net.

San Juan, Puerto Rico, this 27th day of March 2025

13

        **s/CHARLES A. CUPRILL-HERNÁNDEZ**
**USDC-PR 114312**
Charles A. Cuprill, P.S.C. Law Offices
**Counsel for Debtor**
356 Fortaleza Street, Second Floor
San Juan, PR 00901
Tel: 787-977-0515
Fax: 787-977-0518
E-mail: cacuprill@cuprill.com