Exhibit C

# FIRST AMENDMENT TO FORBEARANCE, DISCOUNTED PAYOFF AND SETTLEMENT AND RELEASE AGREEMENT

This **FIRST AMENDMENT TO FORBEARANCE, DISCOUNTED PAYOFF AND SETTLEMENT AND RELEASE AGREEMENT** (the "Amendment") is entered into by and among: (i) the Borrower[1]; (ii) Cost Control; (iii) the Trust; (iv) Valdés; and (v) the Creditor.

## PRELIMINARY STATEMENTS

**WHEREAS**, the Loan Parties and the Creditor are parties to a certain Forbearance, Discounted Payoff and Settlement and Release Agreement dated November 21, 2023 (the "Forbearance Agreement");

**WHEREAS**, the Loan Parties failed to comply with certain of their respective obligations under the Forbearance Agreement, including satisfying the Triangle Total Claim as set forth therein;

**WHEREAS**, the Loan Parties requested the amendment of certain of their respective obligations under the Forbearance Agreement; and

**WHEREAS**, the Parties have discussed the events detailed therein and have agreed to amend the Forbearance Agreement solely as set forth herein.

**NOW, THEREFORE**, in consideration of the premises and mutual covenants herein contained, and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

## AMENDMENT

**SECTION 1**. Recitals. The Parties agree to make a part hereof all of the "Preliminary Statements" in this Amendment, as if set forth in full herein.

**SECTION 2.** Amendments to the Forbearance Agreement. The following sections of the Forbearance Agreement are hereby amended and restated solely as follows:

A. Section 2 – "Closing". The definition of "Closing" in Section 2 of the Forbearance Agreement is hereby amended to read, and as set forth is restated to read as follows:

"Closing. The payment to, and receipt by, the Creditor of the (i) Triangle Reduced Claim Amount during the 9 Month Period, or (ii) the Triangle Total Claim Amount during the 3 Month Extension or the Second 3 Month Extension, if applicable, in same day available funds, and the satisfaction of the other closing conditions set forth in Section 10 of this Agreement."

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Forbearance, Discounted Payoff and Settlement and Release Agreement.

B. <u>Section 3</u>. Section 3 of the Forbearance Agreement is hereby amended to read, and as set forth is restated to read as follows:

"**SECTION 3**. <u>Outstanding Balance of the Loan</u>. The Loan Parties hereby confirm and represent to the Creditor that the current outstanding balance of the Loan and the Triangle Total Claim as of November 21, 2024, is as follows (together with any other amounts which may be due or become due by the Loan Parties under this Agreement or the Loan Documents, the "<u>Obligations</u>"):

| | |
|---|---|
| Total Triangle Claim as of November 21, 2023 | $2,166,538.21 |
| Interest due as of November 21, 2024 on the Triangle Total Claim | $44,647.70 |
| Legal Fees due from November 21, 2023 through October 31, 2024 | $8,140.90 |
| **Total Triangle Claim as of November 21, 2024** | **$2,219,326.81** |

C. <u>Section 5</u>. Section 5 of the Forbearance Agreement is hereby amended to read, and as amended is restated to read as follows:

"**SECTION 5**. <u>Forbearance Period</u>. Prior to the execution of this Amendment, the Loan Parties exercised the 3 Month Extension as set forth in Section 7. Accordingly, the forbearance period shall refer to the period commencing on the Effective Date and expiring on the earlier of: (a) November 21, 2024 or, if the Second 3 Month Extension is exercised as set forth in Section 7, then February 21, 2025 (such period, the "<u>Maturity Date</u>") or (b) the occurrence of an Event of Default under Section 12(B) of this Agreement (the "<u>Forbearance Period</u>")."

D. <u>Section 7(iv)</u>. Section 7(iv) of the Forbearance Agreement is hereby amended to read, and as amended is restated to read as follows:

(iv) "**3 Month Extension and Second 3 Month Extensions to Pay Triangle Total Claim**. If, at the end of the 9 Month Period, (i) the Loan Parties have not delivered to the Creditor the payment in full of the Triangle Reduced Claim and satisfied the other closing conditions set forth in Section 10, and (ii) provided there are no other Events of Default under this Agreement, then the Loan Parties may extend, during the Forbearance Period, for an additional 3 months the time period to satisfy the Triangle Total Claim (such extension, the "<u>3 Month Extension</u>") by delivering to Creditor on or before the expiration of the 9 Month Period a payment equal to three months of interest, at 11.50% *per annum*, of the amounts due under the Triangle Total Claim. If, at the end of the 3 Month Extension, (i) the Loan Parties have not delivered to the Creditor the payment in full of the Triangle Total Claim and satisfied the other closing conditions set forth in Section 10, and (ii) provided there are no other Events of Default under this Agreement, then the Loan Parties may extend, during the Forbearance Period, for an additional 3 months the time period to satisfy the Triangle Total Claim (such extension, the "<u>Second 3 Month Extension</u>") by delivering to Creditor on or before the expiration of the 3 Month Extension a payment equal to: (a) $62,288.10, which corresponds to three months of interest, at 11.50% *per annum*, of the amounts due under the Triangle Total Claim; and (b) the amount of $50,000.00, as an extension fee (and, which amount shall not be applied to reduce the Triangle Total Claim).

