UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 23-00462 (ESL) |
| AZURE DEVELOPMENT, INC. | CHAPTER 11 |
| Debtor | |

**RESPONSE TO YUKIYU'S: (I) OPPOSITION TO URGENT MOTIONS TO REOPEN CASE AND TO SELL ASSETS; AND (II) RESERVATION OF RIGHTS AND REQUEST FOR TIME TO SUPPLEMENT IF NEEDED FILED AT DOCKET NO. 181**

**TO THE HONORABLE COURT:**

COMES NOW, Azure Development, Inc. ("Debtor"), through its undersigned counsel, and respectfully states and requests as follows:

**I.      INTRODUCTION**

1. On February 17, 2023, Debtor filed its voluntary petition for relief pursuant to 11 U.S.C. Chapter 11 in the captioned case (**Docket No. 1**).

2. On December 6, 2023, Triangle Cayman Asset Company ("Triangle") and Debtor filed a *Joint Motion for the Approval of Settlement and Release Agreement* (the "Joint Motion"), whereby they requested the approval of a Forbearance, Discounted Payoff and Settlement and Release Agreement (the "Settlement Agreement") pursuant to Fed. R. Bankr. P. 9010, disposing of all pending controversies between them and related parties (**Docket No. 156**).

3. On January 1, 2024, Debtor and Triangle filed a motion for an order granting the Settlement Agreement (**Docket No. 158**), granted by the Court on January 3, 2024 (**Docket No. 164**).

4. As a result of the Settlement Agreement and its approval by the Court on January 12, 2024, Debtor and Triangle filed a joint motion for the dismissal of the captioned case (**Docket No. 170**), granted by the Court on January 24, 2024 (**Docket No. 171**).

5. On November 26, 2024, the captioned case was closed.

6. On March 27, 2025, Debtor filed an *Urgent Motion for the Reopening of Case* (**Docket No. 177**) (the "Motion to Reopen"), stating that there is cause therefor by enabling Debtor, as a matter of fact and law, to implement the Settlement Agreement by the sale of its two (2) properties (the "Properties") at Luquillo, Puerto Rico to Punta Banderas Associates, Inc. ("Punta Banderas") for $2,500,000.00 and pay in full its debt to Triangle's successor and now holder of the claim against Debtor, Yukiyú Real Estate, LLC ("Yukiyú"), with the balance of the sales price to be paid to the holders of the second mortgage on the Properties, Debtor being able to avoid the foreclosure of the Properties by Yukiyú, providing Debtor with the opportunity of recovering them and being able to complete the permitting for the development of its project in process thereon, selling the same and making a profit.

7. On that same date, Debtor filed an *Urgent Motion for the Sale of the Two Properties Pursuant to Section 363(f) of the Bankruptcy Code, Free and Clear of all Liens, Claims, Interests and Encumbrances to Implement the Settlement Agreement, Approving the Form of the Sale Order* (**Docket No. 179**) (the "Motion to Sell Properties") (the Motion to Reopen and the Motion to Sell Properties jointly referred to as the "Urgent Motions").

8. On March 31, Yukiyú filed its opposition to the Urgent Motions (**Docket No. 181**) (the "Opposition"), sustaining in essence that (1) the Motion to Reopen is frivolous, since on January 24, 2024, the Court entered an order dismissing the captioned case stating that Debtor was "prohibited from being a debtor under any proceeding under title 11 of the United States Code, whether voluntary or involuntary, for three (3) years (or 1,095 days)" from the date of entry of said order; and (2) that the Motion to Sell Properties does not comply with section 363(k) of the Bankruptcy Code and with Local Bankruptcy Rule of Procedure 6004-1(b), because it "(a) fails to include the proposed sale agreement or purchase option; (b) fails to include an appraisal of the Properties (critical in this case, considering that Debtor previously represented to this Court that the Properties were valued at over $8 Million and now seeks to

2

sell them for allegedly $2.5MM); and (c) fails to include a detail on the terms of the sale, closing fees and costs", additionally Yukiyú sustains that the Motion to Sell Properties also fails to detail how Debtor will pay administrative and priority claims through such sale or a subsequent plan.

9. The Opposition should be denied outright by the Court, since Yukiyú is to be paid in full its claim upon closing on the sale of the Properties to Punta Banderas and thus is not an aggrieved party.

10. In the First Circuit, a non-agreed party or a non-consenting party may have standing to object in a bankruptcy case if they qualify as a "party in interest" or a "person agreed" depending on the context of the objection. Standing generally determined by whether the party's pecuniary interests are directly and adversely affected by the bankruptcy court's order or proceeding.