Prior to the execution of this Amendment, the Loan Parties exercised the 3 Month Extension as set forth herein but failed to pay the Triangle Total Claim prior to the expiration of the 3 Month Extension. Accordingly, the Loan Parties have the Second 3 Month Extension, if exercised as set forth in this Agreement, to pay the Triangle Total Claim. Further, for the avoidance of doubt, if the Loan Parties exercise the Second 3 Month Extension as set forth in this Agreement, the Second 3 Month Extension would expire on February 21, 2025 or upon the occurrence of an Event of Default, whichever occurs earlier. Similarly, if the Loan Parties do not exercise the Second 3 Month Extension as set forth in this Agreement, then the Forbearance Period shall expire at the end of the 3 Month Period on November 21, 2024, or upon an Event of Default, whichever occurs earlier."

E. Section 9. Section 9 of the Forbearance Agreement is hereby amended and as amended is restated to read as follows:

"**SECTION 9.** Certain Agreements. Once the Creditor has received confirmation that either the full amount of the Triangle Reduced Claim Amount during the 9 Month Period or the full amount of the Triangle Total Claim during the 3 Month Extension or the Second 3 Month Extension, if applicable, has been received via wire transfer to the account indicated by the Creditor or that the manager's check delivered at Closing to the Creditor for the full amounts due has cleared, and subject to satisfaction of the other conditions precedent to the Closing, the Creditor will notify the Loan Parties that the following documents are available for collection: (i) all promissory notes subscribed in respect of the Obligations under the Loan Documents, as more particularly described in **Exhibit A** attached hereto and made a part hereof, endorsed to maker without any recourse, warranty or representation, express, implied or by operation of law, of any kind or nature whatsoever; (ii) all mortgage notes described in **Exhibit A** attached hereto and made a part hereof, endorsed to maker without any recourse, warranty or representation, express, implied or by operation of law, of any kind or nature whatsoever; and (iii) the Guarantees."

F. Section 10(ii). Section 10(ii) of the Forbearance Agreement is hereby amended to read, and as amended is restated to read as follows:

(ii) The full amount of the Triangle Reduced Claim Amount during the 9 Month Period or the full amount of the Triangle Total Claim during the 3 Month Extension or the Second 3 Month Extension, if applicable, shall have been remitted to the Creditor by wire transfer to the account indicated by the Creditor or by means of a manager's check that has cleared payable to the Creditor;"

G. Sections 12(B)(iii) and (xiv). Section 12(B)(iii) of the Forbearance Agreement is hereby amended to read, and as amended is restated to read as follows and Section 12(B)(xiv) is added to the Forbearance Agreement to read, and as added reads as follows:

(iii) "If the Loan Parties fail to pay the Triangle Total Claim on or before the expiration of the 3 Month Extension during the Forbearance Period and fail to exercise the Second 3 Month Extension as and when required by Section 7 of this Agreement; or"

...

(xiv) If the Loan Parties fail to pay the Triangle Total Claim on or before the expiration of the Second 3 Month Extension during the Forbearance Period."

**SECTION 3. Acknowledgement of Additional Defaults and of Obligations.** Each of the Loan Parties, jointly and severally among themselves ("solidariamente"), acknowledges, represents, covenants, and agrees with the Creditor that (i) the Loan Parties have incurred in