11. A "party in interest" is broadly defined as any party who's pecuniary interests are directly affected by the bankruptcy proceedings. In re. Belser 534 B.R. 228, 236 (B.A.P. 1st Cir. 2015); In re *Torres Martínez*, 394 B.R. 158, 164 (B.A.P. 1st Cir. 2008).

12. Standing is a jurisdictional issue and cannot be waived. The bankruptcy court may review standing at any stage of the litigation. *In re Newcare Health Corp.* 244 B.R. 167, 169-70 (B.A.P. 1st Cir. 2000); *In re Sullivan* 455 B.R. 829, 835 (B.A.P. 1st Cir. 2011). For instance, in *In re Newcare*, the court emphasized that standing must be established with sufficient facts to demonstrated a direct interest in the matter at hand.

13. In summary a non-consenting party may object in a bankruptcy case if it can demonstrate a direct and adverse impact on its pecuniary interests, qualifying it as a "party in interest" or a "person agreed", depending on the procedural contest.

## II. ARGUMENT

### A. The Motion to Reopen

3

Case:23-00462-ESL11 Doc#:182 Filed:04/01/25 Entered:04/01/25 14:16:26 Desc: Main
Document Page 4 of 10

14. To sustain its opposition as to the Motion to Reopen, Yukiyú relies on *In re Pingaro*, 2008 WL 8664764 (B.A.P. 1st Cir. 2008), a Chapter 13 case where the debtor's request to reopen was denied because he failed to demonstrate sufficient grounds to justify the same, since the case had been closed after the debtor's failure to make plan payments, which led to the dismissal of the Chapter 13 case and subsequent foreclosure of the property. A scenario that is completely different from the one at bench where the foreclosing creditor is to be paid in full and the foreclosure of the Properties avoided.

15. 11 U.S.C. §350(b) provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause".

16. Additionally, Fed. R. Bankr. P. 5010 states that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to §350(b) of the Code…"

17. Section 350 of the Bankruptcy Code specifies the requirements for reopening of a case under title 11, a completely different situation from filing a new bankruptcy case when a bar to refile has been entered against a party, who is to pay in full a non-aggrieved creditor upon the sale of the Properties sought to be foreclosed thereby for the only intended purpose of dispossessing Debtor thereof through a foreclosure sale, which with all probability will result in no dividends to the second holder mortgage who has not objected to the Urgent Motions, as well as anyone else. The purpose of Section 363(b) is to provide fair treatment to all parties concerned by giving the court the power to reopen a case, when necessary, in the interest of fairness, as is the situation here. 3 Collier on Bankruptcy P 350.01 (16th Ed.)

18. Refiling a bankruptcy case occurs when a debtor files a new bankruptcy petition after a prior case has been dismissed. Unlike reopening, refiling initiates a new bankruptcy proceeding, subject to the requirements and limitations of the Bankruptcy Code. For example, a debtor may face restrictions on refiling if the prior case was dismissed under certain circumstances, such as for failure to comply with court orders or procedural requirements. Refiling is distinct from reopening because it starts a new case rather than continuing the

4

administration of a previously closed one. Even in the event of a refiling of a case invoking Section 350, a court can determine such a request as a motion for relief pursuant to Fed. R. Civ. P. 60 made applicable in bankruptcy cases by Fed. R. Bankr. P. 9024. In re Cole, 382 B.R. 20 (2008); In re Singleton, 358 B.R. 253 (2006).

19. In addition to the specified causes of the need to administer assets or to accord relief to the debtor, the court may reopen a case "for other cause." For example, courts have granted motions to reopen a case to modify a reorganization plan, to interpret a provision in a previously confirmed plan and to determine the validity of lien. Here, the reopening of the case will accomplish the goal sought by Debtor, that is paying Yukiyú in full, avoid the foreclosure of the Properties, pay a dividend to the second mortgage holder and recover the Properties with time to develop its project. The decision to reopen a bankruptcy case is discretionary with the court, which may consider numerous factors, including equitable concerns as in this case, and ought to emphasize substance over technical considerations. See 3 Collier on Bankruptcy P 350.03 (16th Ed.)