3

additional defaults under the Forbearance Agreement (the "Additional Acknowledged Defaults") by, among other things, failing to pay the Triangle Total Claim on or before the expiration of the 3 Month Extension; (ii) that the occurrence of the Additional Acknowledged Defaults gives the Creditor the right to, among other things, foreclose on the Collateral through the Judgment by Consent, and exercise all remedies under the Forbearance Agreement, the Loan Documents, at law or in equity; (iii) the Loan Parties' obligation to pay in full the Obligations, is valid, binding and enforceable in all respects; and (iv) the Loan Parties' Obligations to the Creditor are absolute and unconditional, and there exists no right of setoff or recoupment, claim, counterclaim or defense, either in law or in equity, of any nature whatsoever to payment or performance of any such Obligations, all of which are hereby expressly and forever waived and released. Each of the Loan Parties further acknowledges and affirms that the Creditor has faithfully, and in good faith, performed and discharged all of the Creditor's obligations under the Loan Documents and the Forbearance Agreement. Further, each of the Loan Parties hereby: (i) consents to the transaction contemplated herein and acknowledges, reaffirms, and ratifies all security interests granted and liens constituted or purported to be granted or constituted pursuant to the Loan Documents as Collateral for the payment and performance of all of the Loan Parties' Obligations and their first priority rank; (ii) acknowledges, reaffirms, and ratifies that the Creditor's security interests and liens and Collateral extend to and include all of the Borrower's permits and licenses relating to the Mortgaged Property; (iii) acknowledges and agrees that the Loan Documents (and all security therefor) are, and shall continue to remain, in full force and effect after giving effect to this Agreement; (iv) ratifies the Loan Documents and the Forbearance Agreement and the Judgment by Consent; and (v) agrees and expressly and irrevocably waives any and all rights to subrogation for payments made to the Creditor hereunder or under the Loan Documents, Forbearance Agreement, or Judgment by Consent, if any. The Loan Parties hereby expressly agree that the Creditor shall not have any duty to exhaust any particular guaranty or collateral before seeking enforcement, foreclosure or collection of any other Collateral.

**SECTION 4. No Other Amendments.** Other than the terms and provisions of the Forbearance Agreement expressly modified by this Amendment, all other provisions of the Forbearance Agreement shall remain unchanged and shall continue in full force and effect as if set forth in full herein.

**SECTION 5. Counterparts.** This Amendment may be executed by each Party on a separate counterpart, each of which, when so executed and delivered, shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument. In proving this Amendment, it shall not be necessary to produce or account for more than one such counterpart signed by the Party against whom enforcement is sought. In addition, the Parties may execute this document and evidence such execution by either PDF or facsimile, and each shall be binding and enforceable on such Parties.

**SECTION 6. Voluntary Agreement.** The Loan Parties hereby acknowledge that they are or have had the opportunity to be represented by legal counsel of their choice, are fully aware of the terms contained in this Agreement and have voluntarily and without coercion or duress of any kind entered into this Agreement and the documents executed in connection with this Agreement.

4

The Loan Parties further acknowledge and represent that they are fluent in English, and have understood the totality of the contents, provisions and covenants of this Agreement.

*[signature page follows]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers hereunto duly authorized in San Juan, Puerto Rico, this 21st day of November, 2024.

_____
Triangle Cayman Asset Company
(Creditor)
By: _____
Name: Héctor F. Lebrón González
Title: Authorized Representative

_____
Azure Development, Inc.
(Borrower)
By: _____
Name: Alfonso Valdés García
Title: Authorized Representative

_____
Cost Control Company, Inc.
(Guarantor)
By: _____
Name: Alfonso Valdés García
Title: Authorized Representative

_____
Fideicomiso Valdés-Acevedo
(Guarantor)
By: _____
Name: Jaime I. Del Valle Cruz
Title: Authorized Representative

_____
Alfonso Valdés García
(Guarantor)

6

Affidavit Number: 62

Subscribed before me by (i) Alfonso Valdés García, of legal age, single, business executive and resident of Guaynabo, Puerto Rico, personally and as authorized representative of Azure Development Inc. and Cost Control Company, Inc., not personally known to me and who I have identified by means of his driver's license number 330645, issued by the Commonwealth of Puerto Rico, in accordance with Article 17(c) of the Notary Act of Puerto Rico, in San Juan, Puerto Rico, this 21st day of November 2024.

_____
Notary Public

Subscribed before me by Jaime I. Del Valle Cruz of legal age, married, business executive and resident of San Juan, Puerto Rico, as authorized representative of Fideicomiso Valdés-Acevedo, not personally known to me and who I have identified by means of his driver's license number 507220, issued by the Commonwealth of Puerto Rico, in accordance with Article 17(c) of the Notary Act of Puerto Rico, in San Juan, Puerto Rico, this 21st day of November 2024.

_____
Notary Public



7

Affidavit No.: __48__

Acknowledged and subscribed before me by _Héctor F. Lebrón González_, of legal age, _married_, attorney-at-law and resident of _San Juan_, Puerto Rico, in his capacity as Authorized Representative of _Triangle Cayman Asset Company_, who is personally known to me. In San Juan, Puerto Rico on this _21_ day of _November_, 2024.

_____
Notary Public