20. The party seeking to reopen the case bears the burden of proving cause. The decision to grant or deny a motion to reopen is binding on review, absent a clear showing that there was an abuse of discretion. The bankruptcy court, having broad discretion to reopen a case, may allow a case to be reopened so long as in this case, there is no evidence of fraud or intentional design on the part of the moving party or those in privity and Debtor has met its burden for the reopening of the case and for the granting of the relief requested in the Motion to Sell Properties. *Id.; In re Reichel*, 645 B.R. 620, 624 (B.A.P. 8th Cir. 2022) (Citations omitted).

21. In deciding a motion to reopen a bankruptcy case, the Court should take into account equitable considerations, as those present in this case. *In re Weber*, 283 B.R. 630, 635 (Bankr. Dist. Mass. 2002).

5

22. As discussed in *In re Siegal*, 535 B.R. 5, 11 (Dist. Mass 2015), the United States Bankruptcy Appellate Panel for the First Circuit has recognized that the reopening of a case is a ministerial act which allows the file to be retrieved so the court can receive a new request for relief; the reopening, by itself, has no independent legal significance and determines nothing with respect to the merits of the relief to be requested, citing *In re Andersen*, 2011 Bankr. LEXIS 317. In this case the Urgent Motions taken together warrant its reopening, as well as a determination that Debtor is entitled to the substantive relief requested thereby.

23. Courts generally consider a variety of factors when deciding whether to reopen a case: (1) the length of time that the case was closed; (2) whether a non-bankruptcy forum, such as state court, has the ability to determine the issue sought to be posed by the debtor; (3) whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the rights, post-bankruptcy, of the parties; (4) whether any parties would be prejudiced were the case reopened or not reopened; (5) the extent of the benefit which the debtor seeks to achieve by reopening; and (6) whether it is clear at the outset that the debtor would not be entitled to any relief after the case were reopened. *In re Crocker*, 362 B.R. 49, 53 (B.A.P. 1st Cir. 2007)

24. Debtor meets all the factors established by the Bankruptcy Appellate Panel for the First Circuit in *In re Crocker*, supra. First, the order dismissing the captioned case[1] was entered on January 24, 2024. Second, no other court can determine the issue sought in the Motions to Sell Properties. Third, no prior litigation in a bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the rights, post-bankruptcy, of the parties. Fourth, no parties would be prejudiced if the case is reopened. Fifth, Debtor will be able to preclude the foreclosure of the Properties by paying in full the

---

[1] **Docket No. 171**

6

foreclosing creditor. And sixth it is clear that Debtor would be entitled to relief after the case is reopened.

25. In the instant case, the compelling reason for reopening the case has been demonstrated, since the implementation of the Settlement Agreement by the sale of the Properties will provide Debtor relief by paying in full its debt to Yukiyú and paying the second mortgage on the Properties up to the extent of the balance arising from the sales price of the Properties after the payment if full to Yukiyú, avoiding their foreclosure, providing Debtor with the opportunity of recovering the same and being able to complete the permitting for the development of Debtor's project thereon, selling the same and making a profit.

26. Considering all of the above, Debtor has met its burden by proving that cause exists, warranting the reopening of the instant case and granting the relief requested in the Motion to Sell Properties.

27. Even in cases involving bars from refiling, courts have considered the debtor's history of filings and the specific circumstances of the case. For instance, in In re Madison, 184 B.R. 686 (1995), the court reopened a case to impose limited restrictions on future filings, finding that an agreement to bar all future filings under any conditions violated public policy. This demonstrates that reopening is possible even in cases with refiling restrictions, provided the court finds a valid purpose and no undue prejudice, as is the situation in the captioned case.

28. In this case, Yukiyú's bad faith and devious action is evident when it objects to receive full payments of its claims under the Settlement Agreement intending to force a foreclosure of the Properties seeking to become their owner by paying less than it will receive from Debtor upon their sale to Punta Banderas.

**B. The Motion to Sell Properties**

29. Yukiyú misleadingly sustains that the Motion to Sell Properties "fails to comply with Rule 6004-1(b), as it: (a) does not include the proposed sale agreement or purchase option; (b) fails to include an appraisal of the Properties (critical in this case, considering that Azure

7

[Debtor] previously represented to this Court that the Properties were valued at over $8 MM and now seeks to sell them for allegedly $2.5MM); and (c) fails to include a detail on the terms of the sale, closing fees and costs", and that it "also fails to detail how Azure [Debtor] will pay administrative and priority claims through such sale or a subsequent plan".

30. As to Yukiyú's above technicalities, aside from the exhibits included with the Motion to Sell Properties and that there are no administrative and priority claims to be paid, Debtor is attaching the following documents hereto:

(a) Draft of Deed of Purchase and Sale with Right to Re-Purchase between Punta Banderas as Purchaser and Debtor as Seller (**Exhibit A**)

(b) Certification of availability of the amount of $2,850,000.00 in Punta Banderas' account ending in 14741 with Oriental Bank (**Exhibit B**)

(c) Yukiyú misrepresents Debtor's assertions as to the value of the Properties, as the $8 Million referred to thereby was the value given by Debtor to the project to be developed on the Properties after the obtention of all the necessary permits, which is in process. As it appears from Schedule A/B to Debtor's Chapter 11 petition, the value given to the Properties therein was $3,142,794.05, at a time when the Properties were not the object of an order granting Yukiyú's motion in execution of judgment (**Exhibit C**). It is well settled that an owner can testify as to the value of its properties, making unnecessary under the particular circumstances of this case to submit and appraisal report as to the Properties, when everyday counts due to the daily interest accruing on Yukiyú's claim. *Shane v. Shane* 891 F.2d. 976 (1st Cir. 1989); In re *Glosband v. Watts Detective Agency, Inc*. 21 B.R. 963 (D.C. Mass. 1981); In re *DaRosa* 442 B.R. 173 (Bankr. Mass. 2010). (**Exhibit D**)

### III. YUKIYÚ'S BAD FAITH

8

31. Yukiyú's sanctionable obstruction to the equitable and fair Urgent Motions rooted on a Settlement Agreement of a contractual nature are a flagrant violation of the bed rock good faith principles of Puerto Rico's Civil Code.

32. The good faith principles under the Civil Code of Puerto Rico, as reflected in the 2020 Civil Code and related statutes, emphasize honesty, trust, and adherence to reasonable standards of conduct in various legal contexts. Good faith is a pervasive principle in Puerto Rican law, requiring parties to act with honesty and fairness in their dealings, whether in contracts, property rights, or other legal relationships. 31 L.P.R.A § 5334. *Catalytic Indus. Maint. Co. v. State Ins. Fund*, 121 D.P.R. 98, 1988 PR Sup. LEXIS 174 (good faith is a general requirement of our law and, as such, extends to our whole legal system).

33. In the context of contracts, good faith obligates parties to act with mutual respect and loyalty throughout the formation, execution, and performance of their agreements. This principle ensures that parties not only fulfill their explicit obligations but also adhere to the implicit expectations of fairness and honesty derived from the nature of the contract *Marcial Burgos v. Tomé*, 144 D.P.R. 522, 1997 PR Sup. LEXIS 517; *López de Victoria v. Mercedes Rodríguez*, 113 D.P.R. 265, 1982 PR Sup. LEXIS 200.

34. Additionally, good faith is integral to the prohibition of actions that contradict one's prior conduct (the doctrine of estoppel) and the prevention of abuse of rights. These doctrines ensure that individuals cannot act in ways that undermine trust or exploit legal rights to the detriment of others, *Berrios Pagan v. Univ. of P.R.*, 116 D.P.R. 88, 1985 PR Sup. LEXIS 47.

35. Overall, the principle of good faith serves as a foundational ethical standard across Puerto Rican law, promoting fairness, trust, and equitable treatment in legal relationships *Catalytic Indus. Maint. Co. v. State Ins. Fund*, supra; *Hermandad Unida de Carpinteros Y Ebanistas de Am. v. V. & E. Eng'g Constr. Co*., 115 D.P.R. 711, 1984 PR Sup. LEXIS 163.

36. Under Puerto Rico law, if a creditor refuses to accept a tender of payment without reason, the debtor may be released from liability by consigning the amount due. 31 L.P.R.A. §9181.

37. Refusing full payment of a monetary claim prior to the execution of a consent judgment may constitute bad faith under the Civil Code of Puerto Rico of 2020 if the refusal is unreasonable or intended to delay or avoid fulfilling obligations, as is the situation in this case, Morales v. Automatic Vending Serv., 103 D.P.R. 281, 1975 PR Sup. LEXIS 1385.

**WHEREFORE,** it is respectfully requested that the Opposition be denied and the Urgent Motions granted.

**CERTIFICATE OF SERVICE**: I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

San Juan, Puerto Rico, this 1st day of April 2025

*s*/**CHARLES A. CUPRILL-HERNÁNDEZ**
USDC-PR 114312
Charles A. Cuprill, P.S.C. Law Offices
**Counsel for Debtor**
356 Fortaleza Street, Second Floor
San Juan, PR 00901
Tel: 787-977-0515
Fax: 787-977-0518
E-mail: cacuprill@cuprill.com